LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
OCTOBER CALENDAR 1996

RUSH, ROBERT

D-73321
PAGE 1

## I.   COMMITMENT FACTORS:

A.   Life Crime:   Count 1, Murder 2nd, with Use of a Firearm, PC187/12022.5, Case Number SBD CR44594, Sentence: 15 years to Life.   MEPD: 11/30/97.  Victim: John Heinz, age unknown.

1.   Offense Summary:   At some time before July 1, 1986, at their residence, the victim, John Heinz, and his roommate, Robert Rush, had an argument and physical altercation over household responsibilities.  Robert Rush shot John Heinz numerous times with a .22 caliber rifle.  Following the murder, another roommate, Marcus Hoy, arrived at the residence.  Rush and Hoy cleaned the house of incriminating evidence and placed the victim's body in plastic bags and a sleeping bag.  Rush and Hoy drove the body to the Dover Canyon area where they burned the victim.  They buried the victim's wallet identification in a separate location.  Rush and Hoy later took and left the victim's truck in Riverside. Rush and Hoy then used the victim's money to go drinking. Source:  POR pages 1-3.

2.   Prisoner's Version:   Rush states that he and the victim were roommates along with several other college students. On the day of the incident, Rush and Heinz got into an argument over household issues.  Heinz then physically attacked Rush by pushing him to the ground and beating, kicking and verbally mocking him. Rush felt scared and helpless and went looking for a weapon to protect himself. Rush grabbed a .22 caliber rifle from underneath his bed. Rush then stepped into the hallway on the way to the bathroom to clean up a bloody nose.  Rush was carrying the rifle and cocked it and told Heinz "to back off".  Heinz then lunged towards him; Rush flinched, and the gun went off.  Rush states Heinz yelled out in pain but remained standing in front of him.  Rush panicked and continued to pull the trigger until the rifle was empty and the victim was dead.  Rush states he was shocked at what had occurred and did not know what to do.  Just then his roommate Hoy came, and he told him what had happened and asked him what to do.  Hoy suggested that they hide the body so that no one would ever know what happened.  Rush states he was frightened and ashamed of what he had done, so he went along with the plan to hide the body.  They buried the body, and Rush did his best to go on as if nothing had happened.

LIFE PRISONER EVALUATION REPORT
IITIAL PAROLE CONSIDERATION HEARING
CTOBER CALENDAR 1996

RUSH, ROBERT                                              D-73321
                                                         PAGE 2

      2.    <u>Prisoner's Version:</u> (Cont'd)  Rush states that he did tell
           his other roommate, Galloway, what had happened.  Several
           weeks after that, he was arrested after Galloway turned him
           in.  Rush does not blame Galloway but wishes that he had
           come forward immediately after the incident.

      3.    <u>Aggravating Circumstances</u>:

           1.    During the commission of the crime, Rush had a clear
                 opportunity to cease, but instead continued.

           2.    Rush had a special relationship of trust with the
                 victim as they were roommates and friends.

      4.    <u>Mitigating Circumstances</u>:

           1.    Rush has no prior history of criminal behavior.

II.  <u>PRECONVICTION FACTORS</u>:

    A.  <u>Juvenile Record:</u>    Rush has no known juvenile record, CLETS
        dated 2/18/88 shows no record.

    B.  <u>Adult Convictions:</u>  Rush has no known criminal record until
        current offense.  No prior county, probation or CDC history
        P.O.R., page 1.

    C.  <u>Personal Factors</u>:

        1.    Rush graduated from Rim of the World High School in 1983.
            He was also attending Cal. State University San Bernardino
            at the time of the offense.  Noted also is a certificate of
            completion of the Vocational Drafting and Architectural
            course.

        2.    Rush had worked for Sickles Painting as a painter until the
            time of his arrest.  Prior employment consisted of working
            at the Wiley Woods Conference Center as a maintenance
            employee.

III. <u>POSTCONVICTION FACTORS</u>:

 Rush was received at RCC-CIM on 12/17/87.  He was transferred to CTF
 -Central on 1/19/88.  During his incarceration, Rush has remained
 disciplinary free with the exception of a 128-C Custodial Chrono
 dated 11/10/88 for being Out of Bounds.  Rush's work history consists

LIFE PRISONER EVALUATION REPORT
IITIAL PAROLE CONSIDERATION HEARING
OCTOBER CALENDAR 1996

RUSH, ROBERT                                              D-73321
                                                         PAGE 3

III.  POSTCONVICTION FACTORS: (Cont'd)

    of assignment to the Educational Department as a Teacher's Aide on
    9/17/88 and assignment to the Vocational Drafting Program from
    5/13/92 to the present.  Rush has consistently received satisfactory
    or above average work reports.

    He has received an Associate of Arts Degree through the Hartnell
    College Program and a Bachelor's Degree through San Jose State
    University.  Rush received excellent grades while working towards his
    degrees.

    Rush last appeared before the Board of Prison Terms on 9/30/93 for a
    Documentation Hearing.  The Board's recommendations were that subject
    should complete the Vocational Drafting Program, remain disciplinary
    free and participate in self-help groups in planning for the future
    and enhancement of insight into personal dynamics.  Also, upon
    completion of Vocational Drafting, explore the possibility of transfer
    to a prison where he can get involved in therapy.  Rush has been
    involved in AA since November, 1993.

IV.  FUTURE PLANS:

    Rush states he will re-unite with his family upon his release.
    Subject states that with his college degrees and certificate in the
    Vocational Drafting field, he will be able to secure employment.

V.   SUMMARY:

    A.  Considering the commitment offense, lack of prior criminal record
        and positive prison adjustment, this writer believes the prisoner
        would pose an unpredictable degree of threat to the public at
        this time, if released from prison.  This writer acknowledges the
        inmate's positive program while in a controlled setting such as
        state prison, but also notes that during the commission of the
        crime, Rush fired repeatedly at the victim until his weapon was
        empty.  The manner in which the crime was covered up, the body
        buried and personal belongings taken, raise  doubts about
        subject's suitability for parole at this time.  Rush has
        completed his education while incarcerated (Bachelor's Degree)
        and is currently working on a Master's Degree through San Jose
        State University.  Rush would benefit from continuing to attend
        therapy,    to accept the responsibility of the commitment
        offense and gain insight into impulse and anger control.
        Noted is the 9/3/93 psychiatric evaluation by Ronald Kitt, Ph.D
        Clinical Psychologist, stating that subject's violence potential
        outside of a controlled setting is considered to be average.

LIFE PRISONER EVALUATION REPORT
NITIAL PAROLE CONSIDERATION HEARING
OCTOBER CALENDAR 1996

RUSH, ROBERT

D-73321
PAGE 4

V.    SUMMARY:

B.    Prior to release, Inmate Rush should continue to maintain a disciplinary free record and continue to participate in available therapy which will enhance insight and acceptance and responsibility for the instant offense.

C.    This Board Report is based on a one hour interview with Rush, an extensive review of the Central File and incidental contact with Inmate Rush.


*L. R. Baker*
L. R. Baker
Correctional Counselor I


*hll*
S. Hill
Correctional Counselor II


*L SHll F.C(A)*
L.G. Schwimmer
Facility Captain


*R. Odne, et PRAI*
W.J. Hill
Classification & Parole Representative

BOARD OF PRISON TERMS                                                   STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- ☐ DOCUMENTATION HEARING
- [ AROLE CONSIDERATION HEARING
- ☐ PROGRESS HEARING

**INSTRUCTIONS**

TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 9/93 to 12/93 | | | Documentation #2 Hearing dated 9/30/93 acted to place on 10/96 Calendar for Initial Parole Consideration Hearing and made the following recommendations: 1) Complete vocational drafting, 2) Remain disciplinary free, 3) Participate in self-help programs as available, 4) After completion of drafting program, transfer to a prison where inmate can get involved in therapy. 10/15/93 ICC for PostBoard Review acted to continue present program. Inmate remained assigned as vocational drafting student/tutor and disciplinary free with Medium A custody on the CTF-Central mainline during this period. |
| 12/93 to 12/94 | | | Remained assigned to vocational drafting program as student/tutor with positive program evaluation. 10/26/94 128-B documented participation in AA group. Remained disciplinary free with Medium A custody on the CTF Central mainline during this period. |
| 12/94 to 12/95 | | | Remained assigned to vocational drafting program as student/tutor with positive program evaluation. 12/22/95 128-B documented participation in AA group. Remained disciplinary free with Medium A custody on the CTF-Central mainline during this period. |

CORRECTIONAL COUNSELOR SIGNATURE _L.R. Baker_             DATE _11-22-96_

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| P h, Robert | D-73321 | CTF | October | 12-17-96 |

BPT 1004 (REV 7/86)

0149

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/95 to Present | | | Remained assigned to vocational drafting program as student/tutor with positive program evaluation. 7/18/96 128-B documented correspondence with CSU Dominguez Hills working towards a Masters of Arts in Humanities and maintaining a 3.6 grade point average. 8/1/96 128-B laudatory chrono documented dependability and effective working with others as well as progress towards mastery of Auto Cad software involved in vocational drafting assignment. Remained disciplinary free with Medium A custody on the CTF Central mainline during this period. |

ORDER:

☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| ush, Robert | D-73321 | CTF | October | 12/17/96 |

1004 (REV. 7/86)    PAGE 2 of 2    PERMANENT ADDENDA

0150

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [X] DOCUMENTATION HEARING
- [ ] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

## INSTRUCTIONS

TO CDC STAFF:   DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:   FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12=90 | | | Remained at CTF-Central in the general population with Close B custody, Work Group / Privilege Group A1/A and assigned to the Academics Program. On 1-22-91, Rush appeared before ICC for a custody review, committee elected to reduce custody to to Medium A and notes his classification score of 34,points.  Reader notes Rush, graduated from San Jose University and has obtained his Bachelor of Arts Degree in Social Science as of 9-5-91. Remained disciplinary free during this period. |
| 12-91 | | | Remained at CTF-Central in the general population with Medium A custody, Work Group / Privilege Group A1/A and assigned to a Teacher's Aide position.  On 2-14-92, Rush appeared before Unit Classification Committee for an Annual Review, his classification score were adjusted to 26 points.   Rush received a job change to the Vocational Drafting Program on 5-13-92.  On 9-4-92, Rush completed the Lifeskill Program.  Rush received numerous Education Progress Reports noting his grades as A's.  Remained disciplinary free during this period. |
| 12-92 | | | Remained at CTF-Central in the general population with Medium A custody, Work Group / Privilege Group A1/A and assigned to Vocational Drafting Program.   On 2-4-93, Rush appeared before Unit Classification Committee for an Annual Review, his classification score were adjusted to 18 points.  On 4-10-93, Rush was transferred to CTF-North and on 7-15-93 returned to CTF-Central. Rush was assigned to Vocational Drafting Program on 8-14-93.   Remained disciplinary free during this period. |

CORRECTIONAL COUNSELOR SIGNATURE                                                                DATE  9-22-93

NAME                          CDC NUMBER          INSTITUTION          CALENDAR          HEARING DATE

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [ ] ROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

INSTRUCTIONS
TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| | | | RUSH was received RCC-CIM for initial placement, subsequent to his conviction for Murder 2nd in the county of San Bernardino. He received a sentence of 15 years to life, plus a two (2) year enhancement for a total term of seventeen (17) years to life. On 1-13-89, RUSH was endorsed by the CSR for transfer to CTF as an override due to expected conforming behavior. RUSH was received at CTF-Central on 1-19-88. On 1-25-88, RUSH was seen by UCC for his initial classification. He was housed in the general population, assigned Close B Custody, and placed on both the support services and college waiting list. On 2-9-88, RUSH was assigned to the culinary. Nineteen days later, on 2-18-88, RUSH was placed on the textiles waiting list. He was reassigned to textiles on 3-17-88. RUSH remained assigned to textiles until the new college semester began. On 7-22-88, RUSH was assigned as a student in the Hartnell College program during the A.M. and as a teacher's aid in the P.M.. On 11-10-89, RUSH received a CDC 128-A counseling chrono for reporting early to class. NO medical problems are noted this period. One CDC 128-A counseling chrono and no CDC-115 disciplinary reports this period. <br><br> Continued Close B Custody while housed in the general population at CTF-C. Continue assignment to college and teachers aid. On 1-4-89, RUSH appeared before UCC for his annual review and the committee recommended CPP College/Teacher Aid. On 1-6-89, RUSH received his grades from Hartnell College. Chronos on file indicate A grades for the semester. |

| CORRECTIONAL COUNSELOR SIGNATURE | | DATE |
|---|---|---|
| | | 12-3-90 |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| RUSH | D-73321 | CTF | 12/90 | |

BPT FORM 1004 V 7 (REV)

0152

CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |

REASONS:

On 4-20-89 he was placed on the President's Honor Roll because of his academic achievement in the Hartnell College Program. In August, 1989, Rush was again placed on the President's Honor Roll. He also earned his AA degree in August, 1989. In September, 1989, Rush enrolled in the San Jose State University program at CTF. In addition to attending college, Rush works one-half day, five days per week, as a teacher's aid in the Basic Education classroom. His supervisor, Mr. Stansbury, indicates that Rush is an exceptional asset to the ABE program. One laudatory chrono, dated 10-11-89, for outstanding work performance. NO disciplinary reports this period. NO medical problems noted this period.

Continue Close B Custody while housed in the general population at CTF-C. Continue assignment to college and teacher's aid. On 1-10-90, Rush appeared before UCC for his annual review. The committee recommended CPP: College/Teacher Aid. On 2-5-90, RUSH appeared before FCC and his Close B Custody was reaffirmed because he was not eligible for a custody reduction due to time constraints. Continued to receive excellent college education progress reports. No disciplinary reports. No medical problems noted this period.

RDER:

- [ ] BPT date advanced by _____ months.
- [ ] PBR date advanced by _____ months.
- [ ] BPT date affirmed without change.
- [ ] PBR date affirmed without change.

ECIAL CONDITIONS OF PAROLE:

- [ ] Previously imposed conditions affirmed.
- [ ] Add or modify _____

- [ ] Schedule for Progress Hearing on appropriate institutional calendar.

| ME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| USH | D-73321 | CTF | 12/90 | |

*PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS*
*(REVISED AUGUST 1998)*
*PAROLE CONSIDERATION HEARING*
*AUGUST 2005 LIFER CALENDAR*

*CORRECTIONAL TRAINING FACILITY, SOLEDAD*
*JUNE 28, 2005*

### I.    IDENTIFYING INFORMATION:

Inmate Robert Dalton Rush, CDC# D-73321, is a 40-year-old, Caucasian male, born 05/07/65. As stated before, he considers himself a Presbyterian.

### II.    DEVELOPMENTAL HISTORY:

No additions or changes to the 1999 report by Dr. Terrini

### III.    EDUCATIONAL HISTORY:

No additions or changes to the 1999 report by Dr. Terrini.

### IV.    FAMILY HISTORY:

Inmate Rush said that his father is still alive, aged 67, but his mother passed away in 2001 at the age of 60. He still gets a visit from his father every month while his brother Brian visits about once a year. As before, he stated that neither his parents nor his grandparents had any problems with alcohol or drugs, nor were they ever arrested and/or placed in prison.

He stated that he had been raised by both parents, people who stayed married for life. He went on to say that his was a typical middle class home. Mom stayed at home for a long time as a homemaker, but eventually went to work as a teacher, while Dad was a businessman. He said that he got along well with them.

Inmate Rush also stated that he never ran away from home, nor did he ever get into trouble for lying or stealing. He said that the typical punishment for infractions within the home was grounding and other loss of privileges. However, he also noted that he received a few spankings up to age 10. He concluded by saying that he left home at 18 years of age.

### V.    PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

No additions or changes to the 1999 report by Dr. Terrini, other than the inmate had his first sexual experience at age 19, and has had about five sexual partners.

### VI.    MARITAL HISTORY:

No additions or changes to the 1999 report by Dr. Terrini. The inmate has no marital history.

*RUSH, R.*          *D-73321*          *CTF-NORTH*          *06/28/05*          *gmj*

*RUSH, ROBERT DALTON*
*CDC NUMBER: D-73321*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE TWO*

### VII.   *MILITARY HISTORY:*

No additions or changes to the 1999 report by Dr. Terrini. The inmate has no military history.

### VIII.   *EMPLOYMENT/INCOME HISTORY:*

Inmate Rush has a history of work. While in high school, he had been a dishwasher, and then a maintenance worker at a conference center after graduation from high school, a job that lasted for thee years while in college.

### IX.   *SUBSTANCE ABUSE HISTORY:*

Inmate Rush said that he had used alcohol first at 18, drinking socially at some parties in college. He went on to say that he had also used marijuana, but only about three times.

### X.   *PSYCHIATRIC AND MEDICAL HISTORY:*

Concerning his medical history, he denied any major health problems, but then added that he had had a motorcycle accident at age 20. He was being driven home from school on a friend's motorcycle when a truck hit the bike. This collision resulted in his suffering a fractured skull, among other major injuries.

### XI.   *PLANS IF GRANTED RELEASE:*

Inmate Rush plans to live in Arrowhead at his father's house. His father will support him until he gets a job. He went on to say that he can work in construction for a family friend, but eventually wishes to work as a cartographer.

*CLINICAL ASSESSMENT*
### XII.   *CURRENT MENTAL STATUS/TREATMENT NEEDS:*

This clinician is essentially in agreement with the previous estimates of Mental Status and treatment of inmate Rush as determined by Dr. Terrini.

#### *DIAGNOSTIC IMPRESSIONS (DSM-IV):*

*AXIS I:*     No contributory clinical disorder.
*AXIS II:*    No contributory personality disorder.
*AXIS III:*   GAF = 85.

### XIII.   *REVIEW OF LIFE CRIME:*

Inmate Rush reported that he and one of the other men who rented a room in the house where he lived had had an argument which led to inmate Rush being beaten

RUSH, ROBERT DALTON
CDC NUMBER: D-73321
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

up. Since the man who beat him up had a room that inmate Rush had to pass
before he could gain access to the bathroom he had reason to be concerned about
how the other person would treat him. However, picking up the rifle to carry with
him to protect himself clearly upped the ante, and at the least showed poor
judgment In fact, the other fellow was shot several times and killed when,
according to inmate Rush, he started to attack him. In discussing what he thought
about the crime at this point in time, he admitted that he should not have picked
up the gun. "Whatever John (the victim) did, he did not deserve to die." He also
admitted that he "should have come clean," i.e., should have been truthful about
what happened rather than lying about it and hiding the body. He went on to say
that he did not have the strength of character at the time. His remorse over the
terrible act he committed seemed quite sincere.

## XIV.  ASSESSMENT OF DANGEROUSNESS:

A.   He has not accumulated any CDC-115s since his entrance into the state
penal system. Given the sense of maturity he communicates, I am in
agreement with Dr. Terrini that his violence potential is less than that of
the average level II inmate.

B.   I also agree with Dr. Terrini that the inmate's potential for violence within
the free community is no more than that of the average citizen.

## XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

Considering the above, the inmate is a good candidate for parole.

R. Talbott, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

RT/gmj

D: 06/08/05
T: 06/25/05

D:\Word Files\BPT - 2005\RUSH, ROBERT  D-73321  07-05  TALBOTT.doc

RUSH, R.          D-73321          CTF-NORTH          06/28/05          gmj

MENTAL HEALTH EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
JULY 2002 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
APRIL 10, 2002

Inmate Robert Rush, CDC# D-73321, was seen for a mental
health evaluation for the Board of Prison Terms by Steven J.
Terrini, Ph.D., Staff Psychologist at CTF, on 10/15/99 for
the December 1999 Lifer Calendar.

According to the agreement that CDC psychologists made with
the Board of Prison Terms, once a mental health evaluation
is completed in the new format, revised in August 1998, a
new evaluation is not necessary each time the inmate appears
before the Board of Prison Terms.

Therefore, a mental health evaluation was not conducted at
this time.

*Bill Zika, Ph.D.*

**BILL ZIKA, Ph.D.**
**Senior Supervising Staff Psychologist**
**CORRECTIONAL TRAINING FACILITY, SOLEDAD**

BZ/gmj

D:  04/10/02
T:  04/10/02

RUSH        D-73321        CTF-CENTRAL        04/10/02        gmj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1999 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 15, 1999

This is the fourth psychological evaluation for the Board of
Prison Terms on inmate Robert Rush. This report is the
product of a personal interview, conducted on 10/15/99, as
well as a review of his Central file and unit health record.
This interview was a single contact with this individual for
the sole purpose of preparing this report.

I.    IDENTIFYING INFORMATION:

Inmate Rush is a 34-year-old, single, Caucasian male.
His date of birth is 05/07/65. He stated his religion
is Presbyterian. There were no unusual physical
characteristics noted and he denied any history of
nicknames or aliases.

II.   DEVELOPMENTAL HISTORY:

He denied any history of birth defects, abnormalities
of developmental milestones, a history of cruelty to
animals, a history of arson, or a history of physical
or sexual abuse as either a perpetrator or a victim.
He stated that he did have asthma as a child, but he
stopped having symptoms at the age of ten.

III.  EDUCATIONAL HISTORY:

Educationally, inmate Rush has a high school degree, a
BA degree and also completed a master's degree during
his incarceration period. He has also completed
vocational drafting. He is still currently in
vocational drafting and is on the waiting list for the
computer repair vocation. He has also taken an
entrepreneurship class. He also participated in Dr.
Bakeman's Life Skills group in the past.

IV.   FAMILY HISTORY:

Inmate Rush's parents are both still alive; his father
is 61 and his mother is 59. He stated he receives
monthly visits from them. He described them as being
very supportive. He also maintains contact with his
brother. He denied that any of his family members have
ever had any significant criminal, substance abuse or

RUSH      D-73321        CTF-CENTRAL        10/18/99        gmj        0158

RUSH, ROBERT
CDC NUMBER:  D-73321
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

psychiatric problems.  He stated that his relationships
with his family members have always been close.

V.    PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

Inmate Rush is a heterosexual male.  He denied any
history of sexual aggression.

VI.   MARITAL HISTORY:

Inmate Rush has never been married and has no children.

VII.  MILITARY HISTORY:

Inmate Rush denied any military history.

VIII. EMPLOYMENT AND INCOME HISTORY:

In the past, inmate Rush has been employed as a house
painter.  At the time that he was arrested for his
commitment offense, he was a full time student in
college.  When he paroles, he hopes to go into the
drafting field or perhaps works as a cartographer.

IX.   SUBSTANCE ABUSE HISTORY:

Inmate Rush denied that he ever had a significant drug
or alcohol problem, although he said he did
occasionally drink beer.  He also experimented with
marijuana somewhat, but did not ever abuse any illegal
drugs.  He is currently in Alcoholics Anonymous,
although he denied that he ever had a significant drug
or alcohol problem.

X.    PSYCHIATRIC AND MEDICAL HISTORY:

Inmate Rush was involved in a serious motorcycle
accident in the past which causes him some current back
problems.  He denied any other history of medical or
psychiatric hospitalizations, a history of serious
accidents or head injuries, a history of suicidal
behavior, or a history of seizures or other
neurological conditions.

XI.   PLANS IF GRANTED RELEASE:

When he paroles, he hopes to live with his parents.

RUSH, ROBERT
CDC NUMBER: D-73321
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

Given the information he provided to me (in particular,
his extensive education and support of his parents),
his parole plans appear quite viable and his prognosis
for community living is very positive.

<u>CLINICAL ASSESSMENT</u>

XII. <u>CURRENT MENTAL STATUS/TREATMENT NEEDS</u>:

Inmate Rush appeared his stated age. He was
appropriately dressed and groomed. He was coherent,
cooperative, calm and alert. His speech, flow of
thought and affect were all within the normal range.
His intellectual functioning was estimated to be in the
above average range. There was no evidence of a mood
or thought disorder. His judgment appeared to be
sound. He showed good insight into his commitment
offense.

<u>CURRENT DIAGNOSTIC IMPRESSIONS</u>:

AXIS I:    No Contributory Clinical Disorder.
AXIS II:   No Contributory Personality Disorder.
AXIS V:    GAF = 90.

His prognosis is extremely positive for being able to
maintain his current mental state in the community upon
parole.

XIII.<u>REVIEW OF LIFE CRIME</u>:

Inmate Rush described the circumstances surrounding his
commitment offense. His description was quite similar
to that given in past BPT psychological evaluations.
He acknowledged showing poor judgment in deciding to
bury the victim's body. He stated in past BPT reports
that his fear of the victim was a significant factor in
this crime. The remorse that he expressed was quite
appropriate and genuine.

XIV. <u>ASSESSMENT OF DANGEROUSNESS</u>:

A.  In consideration of several factors, including his
lack of any criminal history, his lack of a violent
criminal history, his lack of any CDC-115
violations and his lack of any violent CDC-115
violations, and his greater maturity and greater

RUSH, ROBERT
CDC NUMBER:  D-73321
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

education, his violence potential within a
controlled setting is estimated to be significantly
below average relative to this Level II inmate
population.

B.  If released to the community, his violence
potential is estimated to be no more than the
average citizen in the community.

C.  I see no particular risk factors that could be
significant precursors to violence for this inmate.
He has learned the hard way that he is capable of a
violent act, and because of that, I do not believe
he would ever commit a violent act again.

XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

1)  This inmate is competent and responsible for his
behavior.  He has the capacity to abide by
institutional standards and has done so during his
incarceration period.

2)  This inmate does not have a mental health disorder
which would necessitate treatment either during
his incarceration period or following parole.

3)  It does not appear this man ever had a significant
drug or alcohol problem and so there are no
recommendations in this area.

4)  In consideration of all the factors used to
determine his level of dangerousness mentioned
above, I believe this inmate is a very good
candidate for parole consideration.

STEVEN J. TERRINI, Ph.D.
Senior Supervising Psychologist (A)
Correctional Training Facility, Soledad

SJT/gmj

d:  10/15/99
t:  10/18/99

RUSH      D-73321      CTF-CENTRAL      10/18/99      gmj      0161

# LIFE PRISONER EVALUATION REPORT
## SUBSEQUENT PAROLE CONSIDERATION HEARING
### JULY 2002 CALENDAR
### ADDENDUM

**RUSH, R.**                                                D73321

Summary to read:

On 7/12/02, Inmate Rush received a copy of his Board Report for his scheduled Board of Prison Terms Hearing calendered for July 2002. Rush indicated he disagreed with his Board Report in the following area: Rush has completed his education while incarcerated (Bachelor's Degree) and is currently working on a Master's Degree through San Jose State University.

Amendment to Summary:

Upon further review of the Central File, a Certificate of Support dated 5/24/97 documented that Rush received his Master's of Arts Degree in Humanities dated 5/24/97 from California State University Dominguez Hills.

_L. R. Baka_

L. R. Baker
Correctional Counselor I
CTF-Central/Unit-I


_C. Plymesser_

C. Plymesser
Correctional Counselor II
CTF-Central/Unit-I


_L. Trexler_

L. Trexler
Facility Captain (A)
CTF-Central/Unit-I


_D. Levorse  CBPR(A)_

D. Levorse
Classification & Parole Representative
CTF


R. RUSH,              D-73321              CTF              07/2002

0163

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
OCTOBER 1996 CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
JULY 30, 1996

This is the third psychological evaluation for the Board of
Prison Terms on inmate Robert Rush.  This report is the product
of a personal interview, as well as a review of his Central file
and medical record.  In addition, I knew inmate Rush previously
due to his participation in the "Life Skills" program.

His crime consisted of the 1986, shooting death of his roommate
in an argument over household responsibilities.  He had no prior
criminal record.  He said his roommate beat him, apparently for
the enjoyment of it, mocking him.  His roommate reportedly tended
to be a bully.  Feeling helpless, he grabbed a .22 rifle he kept
under his bed and shot his roommate repeatedly, trying to stop
him from beating him.

He has had a good record with the Department of Corrections,
having no CDC-115 infractions during his entire incarceration.

He denied having any problem with drugs or alcohol prior to his
incarceration, but he does attend Alcoholics Anonymous now for
the social benefits.  Educationally, he has a bachelor of arts
degree and is working on his master's in arts degree and
humanities.  Vocationally, he is trained in drafting and
computers, and was formerly a painter.  His future plans include
going to live with his parents in Lake Arrowhead and working in
the area of computer drafting there.

MENTAL STATUS EXAMINATION:  Inmate Rush is a well developed, well
nourished man of medium build who appeared to be his stated age
of 31.  He was appropriately dressed and groomed, and was fully
cooperative during the interview.  His speech was clear and
readily understandable.  His affect was normal.  His flow of
thought was normal with no hallucinations nor delusions noted.
He was fully oriented with normal intellectual functioning.  His
attention and concentration were good.  His insight and judgment
also appear to be good.

PSYCHIATRIC DIAGNOSIS - DSM-IV:

AXIS I:     No contributory clinical disorder.
AXIS II:    No contributory personality disorder.
AXIS III:   No contributory physical disorder.

RUSH        D-73321       CTF-CENTRAL        08/02/96       gj

RUSH
D-73321
Page Two

PSYCHIATRIC CONCLUSIONS:  He does not appear to have any particular psychopathology which could have had an impact upon his behavior.  He does not now have a psychiatric condition which would benefit from mental health treatment following his release. He is showing improvement in his behavior.  If released, I expect him to be able to maintain the gains that he has made, especially since he had no prior criminal history.

SUGGESTED ACTIONS:  If he is to be continued in his present program, he should be encouraged to add to his vocational training as needed and to complete his master's degree in the humanities.  If he is considered for parole, his level of dangerousness is likely to be less now for the average inmate.

RECOMMENDATION TO CLASSIFICATION COMMITTEE:  Until released, he should:  1)  Add to his vocational training so that he will be able to get a good job.  2)  Complete his master's degree by correspondence.

*Bruce Bakeman, Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

RUSH        D-73321        CTF-CENTRAL        08/02/96        gj

0165

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
CONSIDERATION FOR PAROLE
DECEMBER 1993 CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
September 3, 1993

This is the second psychological evaluation for the Board of
Prison Terms on Robert Rush, DOB 5/7/65.  He was seen for a 30
minute interview, including a review of his Central file and
medical record.  This was the only contact for this evaluation.
Since his last psychological evaluation by Dr. Bakeman in 1990,
he has not experienced any psychiatric disorder.  He has
completed Dr. Bakeman's Lifeskills Group in 1992.  He
elaborately described the causative factors for his offense and
demonstrates significant self-understanding.  He expressed
sincere remorse for the offense.  He is currently emotionally
stable and appears to have a pro-social identification.

MENTAL STATUS EXAMINATION:  This is a neatly dressed, well
groomed male who appears to be his stated age.  He was relaxed
and cooperative.  Speech was normal and affect was appropriate.
He denies any symptoms of depression or psychosis.  He is
oriented and memory is intact.  Intellectual functioning is
estimated to be above average.  Attention and concentration are
good.  His insight into the offense indicates a high degree of
self-awareness.  His problem solving ability for hypothetical
situations indicates that his judgment is pro-social.  His
solutions for hypothetical dilemmas indicates that his moral
reasoning is excellent.

PSYCHIATRIC DIAGNOSIS:  No mental disorder.

PSYCHIATRIC CONCLUSIONS:  There is no psychopathology related
to the offense.  During observation in the institution he has
psychiatrically matured.  In a less controlled setting he is
likely to maintain his gains.  It is recommended that he be
removed from special calendar because he has received two more
favorable psychiatric reports with conclusions favorable for
release.  The reports have been written by more than one
examiner.  Psychopathology is not significantly related to

RUSH            D-73321            CTF-CENTRAL            9/3/93            rr

0166

RUSH
D-73321
Page 2

future criminal behavior and psychiatric opinion will not contribute towards a release decision. His violence potential outside of a controlled setting in the past is considered to have been average and is estimated to be decreased. This examiner agrees with the conclusions by Dr. Bakeman, in the first psychiatric evaluation for the Board of Prison Terms of 10/19/90. There are no further recommendations at this time.

RONALD H. KITT, Ph.D.
Clinical Psychologist
Correctional Training Facility, Soledad

RUSH          D-73321          CTF-CENTRAL          9/3/93          rr

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
DECEMBER 1990 ISL CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 19, 1990

This is the first psychiatric evaluation for the Board of Prison Terms on inmate Rush. This report is the product of a 30 minute interview, as well as a review of his Central file and medical records.

Inmate Rush has had a very good record during his time with the California Department of Corrections, having had no CDC 115s. He also had no drug or alcohol problem prior to his incarceration. His crime consisted of the shooting death of a roommate during an argument over household responsibilities. Inmate Rush was apparently frightened after the shooting, and with the help of a friend buried the body in secret. He expressed regret over the whole incident, having never done anything like that before, and apparently having no criminal history prior to this shooting. He was a college student at the time of his incarceration, and he has since completed his Associate of Arts degree from Hartnell College, graduating on the president's honor roll with a 4.00 grade point average. Now enrolled in San Jose State University, he is maintaining a 3.80 grade point average. He is already starting to investigate correspondence courses for his master's degree. His plans include possibly training as a paralegal or as an industrial organizational psychologist. He also hopes to get experience in data processing or other computer work.

MENTAL STATUS EXAMINATION: Inmate Rush is a well developed, well nourished, slender man who appeared to be his stated age of 25. He was appropriately dressed and groomed and seemed reasonably relaxed and cooperative during the interview. His speech was of normal intensity, rate, inflection and quantity. His affect was normal and seemed appropriate to the content of his thought. His flow of thought was normal with no hallucinations nor delusions noted. He seemed fully oriented with above normal intellectual functioning. His attention and concentration seemed good. His insight and judgment also seemed good. He has obviously thought about this crime a great deal and was fairly candid about the fear and confusion he felt at the time.

!SH          D-73321          CTF-CENTRAL          10/19/90          gj

RUSH
D-73321
Page  2


PSYCHIATRIC DIAGNOSIS:  (DSM-III-R)

AXIS I:      V71.09 - No diagnosis.
AXIS II:     V71.09 - No diagnosis.
AXIS III:    No diagnosis.
AXIS IV:     Psychosocial stress - one (none).
AXIS V:      Global assessment of functioning:  current 90, past year 90.

PSYCHIATRIC CONCLUSIONS:  Inmate Rush does not appear to have any
psychopathology which was a contributor to his offense.  Attacked by his
roommate, he appears to have felt afraid and confused at the time, and his
subsequent actions were a result of that situational fear and confusion.
He does not have a psychiatric condition which would benefit from mental
health treatment following his release.  He does appear to be doing what he
can to better himself and to increase his education during his time of
incarceration.  If released, he should be able to maintain these gains.

SUGGESTED ACTIONS:  If he is to be continued in his present program, he
should be encouraged to continue his education.  If he is considered for
parole, his level of dangerousness should be less than for the average
inmate.

RECOMMENDATION TO CLASSIFICATION COMMITTEE:  Until released, he should be
encouraged to continue his educational plans.  He seems to be doing very
well at it.


*Bruce Bakeman, Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad


RUSH          D-73321          CTF-CENTRAL          10/19/90          gj

0169

## PERIOD OF CONFINEMENT
### (RECORDS OFFICER USE ONLY)

|  | YR | MO | DAY |
|---|---|---|---|
| A        d Period of Confinement.. |  |  |  |
| Date Life Term Begins ....   + | 1987 | 12 | 17 |
| At Large Time......   + |  |  |  |
| PAROLE DATE   = |  |  |  |

## MISCELLANEOUS

2 YR Deny

Panel recommendations and requests:
_____ Become    X   Remain disciplinary free.
_____ Work towards reducing his/her custody level.
_____ Upgrade        vocationally        educationally
X Participate Confone self-help        therapy.
in            (and)
_____ Transfer    Cat. X    Cat. T.
to

PENAL CODE SECTION 3042 NOTICES   ☒ SENT   (Date) 1-9-03

## COMMITMENT OFFENSE

| 187 W/12022.5 | MURDER 2ND W/USE F'ARM |
|---|---|
| (Code Section) | (Title) |
| CR44594 | 01 |
| (Case Number) | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|---|---|---|
| 12-17-87 | 12-17-87 | 11-30-97 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|---|---|
| ☐ INITIAL    ☒ SUBSEQUENT (Hearing No.)   3 | 8-19-03 |

Department Representative
S. LEVORSE, C&PR

| Counsel for Prisoner | Address |
|---|---|
| STEVEN DEFILIPIS |  |

| District Attorney Representative | County |
|---|---|
| JON FERGUSON | SAN BERNARDINO |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a **proposed** decision
and order of the Board of Prison Terms. The decision becomes effective when issued following the
decision review process.*

| Presiding (Name) | Date |
|---|---|
| Concurring (Name) | Date |
| Concurring (Name) | Date |

| M. | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| SH, ROBERT | D73321 | CTF | 8/04 | 3-5-03 |

BPT 1001 (Rev. 1/91)

0170

BOARD OF PRISON                                                    STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| | |
|---|---|
| PRISONER'S NAME<br>RUSH, ROBERT | CDC NUMBER<br>D73321 |
| DATE OF HEARING<br>WEDNESDAY MARCH 5, 2003 @ 11:00 A.M | LOCATION<br>CORRECTIONAL TRAINING FACILITY - SOLEDAD |

## LEGAL STATUS

| | | |
|---|---|---|
| DATE RECEIVED<br>12-17-87 | DATE LIFE TERM STARTS (IF DIFFERENT)<br>12-17-87 | COUNTY<br>SAN BERNARDINO |
| OFFENSE<br>MURDER 2ND W/USE F'ARM | | CASE NUMBER<br>CR44594 |
| COUNT NUMBER(S)<br>01 | PENAL CODE SECTIONS(S) VIOLATED<br>187 W/12022.5 | |
| TERMS<br>17-LIFE | MEPD<br>11-30-97 | |

## OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| L MEMBER<br>K Risen | PANEL MEMBER<br>D STAR | PANEL MEMBER |
|---|---|---|

OTHERS PRESENT

☑ PRISONER (IF ABSENT, WHY)      Present

☒ ATTORNEY      STEVEN DEFILIPIS

☒ DEPUTY D. A.      JON FERGUSON

COUNTY OF   SAN BERNARDINO

☒ OTHERS:   See transcript - VNOK 5-

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATED BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____ , PAGES _____ THROUGH _____

☒ THE STATEMENT OF FACT IS

Incorp by Reference

☒ QUOTED FROM THE BOARD REPORT, DATED   7-2002   , PAGE(S)   1 + 2

☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING            ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
| --- | --- |
| RUSH, ROBERT, DALTON | D73321 |
| DATE OF HEARING | LOCATION |
| MONDAY AUGUST 19, 2002 @ 1:00 P.M. | CORRECTIONAL TRAINING FACILITY - SOLEDAD |

## LEGAL STATUS

| DATE RECEIVED 12/17/87 | DATE LIFE TERM STARTS (IF DIFFERENT) 12/17/87 | COUNTY SAN BERNARDINO |
| --- | --- | --- |
| OFFENSE MURDER 2ND W/USE F'ARM | | CASE NUMBER CR44594 |
| COUNT NUMBER(S) 01 | PENAL CODE SECTIONS(S) VIOLATED 187 W/12022.5 | |
| TERMS 15-LIFE PLUS 2 YRS | MEPD 11-30-97 | |

## OTHER COMMITMENT OFFENSES *OR STAYED COUNTS*

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
| --- | --- | --- | --- | --- | --- |
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| MEMBER | PANEL MEMBER | PANEL MEMBER |
| --- | --- | --- |
| *Moore* | *Garner - Easter* | |

OTHERS PRESENT

☐ PRISONER (IF ABSENT, WHY)

☒ ATTORNEY        S. DEFILIPPIS

☒ DEPUTY D. A.    NO REPRESENTATIVE        COUNTY OF    SAN BERNARDINO

☐ OTHERS:

## STATEMENT OF FACTS

☒ THE HEARING PANEL INCORPORATED BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON  12-17-96  , PAGES  6  THROUGH  18

☐ THE STATEMENT OF FACT IS

    ☐ QUOTED FROM THE BOARD REPORT, DATED _____ ,PAGE(S) _____

    ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

    ☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

1    CALIFORNIA BOARD OF PRISON TERMS

2         D E C I S I O N

3         DEPUTY COMMISSIONER STAR:  Okay.  We're

4    back on record.

5         PRESIDING COMMISSIONER RISEN:  Okay.

6    We'll reconvene the hearing.  All persons

7    previously present have returned to the room.

8    The time -- the time is 4:20.  The Panel

9    reviewed all -- let me back up.  The Panel did

10   not consider the evidence in the confidential

11   file.  So we did not refer to it.  The Panel

12   reviewed all information received from the

13   public and relied on the following

14   circumstances in concluding that the prisoner

15   is not yet suitable for parole and would pose

16   an unreasonable risk of danger to society or a

17   threat to public safety, if released from

18   prison.  The offense was carried out in a cruel

19   and callous manner.  The offense was carried

20   out in a dispassionate and calculated manner.

21   And the motive for the crime was inexplicable

22   and very trivial in relation to the offense.

23   These conclusions are drawn from the Statement

24   of Facts, wherein the prisoner, around July 1st

25   of 1986, had an argument with the victim.

26   This was an argument over household

27   ROBERT RUSH  D-73321  DECISION PAGE 1  3/5/03

1    responsibilities.  After the argument, Rush got

2    a .22 caliber rifle and shot the victim, John

3    Heinz, numerous times.  Following the murder,

4    one of the other roommates, a Marcus Hoy, a

5    codefendant in the case, arrived at the

6    residence.  Hoy and Rush cleaned the house of

7    incriminating evidence and placed the victim's

8    body in a plastic bag and then in a sleeping

9    bag.  They then drove the body to the Devil's

10   Canyon area where they buried the victim.  Rush

11   and Hoy later took the victim's truck to

12   Riverside and abandoned it.  Rush and Hoy used

13   some of the money from the victim to drink that

14   evening.  The hearing Panel notes that

15   responses to the 3042 letters, the San

16   Bernardino District Attorney's Office was

17   present at the hearing, participated, and was

18   in opposition to a finding of parole

19   suitability.  Also, four family victim next of

20   kin were at the hearing, participated in the

21   hearing, and they indicated that they were

22   against parole suitability also.  The Panel

23   makes the following findings:  The prisoner

24   needs to continue to participate in self-help

25   in order to face, discuss, understand and cope

26   with stress in a nondestructive manner.  Until

27   ROBERT RUSH   D-73321   DECISION PAGE 2   3/5/03

1   progress is made, the prisoner continues to be

2   unpredictable and a threat to others.  The

3   prisoner should be commended for remaining

4   disciplinary free, no 115s, for excellent work

5   ratings, for upgrading both vocationally and

6   educationally.  These positive aspects of his

7   behavior, however, do not outweigh the factors

8   of unsuitability.  In a separate decision, the

9   hearing Panel finds that it is not reasonable

10  to expect that parole would be granted at a

11  hearing during the following two years.  The

12  specific reasons for this finding are as

13  follows:  The prisoner committed the offense in

14  an especially cruel manner.  The offense was

15  carried out in a dispassionate and calculated

16  manner.  And the motive for the crime was

17  inexplicable and very trivial, in relation to

18  the offense.  Specifically, the prisoner and

19  the victim were involved in an argument over

20  household responsibilities.  They were

21  roommates at the time.  Prisoner Rush shot John

22  Heinz with a .22 caliber rifle numerous times,

23  killing him.  After the murder, Rush and one of

24  the other roommates cleaned the house of

25  incriminating evidence, placed the victim in a

26  plastic bag, then in a sleeping bag, took him

27  ROBERT RUSH   D-73321   DECISION PAGE 3   3/5/03

1    to a deserted area in Devil's Canyon, where

2    they buried him.  Rush and Hoy took the

3    victim's truck and abandoned it in Riverside

4    and they both later used the victim's money for

5    drinking.  The correctional counselor, Baker,

6    in his August of 2002 Board report states that

7    the prisoner would be -- would pose an

8    unreasonable -- an unpredictable degree of

9    threat to the public if released from prison.

10   Therefore, a longer period of observation and

11   evaluation of the prisoner is required before

12   the Board should find that the prisoner is

13   suitable for parole.  The Panel recommends that

14   the prisoner remain disciplinary free and

15   continue to participate in self-help.  Any

16   comments?

17           **DEPUTY COMMISSIONER STAR:**  No.

18           **PRESIDING COMMISSIONER RISEN:**  Okay.

19           **ATTORNEY DEFILIPPIS:**  I have one.

20           **PRESIDING COMMISSIONER RISEN:**  Sure.

21           **ATTORNEY DEFILIPPIS:**  Because this is a

22   rehearing and originally was a two-year denial

23   in August of 2002, I would ask that the

24   calculation of the two year term be given a

25   start date of August 19 of 2002, which was the

26   date that the original hearing was.

27   ROBERT RUSH   D-73321   DECISION PAGE 4   3/5/03

1      PRESIDING COMMISSIONER RISEN:  Well, I

2   am under the impression that cannot be done,

3   unless it's done in the office.  We grant one,

4   two, three, four year denials, five year

5   denials.  We don't change --

6      ATTORNEY DEFILIPPIS:  I understand that.

7   But Mr. Rush should not be punished for the

8   failures of the equipment and given an extra --

9   essentially an extra six, almost seven month

10  denial as a result of the equipment failure

11  that occurred in this case.

12      PRESIDING COMMISSIONER RISEN:  I

13  understand your concern, but there's nothing I

14  can do about it at this point.  I don't feel

15  that I have that authority.  We -- like I said

16  earlier, we grant one or two years.  That would

17  be something you could cover in an appeal.

18      ATTORNEY DEFILIPPIS:  No, I understand

19  that you grant one and two years.  But this

20  would affect the start date of the term, make

21  it consistent with when the original hearing

22  actually was in this case.  You wouldn't be

23  changing the length of the denial.

24      PRESIDING COMMISSIONER RISEN:  I don't

25  have the authority to do that, I don't believe.

26  That's my understanding.  I've run into other

27  ROBERT RUSH  D-73321  DECISION PAGE 5  3/5/03

100

1   situations where they tried to move someone

2   from a December date because it was around the

3   holidays to January, so they gave him a year

4   and a day.   Couldn't do it.   So we'll conclude

5   the hearing.   It's 4:25.

6           INMATE RUSH:   Thank you.

7                     --oOo--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   PAROLE DENIED TWO YEARS

26   FINAL DATE OF DECISION ———— JUN 0 3 2003

27   ROBERT RUSH   D-73321   DECISION PAGE 6   3/5/03

101

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, KARIN R. LEWIS, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total two in number and cover a total of pages numbered 1 through 100, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of ROBERT RUSH, CDC No. D-73321, on MARCH 5th, 2003, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated March 22nd, 2003, at Sacramento County, California.

Karin R. Lewis
Transcriber
**CAPITOL ELECTRONIC REPORTING**

LIFE PRISONER: PAROLE CONSIDERATION
PROPOSED DECISION (BPT §2041)

X   PAROLE DENIED   *2 YRS*

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

II.   [ ]   PAROLE GRANTED

A. Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ _____ Months

| Case No. | Count No. | Offense |
|----------|-----------|---------|

B. Firearm Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ _____ Months

C. Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ _____ Months

| Case No. | Count No. | Offense | _____ mos. |
|----------|-----------|---------|--------------|

| Case No. | Count No. | Offense | _____ mos. |
|----------|-----------|---------|--------------|

| Case No. | Count No. | Offense | _____ mos. |
|----------|-----------|---------|--------------|

D. Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .= _____ _____ Months

E. Postconviction Credit From _____ To _____ — _____ Months
                                   (Date)              (Date)

F. Total Period of Confinement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

I.   If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

PANEL HEARING CASE

| | Date |
|---|---|
| ...me | |
| ...me | Date |
| ...me | Date |

| | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| *Kish, Robert* | *D 73321* | *CTF* | *3-5-03* |

1005 (Rev. 8/1/81)

Distribution: White—C. File
                Canary—BPT
                Pink—Prisoner
0180

**LIFE PRISONER: PAROLE CONSIDERATION**
**PROPOSED DECISION (BPT §2041)**

I.  [ ]  PAROLE DENIED                    *2 year Denial*

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

---

II.  [ ]  PAROLE GRANTED

A. Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Months

| Case No. | Count No. | Offense |

B. Firearm Enhancement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

C. Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

| Case No. | Count No. | Offense | _____ mos. |

| Case No. | Count No. | Offense | _____ mos. |

| Case No. | Count No. | Offense | _____ mos. |

D. Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .= _____ Months

E. Postconviction Credit From _____ To _____ – _____ Months
(Date)          (Date)

F. Total Period of Confinement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-ponement of your parole date.

---

If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

**PANEL HEARING CASE**

| | Date |
| | Date  8-19 |
| | Date  1-02 |

| | CDC NUMBER | INSTITUTION | HEARING DATE |
| I, ROBERT | D73321 | CIF SOLEDAD | 8-19-02 |

0181

Distribution: White–C. File
Canary–BPT
Pink-Prisoner

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

# REQUEST FOR INVESTIGATION

TO: Executive Officer, Board of Prison Terms

Date: 8/19/02

Name Rush, Robert

Number D-73321

Institution: CTF

Board of Prison Terms Action: Parole denied 2 years

Panel Members: J. Moore; G. Garner-Easter

Areas To Be Covered: (List Numerically)

Copy of the police report is ordered. Pane wishes to review interviews of Hoy, Loveng & Patrick Galloway.

2). Number of fires shot, if gun was reload

3). If Victim as ~~located~~ shot in the hallway or while on his bed.

4). If Defendent was involved in any gang, occult membership

General Comments:

MEMBER/REPRESENTATIVE

**BOARD OF PRISON TERMS**                               **STATE OF CALIFORNIA**
LIFE PRISONER DECISION FACE SHEET

| PERIOD OF CONFINEMENT | | | |
|---|---|---|---|
| *(RECORDS OFFICER USE ONLY)* | YR | MO | DAY |
| At___ d Period of Confinement.. | | | |
| Date Life Term Begins .... | 87 | 12 | 17 |
| At Large Time...... | + | | |
| PAROLE DATE | = | | |

MISCELLANEOUS

*2 year Denial*

Panel recommendations and requests:
Become _____ ✓ _____ Remain disciplinary free.
Work towards reducing his/her custody level.
✓ Upgrade _____ vocationally _____ educationally
Participate _____ self-help _____ therapy.
✓ in
Transfer ____ (and) ____
to _____ Cat. X _____ Cat. T.

PENAL CODE SECTION 3042 NOTICES    ☒ SENT    (Date) JULY 5, 2002

COMMITMENT OFFENSE

| 187 W/12022.5 | MURDER 2ND W/USE F'ARM |
|---|---|
| (Code Section) | (Title) |
| CR44594 | 01 |
| (Case Number) | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|---|---|---|
| 12/17/87 | 12/17/87 | 11-30-97 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|---|---|
| ☐ INITIAL    ☒ SUBSEQUENT (Hearing No.)    # 2 | 07/17/00 |

Department Representative
S. LEVORSE, C&PR

| Counsel for Prisoner | Address |
|---|---|
| S. DEFILIPPIS | |

| District Attorney Representative | County |
|---|---|
| NO REPRESENTATIVE | SAN BERNARDINO |

PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a **proposed** decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

| Presiding (Name) | Date |
|---|---|
| | |
| Concurring (Name) | Date    8— |
| | 19- 02 |
| | (Name) | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| BUSH, ROBERT, DALTON | D73321 | CTF | JULY 2002 | 08/19/02 |

BPT 1001 (Rev. 1/91)                                        0183

☐ APPROVED ☐ REFER TO BOARD REVIEW COMMITTEE    ☐ REFER TO RECONSIDERATION PANEL

| INMATE:   **RUSH, Robert** | CDC NUMBER:   D-73321 |
|---|---|

| TYPE OF HEARING:   2nd subsequent parole consideration | DATE OF HEARING:   8/19/02 . |
|---|---|

The Decision Review Unit has completed a review of the above hearing and has identified the following issue which needs further review:

Review by the Decision Review Unit of the subsequent parole consideration hearing dated August 19, 2002, has disclosed that due to an apparent malfunction of the recording equipment, a significant portion of the hearing is not transcribable.

Since a complete record of the hearing is not only required by law, but is also necessary for a review of the hearing decision, a rehearing of the prisoner's second subsequent parole consideration hearing will be required.

**RECOMMENDATION: Disapprove the proposed August 19, 2002 hearing decision and schedule a rehearing on the next available calendar.**

| DECISION REVIEW UNIT SIGNATURE: | DATE: 11/5/02 |
|---|---|
| REVIEWED BY LEGAL COUNSEL ☒ YES ☐ NO: | LEGAL COUNSEL INITIALS: JPW | RESULT: ☒ CONCUR ☐ DISSENT |

LEGAL COUNSEL COMMENTS:

I have reviewed the above-referenced file and ☒ concur ☐ dissent with the Decision Review Unit.
COMMENTS:

EXECUTIVE OFFICER SIGNATURE:                    DATE: 11-6-02

0184

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

## BOARD REVIEW COMMITTEE REVIEW OF PROPOSED DECISION

| INMATE: **RUSH, Robert** | CDC NUMBER: **D-73321** |
|---|---|

TYPE OF HEARING: 2nd subsequent parole consideration        DATE OF HEARING:  8/19/02

☐ Affirm original decision        ☐ Schedule new hearing        ☐ Modify decision

Disapprove the proposed August 19, 2002 hearing decision and schedule a rehearing of the prisoner's second subsequent parole consideration hearing on the next available calendar.

SUPPORTIVE REASONING FOR DECISION:  *See attached BPT form 1138*

COMMISSIONER SIGNATURE        DATE        11/13/02        ☒ CONCUR        ☐ DISSENT

COMMISSIONER SIGNATURE        DATE        11/13/02        ☒ CONCUR        ☐ DISSENT

COMMISSIONER SIGNATURE        DATE        11/13/02        ☒ CONCUR        ☐ DISSENT

I dissent from the majority for the following reasons:

SIGNATURE                                                        DATE

BPT 1139 (4/87)                                                                    0185

BOARD OF PRISON TERMS                                             STATE OF CALIFORNIA
LIFE PRISONER DECISION FACE SHEET

## PERIOD OF CONFINEMENT

### (RECORDS OFFICER USE ONLY)

|  | YR | MO | DAY |
|---|---|---|---|
| Adjusted Period of Confinement | | | |
| Date Life Term Begins | +87 | 12 | 17 |
| At Large Time | + | | |
| PAROLE DATE | = | | |

## MISCELLANEOUS

*Parole Denied Two (2) Years.*

Panel recommendations and requests:
_____ Become    ✓ Remain disciplinary free.
_____ Work towards reducing his/her custody level.
✓ Upgrade    ✓ vocationally    _____ educationally
✓ Participate in    ✓ self-help (and)    _____ therapy.
_____ Transfer to    _____ Cat. X    _____ Cat. T.

PENAL CODE SECTION 3042 NOTICES  ☒ SENT    (Date) **JUNE 2, 2000**

## COMMITMENT OFFENSE

| 187 W/12022.5 | MURDER 2ND W/USE FARM |
|---|---|
| (Code Section) | (Title) |
| CR44594 | 01 |
| (Case Number) | (Count Number) |

| Date Received by CDC 12/17/87 | Date Life Term Begins 12/17/87 | Controlling MEPD 11/30/87 |
|---|---|---|
| Type of Hearing ☐ INITIAL    ☒ SUBSEQUENT (Hearing No.) **#1** | | If Subsequent Hearing, Date of Last Hearing 12/17/96 |

Department Representative
BY KELLAM TYLER, C & PR

| Counsel for Prisoner **ARY DIAMOND** | Address |
|---|---|
| District Attorney Representative ~~REPRESENTATIVE~~ DWIGHT MOORE | County SAN BERNARDINO |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a proposed decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

| Presiding (Name) *Sharon Lawin* | Date 07/17/00 |
|---|---|
| Concurring (Name) *A Soupin* (dissent 2-yr) | Date |
| Concurring (Name) *J Bordiain* | Date |

| Name **SH, ROBERT** | CDC NUMBER **D-73321** | INSTITUTION **CTF** | CALENDAR 12/99 | HEARING DATE 7/17/00 |
|---|---|---|---|---|

2 TAPES

BPT 1001 (Rev. 1/91)                                                    0186

INMATE: Rush, Robert

CDC NUMBER: D 73321

TYPE OF HEARING: Subseq

DATE OF HEARING: 7-17-00

A review of the hearing transcript and parole decision by the Decision Review Unit (DRU) has revealed the following error(s):

Pg 1 - Line 6 - For Robert Rush. Mr. Rush ...

<u>Recommendation:</u> To correct the error(s) set forth above in the hearing transcript, read the following language into the record at the next scheduled parole consideration hearing:

Pg 1 - Line 6 - For Robert Rush, CDC Number D 73321. Mr. Rush - - - -

APPROVED BY: Commissioner/Deputy Commissioner   Date: 8-4-00

[9/93]                    PERMANENT ADDENDA

0187

77

1        CALIFORNIA BOARD OF PRISON TERMS

2                D E C I S I O N

3        DEPUTY COMMISSIONER FILANGERI:  You're now

4    on the record, Ms. Lawin.

5        PRESIDING COMMISSIONER LAWIN:  Thank you.

6    All parties have returned to the room in the

7    hearing for Mr. Rush.  The Panel has reviewed all

8    information received from the public and relied on

9    the following circumstances in concluding that the

10   prisoner is not suitable for parole and would pose

11   an unreasonable risk of danger to society or a

12   threat to public safety if released from prison:

13   The commitment offense was carried out in an

14   especially cruel and callous manner, in a manner

15   which demonstrates an exceptionally callous

16   disregard for human suffering, and the motive for                3

17   the crime was very trivial in relation to the

18   offense.  These conclusions are drawn from the

19   Statement of Facts wherein the prisoner shot and

20   killed the victim, John Heinz, his roommate, after

21   the two had apparently had a verbal argument which

22   escalated into a physical altercation.  He then

23   took the victim's body and buried it, also removed

24   personal items and either threw them away or

25   utilized them.  The prisoner has not sufficiently

26   participated in beneficial self-help programs.  We

27   ROBERT RUSH  D-73321       DECISION PAGE 1    07/17/00

78

1   do note that in terms of misconduct, he only has

2   one 128(a) counseling for out of bounds since his

3   incarceration and no 115s.  And also that he does

4   have realistic parole plans in the last county of

5   legal residence.  The Hearing Panel notes that

6   responses to P.C. 3042 notices indicate opposition

7   to a finding of parole suitability, specifically

8   from the judge, Judge Bob Krug, K-R-U-G, from the

9   San Bernardino Superior Court who is now retired,

10  the District Attorney's office of San Bernardino

11  County, who sent a representative to this hearing,

12  as well as four victim's next-of-kin who attended

13  and voiced their opposition.  The Panel makes the

14  following findings:  The prisoner needs therapy in

15  order to face, discuss, understand, and cope with

16  stress in a nondestructive manner.  Until progress

17  is made, the prisoner continues to be unpredictable

18  and a threat to others.  Nevertheless, the prisoner

19  should be commended for his educational

20  achievements since his incarceration, as well as

21  for his vocational drafting and exceptional and

22  exemplary reports while in drafting, as well as his

23  participation in AA and Entrepreneurial Development

24  class.  However, these positive aspects of his

25  behavior do not outweigh the factors of

26  unsuitability.  This is a two-year denial.  In a

27  ROBERT RUSH  D-73321      DECISION PAGE 2    07/17/00

79

1    separate decision, the Hearing Panel finds that it

2    is not reasonable to expect that parole would be

3    granted at a hearing during the following two

4    years.  The specific reasons for this finding are

5    as follows.  And before I go any further, this is a

6    majority decision and I will allow Mr. --

7    Commissioner Filangeri to discuss his reasons for a

8    separate decision at the conclusion.  The prisoner

9    committed the offense in an especially cruel

10   manner.  It was carried out in a dispassionate

11   manner.  He was in a verbal altercation -- an

12   argument rather, which became a physical

13   altercation with his roommate, John Heinz.  He shot

14   and killed Mr. Heinz and then disposed of his body

15   by burying him, further disposing of his personal

16   items by throwing them away or utilizing them.  And

17   this offense was carried out in a manner which

18   demonstrates an exceptionally callous disregard for

19   human suffering.  The motive for the crime was very

20   trivial in relation to the offense.  The prisoner

21   has not completed necessary programming which is

22   essential to his adjustment and needs additional

23   time to gain such programming.  Therefore a longer

24   period of observation of the prisoner is required

25   before the Board should find the prisoner is

26   suitable for parole.  The Panel recommends that the

27   ROBERT RUSH  D-73321       DECISION PAGE 3    07/17/00

80

1    prisoner remain disciplinary-free, and if available

2    continue to upgrade vocationally, and if available

3    participate in self-help programs.  Mr. Rush, I

4    felt although you have programmed exceptionally

5    well that I'm really not certain that you fully

6    grasp what has occurred here, your participation in

7    the crime specifically and your motives for the

8    shooting.  That's the area that I believe --

9         DEPUTY COMMISSIONER FILANGERI:  I'm sorry.

10        [Thereupon, the tapes were changed.]

11        DEPUTY COMMISSIONER FILANGERI:  This is side

12   three for Robert Rush, R-U-S-H, CDC number D-73321.

13        PRESIDING COMMISSIONER LAWIN:  Thank you.  I

14   believe that you need to spend more time looking at

15   your responsibility at your participation in this,

16   and I hope that you can find some sort of self-help

17   program that will assist you in gaining some

18   insight into it.  I don't know what else is

19   available here.  I'm hopeful that there is

20   something more that you can participate in.

21   Commissioner Bordonaro?

22        COMMISSIONER BORDONARO:  No comment.

23        PRESIDING COMMISSIONER LAWIN:  Commissioner

24   Filangeri.

25        DEPUTY COMMISSIONER FILANGERI:  Thank you.

26   I dissented for unsuitability for three years for

27   ROBERT RUSH  D-73321    DECISION PAGE 4    07/17/00

1    the simple fact that I didn't think that in any two

2    year period regardless of how much therapy you got

3    that you would not pose an unreasonable risk to

4    public safety.  You described your state at the

5    time of the commitment offense as being angry,

6    afraid, and overwhelmed, and when I gave you ample

7    opportunity to tell me what you had gained from

8    your prison experience so far, you were very

9    cerebral.  I got the impression that you were

10   defending against getting to your gut where this

11   sort of motivation occurs.  That being the case,

12   I'm afraid that if you found yourself angry,

13   afraid, and overwhelmed some time in the future

14   you'd be more likely to commit a crime than would

15   the average person.  That therefore makes you an

16   unreasonable risk to public safety.  Having

17   committed a violent act, you're an extreme risk to

18   public safety under those circumstances.  That's

19   all I have.  Thank you.

20          PRESIDING COMMISSIONER LAWIN:  Thank you.

21          DEPUTY COMMISSIONER FILANGERI:  Oh, no,

22   excuse me.  But you should be definitely commended

23   for all the good work you've done academically.

24   That's incredible, and I hope you pick up some more

25   of that.  Thank you.

26          PRESIDING COMMISSIONER LAWIN:  Thank you.

27   ROBERT RUSH  D-73321    DECISION PAGE 5    07/17/00

82

1    That will conclude the hearing at 3:22.

2                          --o0o--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    PAROLE DENIED TWO YEARS

26    EFFECTIVE DATE OF THIS DECISION_____AUG 0 4 2000_____

27    ROBERT RUSH   D-73321      DECISION PAGE 6    07/17/00

0193

PRISON TERMS

STATE OF CALIFORNIA

**PRISONER: PAROLE CONSIDERATION**
**PROPOSED DECISION  (BPT §2041)**

[X]  PAROLE DENIED   *Two (2) Years*

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [ ]  PAROLE GRANTED

A.  Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Months

| Case No. | Count No. | Offense |
|---|---|---|

B.  Firearm Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

C.  Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|

D.  Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .= _____ Months

E.  Postconviction Credit From _____ To _____ — _____ Months
        (Date)              (Date)

F.  Total Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

I.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

**PANEL HEARING CASE**

| me | *Sharon Lawin* | | Date | 07/ |
|---|---|---|---|---|
| me | *[signature]* (absent 3-9R) | | Date | 7/17/0? |
| me | *[signature]* | | Date | |

| SH, R | CDC NUMBER D73321 | INSTITUTION CTF | HEARING DATE 07/17/00 |
|---|---|---|---|

0194

Distribution: White—C. File
Canary—BPT

1005 (Rev. 8/1/81)

PLACE IN C FILE

**BOARD OF PRISON TERMS**                    STATE OF CALIFORNIA
**OFFICE OF POLICY AND APPEALS**
**DECISION ON APPEAL**

Your appeal was received by the BPT Office of Policy and Appeals on November 7, 2000.
Received necessary documents on November 7, 2000.

Decision at issue

Life parole consideration hearing of July 17, 2000. Parole denied. Next hearing in 2 years.

Reasons for appeal

1. The prisoner contends that the Board improperly found him unsuitable for parole.
2. The prisoner contends that the reasons given by the Board for the decision are unconstitutionally vague.
3. The prisoner contends that the panel was required to find him suitable based on a recent Court of Appeal opinion entitled *In re Rosenkrantz* (2000) 80 Cal.App.4th 409.

The following represents the findings, determination, and order of the Board of Prison Terms, State of California.

   [ X ] Deny                    [  ] Grant                    [  ] Dismiss

COMMISSIONER _Leonard Muñoz_                              DATE 4/10/01

COMMISSIONER _____                               DATE 4/10/01

NAME                CDC NUMBER              INST/REGION            DECISION DATE
RUSH, Robert        D-73321                 CTF-C                  APR 1 0 2001

RCS/mr

0195

APPEAL DECISION

Introduction

Title 15 of the California Code of Regulations (Title 15 CCR), § 2400 et seq., sets forth parole suitability criteria and procedures for life prisoners who committed murder on or after November 8, 1978. Prisoner rights are specified at Title 15 CCR §§ 2245-2256. Appeals from parole consideration hearings are governed by Title 15 CCR §§ 2050-2057.

Decision on Appeal

1. The prisoner contends that the Board improperly found him unsuitable for parole. PC §3041(b) provides as follows:

> The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

The Board's discretion in determining parole suitability has been described in the California Supreme Court case of *In re Powell* ((1988) 45 Cal.3d 894) as follows (page 902):

> The Board's discretion in parole matters has been described as 'great' (Falk, *The Supreme Court of California 1971-1972* (1973) 61 Cal. L. Rev. 273, 427-428) and 'almost unlimited' (Note, *The California Adult Authority* (1972) 5 U.C. Davis L. Rev. 360, 368, 376-377). The Board's exercise of its broad discretion 'involves the deliberate assessment of a wide variety of individualized factors on a case-by-case basis, and the striking of a balance between the interests of the inmate and the public.' (*Fain I, supra,* 65 Cal.App.3d at 389.)

In the prisoner's case the panel relied on the following circumstances in determining that the prisoner would pose an unreasonable risk of danger to society if released: the gravity of the life crime wherein the prisoner fatally shot a roommate and then buried the body; and insufficient progress in prison. The Appeals Unit finds that there are clearly sufficient findings to support a finding of unsuitability under PC §3041(b).

2. The prisoner contends that the reasons given by the Board for the decision are unconstitutionally vague. The validity of the criteria for suitability in PC §3041(b) has been litigated and approved by *In re Seabock* ((1983) 140 Cal.App.3d 29, 38 footnote 8 [petition for hearing denied 4/20/83]). What the prisoner is actually objecting to is the use of language such as, "especially heinous, atrocious and cruel" in applying this criteria. While use of such wording in the abstract as a criteria for greater punishment has been held improper (see *People v. Superior Court* (1982) 31 Cal.3d 797, 803) the use of such words modifying a statement of facts regarding a thoroughly discussed life offense which are further explained by a paragraph outlining factual detail is not.

3. The prisoner contends that the panel was required to find him suitable based on a recent Court of Appeal opinion entitled *In re Rosenkrantz* (2000) 80 Cal.App.4th 409. In this case, the Court of Appeal concluded that a denial of parole could ultimately be based entirely on the nature of the commitment offense, as long as all other administratively prescribed relevant factors were considered by the Board. (*Id.* at p. 426, fn. 18, *citing, In re Seabock* (1983) 140 Cal.App.3d 29, 38-39.) The Court noted that the Board is authorized by statute to determine parole suitability, and to exercise its discretion in deciding

whether to grant or deny parole. (*Id.* at p. 423.)  According to the *Rosenkrantz* opinion, the Board's discretion, although broad, is not absolute and the Board's decisions must be supported by "some evidence". (*Id.* at p. 423-424.)  Ascertaining whether this some evidence standard is satisfied does not require an examination of the entire record or weighing of the evidence. (*Superintendent v. Hill* (1985) 472 U.S. 445, 455-457.)  Instead, the relevant question is whether there is **any evidence** in the record that could support the conclusion reached by the panel. (*Id.*)

In the present case, there is ample evidence to support the panel's unsuitability finding.  First, the facts and circumstances surrounding the life crime reveal that the prisoner shot and killed the victim and then buried his body.  Second, the prisoner has not sufficiently participated in beneficial self-help programs.

Exhaustion of Remedies

Since all grounds of appeal must be included in the same appeal (Title 15 CCR § 2052(a)(2)), this decision is the final administrative decision on all issues from the decision in question.  No further appeals or requests for review based on the issues from this decision will be accepted.

LAW OFFICES OF

### GARY M. DIAMOND
POST OFFICE BOX 371
ROCKLIN, CALIFORNIA 95677
TELEPHONE (916) 315-0817 • FAX (916) 315-0819

November 1, 2000

Board of Prison Terms
Appeals Coordinator
1515 K Street, Suite 6
Sacramento, CA 95814

**Re: Robert Rush, D-73321**

Dear Appeals Coordinator,

Enclosed please find a 1040 appeal for the above named inmate.

Sincerely,

Gary Diamond
Attorney at Law

NOV - 7 2000

BOARD OF PRISON TERMS

0198

ADMINISTRATIVE APPEAL
OF SUBSEQUENT PAROLE CONSIDERATION HEARING
FOR ROBERT RUSH, D-73321
JULY 17, 2000
SOLEDAD STATE PRISON, SOLEDAD, CALIFORNIA

Petitioner was received by the California Department of Corrections on December 17, 1987, from the County of San Bernardino, for the offense of murder in the second degree. (Case Number CR44594). Petitioner received a sentence of 15 years to life, plus two years. His minimum eligible parole date was November 30, 1997.. At his recent parole consideration hearing petitioner received a two-year denial.

At the start of the hearing the panel stated, The purpose of today's hearing is to consider your suitability for parole. In arriving at a decision, we will consider the number and nature of the crimes for which you were committed to state prison, your prior criminal history, if any, your social history, and your behavior since your incarceration. (Hearing transcript at 3)

In considering the above suitability factors, as the panel admits it must, a California Court of Appeal has recently published an opinion giving clear guidance to the Board of Prison Terms in making suitability determinations. *In re Robert Rosenkrantz*, April 27, 2000, Second District Court of Appeal, Division I. The *Rosenkrantz* court stated the law succinctly.

> The Board of Prison Terms is authorized by statute to determine parole suitability, and to exercise its discretion in deciding whether to grant or deny parole (Penal Code Sections 3040, 5075 et seq. *In re Fain*, (1983) 145 Cal.App.3d 540, 548.) That discretion, although broad, is not absolute, and the Board's decisions must be supported by "some evidence." (*In re Powell*, (1988) 45 Cal.3d 894, 902-904; see also, *Terhune v. Superior Court*, (1998) 65 Cal.App.4th 864, 872--873; *In re Minnis*, (1972) 7 Cal.3d 639, 646-647 [although a prisoner serving an indeterminate sentence is 'not entitled to have his term fixed at less than the maximum or to receive parole, he is entitled to have his application for these benefits duly considered'].) On this appeal, the Board of Prison Terms pays lip service to these rules but contends, without reference to the facts of this case, that it acted within its discretion in finding *Rosenkrantz* unsuitable for parole and that, because the Board says so, the Superior Court abused its discretion in concluding otherwise. We disagree.

The appellate precedent of *Rosenkrantz* establishes that the Board's discretion must be supported by a factual foundation. General conclusions stating that the prisoner is unsuitable merely because the crime was especially "heinous," or "callous" are, under *Rosenkrantz*, insufficient. Factual evidence must support a finding of unsuitability.

*Administrative Appeal of Robert Rush*

Page 1

Petitioner submits that the Board's decision in this case lacks a sufficient factual foundation.

Petitioner has made substantial positive progress while incarcerated. His psychiatric evaluations as well as his Board Reports all show petitioner has demonstrated an increased maturity level since his incarceration. Petitioner has insight into his crime, and offers sincere remorse for both the victim and the victim's family. In addition, petitioner has marketable job skills and realistic parole plans once he is released to the community.

Evidence was submitted at the hearing that upon his release petitioner has the essential elements, marketable job skills and strong family support to return to society and become a productive member.

It is apparent that the true reason for denial of parole was simply the commitment offense. While the commitment offense was indeed horrendous, the likelihood that petitioner will re-offend is extremely remote.

Petitioner can never change the facts of the crime nor the seriousness of the crime. However, petitioner can and has changed his behavior and attitude drastically since the crime. All documentation relevant to petitioner indicates that he poses a very low degree of threat to public safety if released from prison.

The commitment offense alone cannot justify the denial of parole.  See In re Minnis 7 Cal.3d 639, (1972) (denial of parole based on the commitment offense "violates the spirit and frustrates the purposes of the indeterminate sentencing law and parole system, completely disregards the individual prisoner's conduct in prison and his disposition for reform, fails to satisfy the Board's obligation to weigh all relevant factors in the parole decision and violates due process"); In re Rodriguez, 14 Cal.3d 639, 649-650 (1975) citing Minnis with approval (denial of parole based on the offense violates the Board's duty to set terms proportionately to "make the punishment fit the criminal as well as the crime.").

The Courts have recognized that parole boards have great latitude in conducting a parole hearings.  Parole boards, however, do not have unfettered discretion; rather, the Board's discretion is guided by application of various factors and,

> [I]nvolves the deliberate assessment of a wide array of individualized factors on case-by-case basis, and the striking of a balance between the interests of the inmate and the public.  (Cite omitted) The authority, acting through one of its panels to grant a parole, is thus a deliberative body by necessary definition.

(emphasis original).  In re Fain, 65 Cal.App.3d 376; 135 Cal.Rptr. (1976) at 386 (citing In re Schonegarth, 66 Cal.2d. 295, 304; 57 Cal.Rptr 600, 425 P.2d 200 (1967)).

*Administrative Appeal of Robert Rush*