State of California                                              June 7, 2005
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 2000
Sacramento, CA 95814

Dear Sirs:

This letter is in regards to a young man by the name of Rob Rush. I have written letters in 1996, 1999, 2002, and now I am writing again. As you can see, I do not give up on trying to achieve freedom for Rob.

He has shown remorse, achieved his academic goals, and has helped others to better themselves while he has spent time behind bars. Please think about how much he could help others outside, if he is only given the chance.

I was a very good friend of his mother, whose wish was that he would be free before cancer ravaged her body. This did not happen, but I hope against hope that this time the Board will see Rob as the person he is—a person deserving of starting life anew and having the chance to be a contributing citizen in the community where he resides.

Please look at his record. If he were your son, wouldn't you think he deserved another chance?

Sincerely,

*Mrs. Margaret Dickson*

Mrs. Margaret Dickson (Retired school teacher)
P.O. Box 1
Cedar Glen, CA 92321
Phone: (909) 337-3784

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, California 95814

June 7, 2005

To Whom It May Concern,

I am writing to you in regards to Rob Rush who's parole hearing is scheduled for sometime this year. Even though I have never met Rob, I have know his father for seventeen years. His father and I live in the same community and teach at the same school. I am proud to consider him one of my friends.

Dick is very well regarded in our community and is very involved in his church. Rob is very lucky to have such a caring and loving father. There is no doubt in my mind that he receives all the emotional and financial support that he can give.

During his time in prison Rob has earned a B.A. from San Jose State as well as a M.A. in Humanities from Cal State Dominguez Hills. He has also been involved as a reading and computer drafting tutor. I am sure he is well prepared to enter society and become a self supportive and law abiding citizen.

I believe Rob is a good person and deserves another chance.

Sincerely,

Monica Dam

06.07.05

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, CA 95814
            Re: Rob Rush D733221
                Soledad, CA 93960

To Whom It May Concern:

We wish to confirm our comments to you in our letters of 5.22.01 and 9.7.99. We further have some additional comments that we believe will be of value to the Board in making a decision regarding the parole of Mr. Rob Rush.

We are continually honored by Rob's accomplishments while in prison. He has not only earned a Bachelor and Masters Degree while in prison, but he has helped many other prisoners as a teacher. We sincerely feel he will use this knowledge to serve others upon his release. Rob has helped many prisoners, has been disciplinary free, and participated in Self Help programs.

We have known, Rob and his extended family for over 30 years. Rob and our son played in each other's home many times as they were growing up. Rob was a quite bashful child. He was always kind, generous, and pleasant to be around. Rob is certainly not a threat to society. We believe he has served his time for his misdeed and that it is time for him to participate as a positive giving person in society.

We presently live in California. Thirty years of our lives were spent helping others as leaders in the United Way. Continuing in that endeavor, I Rolland Hoffman have written a book called SAIL to Your Purpose. Mrs. Hoffman and I are reaching out to the world to help others through our website and the Christian book.

We continue to be in touch with Rob's father and brother. We consider them as very special friends. Before her death Ann Rush, Rob's mother and Mrs. Hoffman were very close Christian friends.

We sincerely pray that the members of the Board of Prison Terms Commissioners will look carefully at this man's record before prison and while in prison. Rob can and will be a model citizen. Upon his release, he will make each member of the board realize that justice has been done. Rob Rush has served his time in prison as a productive person. He will do the same when he returns home to his family and friends.

We stand ready to help Rob Rush upon his release from prison. We know that he has a positive productive future and will be of value in his community.

Sincerely,

Rolland E. Hoffman

Marilyn Jo Hoffman      6/7/05

0271

July 13, 2002

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, California 95814

Dear Sirs,

      I am writing in regards to the parole of Rob Rush. I have taught at Lake Arrowhead Elementary School for sixteen years, during which time I have been colleagues and friends of both Dick and his recently deceased wife, Ann. We know of Rob's history through this relationship.

      I support Rob's parole for the following reasons. He has been a model prisoner and has made the most of his incarceration by earning his Bachelor's Degree, computer drafting certification, and tutoring others. This indicates that Rob is well prepared to support himself and work well with others when he is released. He has maintained close relationships with his family and I am certain that he will have both his family and community support upon his release. His accomplishments in prison, relationships and support of family and friends indicate to me that Rob has developed the character and learned the skills needed to become a productive and successful member of our society. I believe he is ready to do so, and that it is time to give him that opportunity. I ask that you grant his parole at this time.

Sincerely,
Patricia Ottoson

June 9, 2005

Dear Sirs,
      Please note that my original letter of support still applies. I truly believe that Rob poses no threat whatsoever and request and support his parole.

Sincerely,
Patricia Ottoson

0272

NIC
Jury

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, CA 95814

June 10, 2002

Dear Commissioners:

Robert Rush is my cousin. I have known him for quite a long time because he spent his early years growing up in Denver, not far from my home in Boulder, Colo. I have a son close in age to Robert, who especially enjoyed our family's visits with the Rush family.

Robert's record of accomplishment while in prison is well known; it is exemplary. The discipline and motivation required to earn undergraduate and graduate degrees attest to this man's maturation, as well as his intellectual and emotional growth under difficult circumstances. As commissioners interested in making the best decision with regard to parole, I trust that you are aware of Robert's accomplishments, his positive attitude, volunteer activities, model record of behavior, and self-improvement.

At some point, we all have to ask ourselves about the purpose of serving time for past mistakes? What is fair, just, and reasonable in a civilized society? Experts on penal codes and prison management generally cite punishment and rehabilitation.

Robert clearly made a serious mistake in judgment in his young life. I am convinced it was an act of self-defense and not premeditated, but his decision to take a life was certainly wrong. His over-reaction in dealing with a bully makes no sense to rational people, but it was not the act of a habitual criminal. The impulsiveness of youth, the glamorization of violence in our everyday lives, or simply his provincial life experiences—whatever the reasons for his isolated act of violence, Robert has paid a price to society for his mistake. If set free, he represents no threat to the community.

The question now is what can be done—by all of us—to set this man on the correct path. What can we do to return Robert to society so that he can lead a productive life on the outside? Additional incarceration after serving some 16 years does not seem justified or necessary. Added prison time and expense to the State won't bring back the life of the young man who was killed. But we can sustain, nurture, and support Robert by giving him his freedom now and the opportunity to start a new life. We need to deal with the living, not the dead.

I have no qualms about supporting Robert after he is paroled. I would be happy to offer references and assist in a job search. I have faith in his rehabilitation and his commitment to excellence. I beseech the Board of Prison Terms Commissioners to set this man free. Robert deserves to start a new life. His debt to society is paid, and it is now time for him to start paying his own way on the outside by using the training and education that he so diligently pursued behind prison walls. Be lenient, forgiving, fair, and compassionate in this time of need.

Thank you for your interest and support.

Jon W. Raese
Jon W. Raese

905 Morgan Dr.
Boulder, CO 80303
Telephone: 303-494-5537

June 1, 2002

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, CA 95814

Dear Sirs:

This letter is in regards to a young man by the name of Rob Rush. I wrote a letter in 1996 and another in 1999 asking the Board to look carefully at this young man's record since he has been incarcerated.. As I have stated before and still maintain, he has certainly shown his remorse for his crime and his desire to become a successful member of society. PLEASE look carefully at his record. as you decide his future. His hope for a meaningful life is in your hands.

Sincerely,

Mrs. Margaret Dickson(Retired school teacher)
P.O.Box 1
Cedar Glen, CA  92321
Phone :  (909) 337-3784

May 28, 2002

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, CA. 95814

RE: Robert Rush

To whom it may concern:

We had an opportunity previously to write a letter on behalf of Dick and Ann Rush for their son Rob. In that letter we spoke of Dick and Ann's commitment to have an opportunity to bring their son back into society. The comments expressed in that letter reflected our sincere belief that Dick and Ann would welcome and provide the best environment for Rob.

Since Ann Rush passed away, Dick made a commitment to Ann that he would continue his efforts to help Rob seek his parole. We have seen Dick continue his efforts and know that his interest and caring for Rob remains high. We know that if Rob was given an opportunity to return home to his father that he would be returning to the best possible environment.

Once again, we support Dick Rush's efforts and hope that our sentiments will be considered.

Sincerely

Manuel & Barbara Acuña
P. O. Box 3635
Blue Jay, CA. 92317

0275

March 6, 2005

Dear Commisioners,

My name is Walter Escherich. I am 40 years old, and spend no less than 40 hours a week working for a 100 year old Civil Engineering firm where I hold down the Photgrammetric arm of the operation.

I met Robert Rush when I was a college freshman, and we hit it off well due to common interests in geography, science and conservation.

I would like to tell you what I know about Robert's situation today, and I want to tell you some of the things I see today regarding his future, and hope that you will agree with me.

In the first place, Robert has learned an engineering and architecture software package called AutoCad very well. He is more knowledgeable about it than college graduates who have been hired on the team at the office. Robert calls me on the phone and asks technical questions that can only be approached by people who truly have a deep knowledge and understanding of the software. That is a valuable skill and would lend itself heavily to his credentials as a team member at any architecture or engineering firm.

Beyond this, I have some pull in my office in terms of personnel, as we are a somewhat small operation with extremely capable and bright people. Robert would fit in well with the team members, and I see no reason why he could not be employed as a CAD operator/draftsman, field crew member, or document conversion specialist.

Sincerely,

Walter Escherich

Roy E. Holes
P.O. Box 3186
Blue Jay, Ca.
92317
1 July 2002

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, Ca. 95814

Gentlemen:

My name is Roy E. Holes. I last communicated with you on 4 September 1999 when I wrote to you in behalf of Rob Rush, a model prisoner at the Soledad State Prison for the last 16 years. I would like to reaffirm all that I said about Rob in that letter. A few things have changed due to the passage of time. Ann Rush, Ron's mother and chief advocate, has died of cancer. My good friend, who was head of the drafting department at Fleetwood Industries, has retired and will no longer be in a position to hire Rob when he is released, however he has maintained contact with some of the people who are now in positions of authority at Fleetwood and who might be able to help Ron, perhaps hire him. I will arrange a meeting with my friend. Other than that I have nothing to add. Rob continues to be in the thoughts and prayers of all of us here and we are hopeful that his accomplishments during his confinement will help you to reach a favorable decision about his parole when you meet in August.

Very sincerely,

Roy E. Holes

0277

6-18-2002

To Whom it may concern,

My friend Robert Rush is coming before you soon for a parole hearing. In the past, he has been rejected a couple of times, and I feel that my concerns have gone without consideration. That hurts my feelings. I pay a lot of taxes. Standard rejection is no solution to the overburdened state prisons and the people who are pigeonholed within their walls.

Under the law, Robert is eligible for parole, and has accomplished as much as he has been able to behind bars.

Outside of prison, Robert Rush has a future as a stereoplotter operator, or a CAD technician. I have the references and contacts to help him into a career that will pay 40,000 dollars a year within 2 years of his release. My friend and associate (Steve Dillon) owns a corporation called Arrowhead Mapping in San Bernardino, California, and has indicated that if he could get a trainee with Robert's attributes, he would love to have him for various reasons, such as: Robert is motivated to succeed in the outside world. He is well educated, and comes from a christian upbringing. The first year cost to employ him would be reasonable (myself, I command 60,000 a year to come on board, I am expensive, Robert is not). Also to be considered, Steve Dillon believes that to make parole and possibly land a construction job, would expose Robert to a lot of undesirable rifraf, and to work at Arrowhead Mapping, the rifraf element is not involved. It is a small, yet strong corporation with strong employees. Robert would fit right in. We have discussed this extensively together. The work done at Arrowhead Mapping is specialized, and requires a lifetime commitment to professionalism and ethics. Robert Rush has these two fundamental prequalifications, beyond his education and computer skills. In a short period of time, he could easily be transformed from a prior inmate to a successful professional worker. I know this for a fact, and will bet my next years paycheck on it.

Considering my plea to you, please grant him parole. I can personally guarantee you that you will never see him again in the state prison system. Of all the people that you may consider this year, please consider this one candidate extensively, with my personal recommendation for his sure success.

Sincerely,

Walter Mason Escherich
325 Ryan Street
Redlands, CA 92374

0278

NIC
(HET)

June 16, 2002

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza  Suite 200
Sacramento, CA  95814

RE:  Rob Rush Parole

This letter is to confirm the statements and feelings in my letter of October 24, 1999, supporting Rob Rush in his application for parole.

I sincerely hope that every consideration is made to give Rob a chance to again become a part of our mountain community  -  I know that he will have support and will be a valuable influence in our church and the community as a whole.

Thank you,

Charlene Wells

Charlene Wells
P.O. Box 2914
Blue Jay, CA  92317



 **AL MELLINGER CONSTRUCTION**

FINE CRAFTSMANSHIP

05/28/02

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Su 200
Sacramento, Ca. 95814

Dear Sirs:

We understand that Rob Rush is being considered for Parole again. We still stand behind our letter of
1999. We still have faith that Rob would be a good citizen and deserves a chance to succeed. Our offer to
employee him in what ever means we are able is still open.

Sincerely,

Al and Nancy Mellinger
Al Mellinger Construction I nc.

P.O. BOX 258 / 828 KUFFEL CANYON • SKY FOREST, CA 92385
TELEPHONE (909) 337-4466 • FAX (909) 337-6008

0280

P.O. Box 2914
Blue Jay, CA   92317

October 24, 1999

State of California
Board of Prison Term Commissioners
545 Downtown Plaza,  Suite 200
Sacramento, CA  95814

Dear Sir or Madam:

I am writing concerning the upcoming parole hearing in December,
for Rob Rush.

I am a resident of Lake Arrowhead, California, and work as the
Administrative Assistant for the Lake Arrowhead Community
Presbyterian Church, where I am also a member.   I have known the
Rush family for over 12 years; we became friends through our
association at the church.

Dick and Ann Rush are true inspirations of faith and courage as
they both continue to overcome the obstacles life places in their
paths.   Their ever-constant love and support of their son, Rob,
has given him the inspiration to move forward, as evidenced by
his determination to improve himself and prepare for his future –
obtaining his Bachelor's Degree and continuing on to obtain his
Master's Degree in Humanities.  Rob's current role as a tutor in
computer drafting is another indication of his character; he is
now helping others to overcome the obstacles placed in their
paths, providing hope in situations that could be otherwise.

I know that if Rob were given parole, he would have tremendous
support from our church members, as well as our community.
Though a small mountain community, there are a wide variety of
job opportunities here, as well as within easy commuting distance
in San Bernardino, Redlands and Riverside.

I sincerely hope that the Parole Board will give Rob the chance
to show the outside world what he has become – a wonderful
inspiration of perseverance, faith and hope – which he will pass
on to all that he comes in contact with.

Sincerely,

Charlene Wells
Charlene Wells

0281

Terrie Baldwin
P.O. Box 430
Lake Arrowhead, CA 92352

State of California
Board of Prison Terms Commissioners
545 Downtown Plaza, Suite 200
Sacramento, CA 95814

November 16, 1999

The request that I am making is on behalf of Rob Rush. Rob is currently
serving a seventeen-year to life term. I believe that Rob Rush would be a
valuable person in the community where I reside. I have lived in this
community for 13 years and am currently working at the school where both
Rob's parents teach.

When Rob returns to his family, I am confident that he will receive all the
support in terms of work, financial and spiritual needs that anyone could
need. He will become a positive influence to all that know him and all who
will come to know him.

It would be my desire to see Rob released. He would be greatly appreciated
and supported by family, friends and community.

Sincerely,

Terrie Baldwin
Secretary
Lake Arrowhead Elementary

0282

September 22, 1999

State of California
Board of Prison Terms Commissioner
545 Downtown Plaza, Suite 200
Sacramento, CA 95814

Dear Sirs:

In August of 1996 I wrote a letter to you about a young man by the name of Rob Rush. He did not receive parole last time but I'm hoping and praying that this time you will really look at this young man and all that he has accomplished while incarcerated. How many other people in Rob's situation have worked hard to receive a Bachelor's Degree, a Master's Degree, and a certification in computer drafting? Besides that, he is now using this knowledge to help others around him by working as a tutor in computer drafting. We say we want to rehabilitate our prisoners to make them into good citizens so they can be returned to their homes to become productive members of society. It seems to me that Rob has met these requirements. I am hoping this esteemed board will feel the same way.

I am enclosing a copy of the letter I wrote in 1996 because everything I said then still holds true. I'm doing this so that you can see that those of us who knew him as he was growing up, still hold him in high regard in spite of the serious crime he committed. Hasn't he paid his debt to society? Please look into your hearts as you decide this young man's future.

Sincerely,

*Mrs. Margaret Dickson*

Mrs. Margaret Dickson (Retired School Teacher)
P.O. Box 1
Cedar Glen, CA
92321

0283



# AL MELLINGER CONSTRUCTION

### FINE CRAFTSMANSHIP

08/27/99

State of Ca.
Board of Prison Terms Commissioners
545 Down Town Plaza, Su 200
Sac. Ca. 95814

Dear Sirs:

We own a Construction Company in Lake Arrowhead Ca. and have been in business here on the Mountain for 25 years. Our Son went to Rim of the World Schools with Rob Rush. We knew him as a "good kid". The whole small community up here was rocked by the situation he got himself into. It was not of his character to do what he did. However, he seems to have made the best out of his long incarsination.

Since being in jail he has been a reading tutor, earned a bachelor's degree from San Jose State, received a certification in computer drafting, and earned a Master's Degree in the Humanities with an emphasis on history from Cal State, Dominguez Hills. He now works as a tutor in computer drafting.

We go to the same church as the Rush family and have known them to be honest hard working people with Christian values that they take very seriously. I believe the accident, and jailing of their son, Rob has given them a devoutness that many of us do not experience. They are very special people.

Recently, Ann Rush has been diagnosed with cancer. It would be a wonderful thing if Rob could be released from jail now so he could be with her.

We would certainly offer Rob a job in our Construction Co. His experience in Computer Drafting could be of use to us.

Sincerely,

Al & Nancy Mellinger
Mellinger Construction Inc.

0284

P.O. BOX 258 / 828 KUFFEL CANYON • SKY FOREST. CA 92385

County of San Bernardino
PROBATION DEPARTMENT

### IDENTIFICATION

Defendant's Full Name __RUSH, ROBERT DALTON__
Birth Place __Denver, Colorado__ Alias ____
Height __5'10"__ Weight __140__ Eyes __Brown__ Hair __Blue__ Birth Date __05-27-65__ Age __22__ Sex __Male__
BI No. __A08 274 226__ FBI No. __381 425 FA9__ Ethnic Group __Caucasian__ Nationality __American__
Scars/Marks/Tattoos ____ SS No. __524 230 300__ Op. License No. __U1057736__

### COURT INFORMATION

Court No. __SCR 44594__ Probation No. __22941-R__ Hearing Date __October 29, 1987__
Original Charge __"See Additional Information"__
Convicted Charge __"See Additional Information"__
Arresting Agency __San Bernardino Sheriff's Office__
Booking Agency __San Bernardino Sheriff's Office - Central Jail__ Arrest Date __07-31-86__
Release Date __In custody__ Booking No. __8607772508__
Guilty by __Jury__ Bond ____ OR ____ Total Time in Custody __456 days__
Court __Superior__ Date __09-18-87__ In __Superior Court__
Codefendants and Dispositions __Thomas Hoy - 10/13/87 5 years'__ Department __1__ Judge __Bob N. Krug__
Defendant's Attorney __Grover L. Porter__ Supervised Probation
Address __440 W. Court St., Ste. #309, San Bernardino, CA__ Phone __884-0586__

### DEFENDANT'S ENVIRONMENT AND PERSONAL HISTORY
(Based on defendant's statement. Not independently verified by Probation Department.)

Address at Time of Offense __1883 Virginia St., San Bdno__ __92411__
Living With (Name/Relationship) __Mark Hoy, Eric Loveng (roommates)__ Zip ____ Phone __Unknown__
Present Address __San Bernardino County Jail__
Living With (Name/Relationship) __Inmates__ Zip __N/A__ Phone __N/A__
Auto Make __None__ __N/A__ __N/A__ License No. __N/A__
Last School Attended __CalState San Bernardino__ Year ____ Color ____
Age Left School __21__ Special Training __None__ Highest Grade Completed __14__
Military Branch __None__ From __N/A__ To __N/A__ Type of Discharge __N/A__
Employer __Sickles Paint__ Address __Diamond Bar, CA__ Verified __N/A__
Type of Work __Painter__ Date Left __07-31-86__ Reason __Arrest in this matter__ Time on Job __6 weeks__
Income-Gross __None__ Net __None__ Spouse's Income __N/A__ Other __None__
Assets __None__
Debts/Child Support __None__
Health __Fair__
Narcotics/Alcohol/Medications __No drugs/Alcohol - occasionally/No medications__ Hobbies __None__
Present Spouse __None__
Address __N/A__ Age __N/A__
Children (No.) __None__ From Age __N/A__ To Age __N/A__ Date/Place of Marriage __N/A__
Previous Marriage (Name) __None__
Father __Richard Rush__ How/Date/Place/Terminated __N/A__
Address __P.O. Box 1314, Blue Jay, CA__ Age __49__ Occupation __Business manager__ Phone __337-8957__
Mo· __Ann Rush__ Age __45__ Occupation __Teacher (Elementary)__ Phone __337-8957__
Ac __P.O. Box 1314, Blue Jay, CA__
Siblings (No.) __1__ From Age __16__ To Age ____ Probation/Parole Status __None__ Phone ____
Name/Address/Phone No. of Nearest Relative/Friend __Richard and Ann Rush (parents) P.O. Box 1314, Blue Jay, CA__

4-15842-425                                                                                          0285

SCR 44594  RUSH, ROBERT DALTON          -1-

October 29, 1987

CIRCUMSTANCES OF THE OFFENSE:          John Heinz was reported missing on
July 1, 1986, by his father.  This information was reported to the Anaheim
Police Department.  Mr. Heinz was concerned because his son had not been heard
from since June 28, 1986, and it was not like him to just go off somewhere
without letting anyone know.

On July 7, 1986, Mr. Heinz filed a
missing person's report with the San Bernardino Police Department.  On that
date, Police Assistant Dana Richter commenced a local investigation as to John
Heinz's possible whereabouts.  Over a three day period, Ms. Richter spoke with
John Heinz's roommates, Thomas Marcus Hoy and Eric Loveng.  Both reported no
knowledge of John Heinz's whereabouts.  Ms. Richter also had contacted with the
Orange County Sheriff's Office and Anaheim Police Department.  No new
information surfaced.

At approximately 1230 hours on
July 15, 1986, John Heinz's vehicle was located in a parking lot outside
Townsquare Lane in Riverside.  The vehicle had been parked at the location for
approximately ten days according to the reporting party.  Further investigation
by San Bernardino Police Department Detective Vincent Kilbride indicated no sign
that the vehicle had been tampered with.  Follow-up investigations in the area
turned up no substantial information to lead to John Heinz's whereabouts.

On July 31, 1986, Mrs. Galloway
contacted the San Bernardino Police Department and advised Detective Kutch that
her son, Patrick Galloway, had information that could lead officers to the
location where John Heinz was buried.

At 1350 hours on July 31, 1986,
Patrick Galloway was interviewed by Detective Vince Kilbride at the
San Bernardino Police Department and related that he was a roommate of John
Heinz and had been in Arizona the weekend of Mr. Heinz's disappearance.

Mr. Galloway reported that upon his
return from Arizona he asked another roommate, Marcus Hoy, where Mr. Heinz was.
Mr. Hoy told him that Mr. Heinz had gone to a party in Anaheim and had not
returned.

Mr. Galloway told Detective
Kilbride that during the period from July 7, 1986, to July 10, 1986, he had
iven Mr. Hoy a ride to CalState San Bernardino.  Prior to leaving the

0286

SCR 44594  RUSH, ROBERT DALTON          -2-               October 29, 1987

university campus, Mr. Hoy said to Mr. Galloway, "I want you to promise me a code of silence." Mr. Hoy then proceeded to tell Mr. Galloway that another roommate, Rob Rush, had shot Mr. Heinz to death. Mr. Hoy then explained to Mr. Galloway that the victim and Mr. Rush had an argument over household responsibilities, which had apparently escalated into a physical altercation. Mr. Hoy told Mr. Galloway that shortly thereafter Mr. Rush sought out Mr. Heinz and shot him numerous times with a .22 caliber rifle.

Mr. Galloway related that a short time after the shooting, Mr. Hoy arrived at the residence in the company of his girlfriend, and Mr. Rush told him privately that he had killed John Heinz. According to Mr. Galloway, Mr. Hoy then asked his girlfriend to leave the house and she did so. Mr. Hoy and Mr. Rush then proceeded to pack Mr. Heinz's body into green plastic trash bags. They then placed the body into a sleeping bag which they put into the back seat of the victim's (Mr. Heinz) truck. According to Mr. Galloway, Mr. Hoy and Mr. Rush then went into the house and cleaned up Mr. Heinz's room. They cleaned up the blood from the carpet, picked up the expended shell casings, and filled holes in the wall with toothpaste. Mr. Hoy and Mr. Rush then drove the victim's body to the Dover Canyon area, north of CalState San Bernardino campus. Upon arrival, they removed the victim's money from his pocket and took his gold initial ring from his finger. They took Mr. Heinz identification from his wallet and buried it in another location in the wash area. They then buried the body after removing it from the sleeping bag.

When leaving the area, Mr. Hoy and Mr. Rush threw Mr. Heinz's wallet into a ravine on the opposite side of the road. Mr. Hoy and Mr. Rush then returned to the residence.

Upon their arrival at the residence, Mr. Hoy and Mr. Rush cleaned up. According to Mr. Galloway, they later took Mr. Heinz truck to the Riverside area, where they left it. Their deeds complete, they then proceeded to a local drinking establishment, where they got drunk on the victim's money.

After receiving the above information from Mr. Galloway, San Bernardino Police Department Detective proceeded to the suspect's residence. Suspects Hoy and Rush were transported to

0287

San Bernardino Police Department, where they were interviewed by Detective Kilbride and later arrested.

Other San Bernardino Police Department personnel were assigned to the area where Mr. Heinz's body had allegedly been buried. Later in the day, on July 31, 1986, Mr. Heinz's body, identification, and wallet were located in the area where Mr. Galloway said they would be. Because of impending darkness, the body was not fully exhumed until the next day.

Subsequent to the exhumation, an autopsy was completed. The death certificate listed the cause of death as multiple gunshot wounds.

PLEA BARGAIN:                         Not applicable to this report as the defendant was found guilty by jury.

DEFENDANT'S STATEMENT:                Robert Rush was interviewed at the San Bernardino County Jail on October 16, 1987.

Mr. Rush indicated that this matter was a real tragedy all the way around, for the victim and the victim's family, for him and his family. If there were any way he could undo what occurred, he would. He is very much aware that his behavior was wrong, that something has to happen in the way of punishment. No one regrets what happened anymore than he does. The incident was hard on his parents, but they have no choice but to deal with it. Fortunately for him, they are sticking by him. No matter how long or where he goes, he knows he will always have their support.

Mr. Rush disclosed that he still finds it hard to believe that this kind of thing has happened to him. He keeps expecting to wake up from a bad dream. He has never been in any type of trouble before. He, in fact, has never had a fight before this incident led into this matter. He wished he had never owned a gun. The reason he had a gun was for sport as he enjoyed target practicing.

The defendant indicated that in his mind this offense occurred because he was scared and angry. Everything happened all of a sudden, he did not have time to think just react. He was so frightened afterwards that he did not contact the police. He was full of fear; he was afraid the victim was going to come back and hit him some more. The victim had beaten him up pretty badly and he justed wanted him to stop. When the victim

SCR 44594  RUSH, ROBERT DALTON         -4-              October 29, 1987

came at him again and lunged at him, he fired the rifle. After the first shot, the victim said, "Ouch, ouch," and just stood there and that is when the defendant indicated he emptied the rifle on him.

The defendant stated that he does not want to be locked up even though he fully recognizes the magnitude of his behavior. He has his whole life ahead of him and now for a while it appears to be thrown away. What should help a little in this matter is that his parents are checking into how he can get a correspondence course. He is certain he will have time to complete the requirements for a degree. He would, however, still like the opportunity to make something out of himself. He would like the chance to show that he can amount to something positive and contribute to society.

VICTIM'S STATEMENT:                    The   victim,   John   Heinz,   is deceased.

Mr. Raymond Heinz, father of the victim, was interviewed via telephone on October 19, 1987. Mr. Heinz advised that he was going to attend the Court hearing, but as to whether he wished to make a statement during the hearing he would work out with the District Attorney. Mr. Heinz further indicated that he was not presently prepared to make a statement, but should he decide to make one at a later date, he will contact the Probation Officer. In the event Mr. Heinz contacts the Probation Department prior to the Court hearing, the information obtained from this interview will be forwarded to the Court in the form of a memo.

The   following   information   is respectfully submitted to the Court and was obtained from a probation report prepared for the codefendant in this matter, dated December 15, 1986. The report read, "Mr. Raymond Heinz, the father of the victim, described his son as 'a guy who loved life.' Mr. Heinz saw John as a friendly, 'people person' who enjoyed making new friends. Mr. Heinz described his son as having been shy until high school. A 'quiet guy' who made friends easily."

The report further read "Mr. Heinz stated that the family sensed that something was terribly wrong shortly after John's disappearance. He cited as a key factor the fact that John left his dog at the house. According to Mr. Heinz, John took his dog everywhere."

Also contained in the December 15, 1986, probation report was an interview Probation Officer Stuart Osborne

0289

SCR 44594   RUSH, ROBERT DALTON          -5-                    October 29, 1987

conducted with Mrs. Helen Heinz, the victim's mother.  Mr. Osborne wrote,
"Mrs. Helen Heinz, John's mother, stated she felt something was wrong from the
time her son disappeared. Mrs. Heinz spoke to her son on every-other-day basis
and suspected after she had not heard from him in three to four days that
something was very wrong.

                    "Mrs. Heinz described her son as
never having caused any problems at home or school.  She stated, 'Sometimes I
wish he had caused us more problems; then this would be justified.'  Mrs. Heinz
stated she would think about the incident 'every waking moment.'  She feels that
no one can truly appreciate that agony she and her family has gone through.

                    "Mrs. Heinz continues to live with
several unanswered questions.  She wanted to know why those involved in her
son's murder lied for so long about what they did.  She also wanted to know why
Mr. Hoy chose to protect Mr. Rush at the expense of John Heinz's grieving
family.

                    "Mrs. Heinz also mentioned the fact
that after her son had been murdered, Mr. Rush and Mr. Hoy felt they had gotten
away with it.  She cited the statement by witness Patrick Galloway that he,
Mr. Hoy and Mr. Rush had discussed a plan to possibly commit another murder.

                    "Through     the     interview     with
Mrs. Heinz, she seemed to be on the verge of tears.  She, like her husband, was
particularly upset that the defendant robbed her son prior to burying his body."

COLLATERAL REPORTS:                    Detective     Kilbride     of     the
San Bernardino Police Department was interviewed via telephone on October 19,
1987.  Detective Kilbride's recommendation was that Mr. Rush should receive the
maximum sentence allowed by law.  He further indicated that there are
indications that the defendant apparently reloaded and continued to fire.
Detective Kilbride advised that the defendant's statement of his action being
self-defense is "crock."  This statement would be more plausible if the
defendant had shot the victim one or two times.  The detective stated that the
defendant exhibited a lot of coldness about taking the body.  The law reports
that when the defendant shot the victim, the fight was over and the defendant
sat down and thought about it.  He then got the rifle and went and got the
victim up.  The detective indicated that the defendant's injuries from the
earlier fight were very few, a couple of bruises.  Detective Kilbride stated

that during his interview with the defendant, the defendant denied knowing where the victim was.

Contained in the District Attorney's file are twenty letters of character reference submitted by Mr. Heinz on behalf of his son. Presentation of this material tends to show that the lengthy cover-up of the offense had a devastating effect upon the victim's family as well as his circle of friends.

## SENTENCING CONSIDERATIONS:

**Criteria Affecting Probation (Rule 414):** Penal Code Section 1203.06(a) and Section 1203.075 prohibits the grant of probation in cases such as this matter.

**Circumstances in Aggravation (Rule 421):** The defendant was convicted of Second Degree Murder. The jury in this matter also found true the allegation that Mr. Rush used a firearm, to wit: a rifle. The crime committed by the defendant involved a high degree of cruelty in that he not only callously took the victim's life and then buried him, but then refused to give information that would have possibly mitigated the suffering of the victim's family.

The defendant was armed with a weapon at the time of the crime, chargeable as an enhancement under Section 12022.5 of the Penal Code. The victim was particularly vulnerable in that he was unarmed. By virtue of the defendant's crime and his behavior afterward tends to indicate that he is a serious danger to society.

The crime was carried out in a highly sophisticated manner. Bullet holes in the wall were filled with toothpaste. The defendant removed identification from the deceased's body and buried it sixty feet away. Through his continued effort, the defendant avoided arrest for a number of weeks.

**Circumstances in Mitigation (Rule 423):** The defendant has no known prior record of criminal conduct. He is youthful.

## ANALYSIS:

Whatever rationalization may be offered by twenty-two year old Robert Rush as an explanation for his behavior, it is now an indisputable fact that the life of a promising young man was irretrievably taken. In his behalf, the defendant offers no rhyme and little reason for joining the brotherhood of Cain. It is very unfortunate that the defendant chose to follow a path that culminated in the death of a friend. It may be argued that murder, in any degree, was probably not in the defendant's

SCR 44594    RUSH, ROBERT DALTON           -7-                    October 29, 1987

scheme of things. For whatever ingenious argument may be forwarded in Mr. Rush's benefit, it is now an irretrievable fact that Mr. Heinz died as a result of the defendant's aberrant activity. To the victim and his survivor, the motive for the killing often times becomes grossly inconsequential as the end result, whether it was done with cold-blooded purpose, or an accidental or gruesome act, is the same irreversible, permanent death. Mr. Rush has, indeed, committed a very violent and serious felony and deserving of stern punishment; what is also very disconcerting about this defendant is his behavior subsequent to the murder. This behavior, in itself, tends to indicate that the defendant has transformed himself into a potent danger to society.

CVC RECOMMENDATION:                         It is respectfully recommended that the Court find that a motor vehicle was involved in or incidental to the commission of this offense. It is further recommended that the Court order the Department of Motor Vehicles to revoke the defendant's privilege to operate a motor vehicle. It is further recommended that the defendant surrender his driver's license to the Court, pursuant to 13550 CVC.

REIMBURSEMENT OF APPOINTED COUNSEL:           It is respectfully recommended that the Court find that the defendant does not have the present ability to pay appointed counsel fees.

REIMBURSEMENT OF INVESTIGATION COSTS:          It is respectfully recommended that the Court find that the defendant does not have the present ability to pay the cost of conducting the Presentence Investigation and preparing the report pursuant to Section 1203 of the Penal Code.

SCR 44594  RUSH, ROBERT DALTON          -8-                    October 29, 1987

RESTITUTION FINE:                       It is respectfully recommended that
the defendant, Robert Dalton Rush, be ordered to pay a Restitution Fine in the
amount of $15,000.00, for the offense of Second Degree Murder, in violation of
Section 187 of the Penal Code, a Felony.

PROBATION OFFICER'S RECOMMENDATION:      It is therefore respectfully recom-
mended that probation be denied and the defendant, Robert Dalton Rush, be
sentenced to the California State Prison as follows:

INDETERMINATE SENTENCE:

COUNT I:                Second Degree Murder – in
                        violation of Section 187 PC – for
                        the term prescribed by law              15 years to LIFE

                        Enhancement of "Use of Deadly
                        Weapon," in violation of
                        Section 12022.5 PC – found
                        true                                       2 years

                                        The commitment to State Prison is
for a total of seventeen (17) years to LIFE, with credit for time served, a
matter of six hundred eighty-four (684) days (four hundred fifty-six (456) days
actual, two hundred twenty-eight (228) days conduct), and may be followed by
parole for a period of seven (7) years to LIFE.

                        Respectfully submitted,

                        JERRY D. HILL
                        CHIEF COUNTY PROBATION OFFICER


                        By:  _____
                             John E. Robinson
                             Probation Officer III
JER:lma

                        APPROVED:

                             _____
                             Zane Hacker
                             Supervisor

Insert name of court, branch court, if any, and main... address

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

RT USE ONLY

...PLE OF THE STATE OF CALIFORNIA

**DEFENDANT:** ROBERT DALTON RUSH

[v.v] Present    [ ] Not Present

[XX] **JUDGMENT OF COMMITMENT TO:** [X] STATE PRISON    [ ] COUNTY JAIL
[ ] **ORDER GRANTING PROBATION**    [ ] **AND MINUTE ORDER**

CASE NUMBER:
[X] SCR-44594

| Date of hearing: | | Dept. No.: | |
|---|---|---|---|
| Judge: BOB N. KRUG | Clerk: Michele Williams | | Reporter: Leonard D. Gunn |
| Counsel for People: David Whitney | Counsel for defendant: Grover Porter | | Probation Officer: John Robinson |

1. Defendant was convicted of the commission of the following crime on (Date): . . . . . . . . . . . . . . .

| Count | Code Section | Crime | Degree | By Jury, Court or Plea (Specify) |
|---|---|---|---|---|
| 1 | PC 187 | Murder | Second | Jury |

2. Defendant [ ] was arraigned [XX] waived arraignment for judgment.

3. The court, having read and considered the probation report and no legal cause having been shown why judgment should not be pronounced

  a. [XX] Sentences defendant to State Prison for the term prescribed by law. Fifteen years to Life

  b. [ ] Specifies, pursuant to Pen. C. 1202b, the minimum term of imprisonment shall be six months as to count:

  . [ ] Sentences defendant to County Jail for the period of (Specify number of days): . . . . . . . . . .

  J. [ ] Suspends imposition of sentence and defendant is placed on probation for the period of: . . . . .

    [ ] upon conditions set forth in attachment 3d.

4. [ ] Defendant, convicted of more than one count, shall

  a. [ ] serve the sentence as to each count as follows:

| Count | Consecutive With | Concurrent with |
|---|---|---|

  b. [ ] serve the counts made consecutive in the following order:

5. Defendant shall serve this sentence with respect to any prior uncompleted sentence    a. [ ] concurrently.   b. [ ] consecutively.

  c. [ ] as set forth below or in attachment 5c.

6. Execution of sentence is

  a. [ ] stayed on the following count: . . . . . . . . . . . . . . . . . . . . .

  when the sentence is completed as to count: . . . . . . . . . . . . pending appeal, with the stay to become permanent

  b. [ ] suspended and defendant is placed on probation for the period of: . . . . . . . . . . . . . . .

    [ ] upon conditions set forth in attachment 6b.

7. [ ] No allegation to enhance punishment was made in count: . . . . . . . . . . . . . . .

8. [ ] It was alleged

  a. [ ] Defendant was armed with a deadly weapon at the time of the commission or attempted commission of the crime charged in count: . . . . . . . . . . . . . . . . . . . . [ ] and allegation stricken as to count:

(Continued on reverse side)

This form satisfies the requirements of Penal Code 1213.5 (Abstract of Judgment and Commitment). Singular includes the plural. This form is to be used in judgments other than death. A copy of probation report shall accompany this form pursuant to Penal Code 1203c and a copy of any supplementary probation report shall be transmitted to the Department of Corrections. Attachments may be used but must be incorporated by reference

Form Approved by the
...cial Council of California
...fective July 1, 1976
3-14004-301

**JUDGMENT-COMMITMENT**

Pen C. 644, 969c, 969d, 1203, 1213.5,
3024, 12022, 12022.5.

0294

b. ☒ Defendant used a firearm i⸱ ⸱ ⸱ ⸱ ⸱I. ⸱ ⸱ ⸱ ⸱ and allegation strick⸱ ⸱ ⸱s to count: ⸱ ⸱

c. ☐ Defendant was armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024
☐ and allegation stricken.

d. ☐ Other (Specify and indicate if stricken): . . . . . . . . . . . . . . .

9. ☐ The Court finds the defendant

a. ☐ *was* armed at the time of commission or attempted commission of the crime with a deadly weapon within the meaning of

(1) ☐ Pen C. 3024 as to count: . . . . . . . . ☐ but strikes the finding as to count: . . . . . . . . .

(2) ☐ Pen C. 12022 as to count: . . . . . . . . ☐ but strikes the finding as to count: . . . . . . . .

(3) ☐ Pen C. 1203 (Specify weapon): . . . . . . . . .

as to count: . . . . . . . . . . ☐ but strikes the finding as to count: . . . . . . . . .

b. ☐ *was not* armed at the time of commission or attempted commission of the crime within the meaning of

(1) ☐ Pen C. 3024 as to count: . . . . . . . . .

(2) ☐ Pen C. 12022 as to count: . . . . . . . . .

(3) ☐ Pen C. 1203 as to count: . . . . . . . . .

c. ☒ *did* use a firearm as to count: . . I. . . . . . . . ☐ but strikes the finding as to count: . . . . . . . . .

(1) ☒ The use was one use for the following counts: . . . I. . . . . . . . . The additional penalty shall run consecutively to the sentence on the last count to be served. (See Determinate abstract for

d. ☐ *did not* use a firearm as to count: . . . . . . . . . . . . . . . . Two year enhancement).

e. ☐ *was* armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024 ☐ but strikes the finding.

f. ☐ *was not* armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024.

g. ☐ Other (Specify and indicate if stricken):

10. ☐ Prior convictions which affect defendant's sentence were alleged and disposed of ☐ as follows ☐ as set forth in attachment 10.

| Conviction date | Jurisdiction | Crime and code Section | Applies to Count | Disposition |
|---|---|---|---|---|
| | | | | |

11. The court finds defendant    a. ☐ is ☐ is not an habitual criminal under Pen C. 644a.

b. ☐ is ☐ is not an habitual criminal under Pen C. 644b.

12. The court pronounced sentence on (Date): 11-24-87 . . . . . and defendant was held in custody, through and including the date of pronouncement of sentence for (Total no. of days): . 723 . . . . . as follows

| Count | Time other than Dept. of Corrections | Dept. of Corrections Time |
|---|---|---|
| | | |

13. Defendant is remanded to the custody of the Sheriff

a. ☐ For the period of (Specify no. of days): . . . . ☐ upon conditions and recommendations set forth in attachment 13a.

b. ☒ To be delivered ☒ at the earliest convenient time ☐ after 48 hours, excluding Saturdays, Sundays and holidays [Pen C. 1203c] into the custody of the Director of Corrections at

(1) ☐ California Institution for Women—Frontera    (3) ☒ California Institution for Men—Chino

(2) ☐ California Men's Facility—Vacaville    (4) ☐ Other:

14. ☐ The court requests a copy of the diagnostic study and recommendations as provided in Pen C. 1168.

15. The court advised defendant of all appeal rights as required in CRC Rule 250 and defendant acknowledged understanding them.

16. ☐ Other (See attachment 16)

Dated: 12/1/87 . . . . .    BOB N. KRUG . . . . . . .

(Type or print name)    (Signature of Judge of the Superior Court)

TOTAL NO. . . . . . . . . .

[Seal]

**CLERK'S CERTIFICATE**

I hereby certify that the foregoing is a correct copy of the original on file in my office.

Clerk of the superior Court

By _____ Deputy

ABSTRACT OF JUDGMENT – COMMITMENT
SINGLE OR CONCURRENT COUNT FORM
(Not to be used for Multiple Count Convictions nor Consecutive Sentences)

FORM DSL 290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN BERNARDINO**

BRANCH **SAN BERNARDINO**

PEOPLE OF THE STATE OF CALIFORNIA          versus

DEFENDANT: **ROBERT DALTON RUSH**
AKA:

XX PRESENT     ☐ NOT PRESENT

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT          ☐ AMENDED ABSTRACT

CASE NUMBER

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 11, 24, 87 | 1 | BOB N. KRUG | Michele Williams |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| Leonard D. Gunn | David Whitney | Grover Porter | John E. Robinson |

TYPE OF FILING: XX Information   ☐ Certification   ☐ Indictment

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONY:

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTION BY JURY / COURT TRIAL / TRIAL BY / PLEA | TERM (L,M,J) | TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|
| I | PC | 187 | Murder 2nd Degree | 86 | 9 18 87 | X | | ** | |

2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022(a) | | | 12022(b) | | | 12022.3(a) | | | 12022.3(b) | | | 12022.5 | | | 12022.6(a) | | | 12022.6(b) | | | 12022.7 | | | 12022.8 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | | |
| I | | | | | | | | | | | | | X | | | X | | | | | | | | | | | | 2 | 0 |

3. OTHER ORDERS:

* See attached Indeterminate Sentencing
  Commitment.

4. A. NUMBER OF PRIOR PRISON TERMS:

| | § | C/F | S | I |
|---|---|---|---|---|
| | | | | |
| 667.5(a) | | | | |
| 667.5(b) | | | | |
| 667.5(b) | | | | |

B. NUMBER OF PRIOR FELONY CONVICTIONS:

| | § | C/F | S | I |
|---|---|---|---|---|
| | | | | |
| 667.6(a) | | | | |

5. TIME STAYED §1170.1(f)  [DOUBLE BASE LIMIT]:

6. TOTAL TERM IMPOSED: ————————————————→  2 0

7. ☐ THIS SENTENCE IS TO RUN CONCURRENT WITH ANY PRIOR UNCOMPLETED SENTENCE(S).

8. EXECUTION OF SENTENCE IMPOSED:

XX A. ☐ AT INITIAL SENTENCING HEARING   B. ☐ AT RESENTENCING PURSUANT TO DECISION ON APPEAL   C. ☐ AFTER REVOCATION OF PROBATION   D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC §1170(d))

| 9. DATE SENTENCE PRONOUNCED MO DAY YEAR | CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS | INCLUDING: ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|
| 11 24 87 | | 723 | 482 | 241 | ☐ DMH   ☐ CDC |

10. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

XX FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN — FRONTERA   ☐ CALIF. MEDICAL FACILITY — VACAVILLE   XX CALIF. INSTITUTION FOR MEN — CHINO

☐ OTHER (SPECIFY): _____

CLERK OF SUPERIOR COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

SIGNATURE: _Michele Williams_     DATE: _December 1, 1987_

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213.5 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c. A copy of the sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated by reference.

ABSTRACT OF JUDGMENT — COMMITMENT
SINGLE OR CONCURRENT COUNT FORM
(Not to be used for Multiple Count Convictions nor Consecutive Sentences)

Form/Adopted by the Judicial Council of California effective July 1, 1981.

FORM DSL 290.1 — 1984 TEST VERSION

85 94137          Pen. C. 1213.5

0296

DISTRIBUTION:     PINK—Court File     YELLOW—Dept. of Corrections     WHITE—AOC     GREEN • 8715—UCS     GOLDENROD • 8715—Arresting Agency

D73321

CTF-C

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

CNID Rmit 9/23
CNID CASE
REMITTITUR    9/21

PEOPLE OF THE STATE OF CALIFORNIA )
    Respondent                    )
                                  )
                                  )
                v.                )    E004982
                                  )
                                  )
ROBERT RUSH                       )
    Appellant                     )    San Brdno Co. No. SCR 44594
                                  )

    I, STEPHEN M. KELLY, Clerk of the Court of Appeal, Fourth
Appellate District, State of California, certify the attached is a
true and correct copy of the original opinion or decision entered in
the above entitled cause on November 22, 1988 and this opinion or
decision has now become final.


                        Witness my hand and seal of the
Court this 20th day of   March , 1989.


                    STEPHEN M. KELLY, Clerk



            By:    HELEN J. BRADBERRY
                   Helen J. Bradberry, Deputy Clerk

Certified copy of Court's Ruling and Remittitur to County Clerk
CC: (California Rules of Court, Rule 25(e))
Attorney General, San Diego
Department of Corrections, P.O. Box 942883, Sacramento 94283
District Attorney of San Bernardino County
Appellate Defender's, Inc.

JAMES F. JOHNSON
1275 Market St., Ste. 1300
S    rancicso, Ca. 94103

0297

NOT FOR PUBLICATION

F I L E D

NOV 22 1988

COURT OF APPEAL FOURTH DISTRICT

COURT OF APPEAL, FOURTH DISTRICT

DIVISION TWO

STATE OF CALIFORNIA

DOCKET
CR. SD
No. SD88DA0153
Entered by: W
Date Rec'd 11/22/88

PEOPLE OF THE STATE OF CALIFORNIA, )
)
    Plaintiff and Respondent, )   E004982
)
v. )   (Super.Ct.No. SCR-44594)
)
ROBERT RUSH, )
)   O P I N I O N
    Defendant and Appellant. )
)

      APPEAL from the Superior Court of San Bernardino County.
Bob N. Krug, Judge. Affirmed.

      James F. Johnson, under appointment by the Court of
Appeal, for Defendant and Appellant.

      John K. Van de Kamp, Attorney General, Steve White, Chief
Assistant Attorney General, Janelle B. Davis, Supervising Deputy
Attorney General, Dianna M. Davis and Robert Whitlock, Deputy
Attorneys General, for Plaintiff and Respondent.

      Defendant was charged in a single count with murder (Pen.
Code, § 187) and a special allegation that he used a firearm
during the commission of the offense (Pen. Code, § 12022.5).

      A jury found defendant guilty of the murder charge, fixing
the degree of murder in the second degree. The jury also found
the special allegation of use of the firearm true, whereupon the
court sentenced defendant to a fifteen-year-to-life determinate

-1-

0298

term and an additional two-year enhancement for violation of
Penal Code section 12022.5.

## FACTS

Defendant and victim John Heinz, along with others, were
roommates in a residence in San Bernardino.  The pair became
involved in a verbal, and later physical confrontation over the
purchase of dog food, defendant being physically assaulted to the
extent his left eye was blackened, head bruised and lip
bloodied.  At the conclusion of this physical confrontation,
defendant returned to his room.  Heinz walked up and down the
hallway calling defendant names.  Defendant, while in his
bedroom, obtained a loaded .22 caliber rifle, and proceeded down
the hallway toward the bathroom.  Before reaching the bathroom,
defendant passed in front of Heinz's room.  The evidence before
the jury at this stage was conflicting, the prosecution's
evidence tending to show that defendant, having made up his mind
to shoot the victim, fired the rifle while the victim was on the
bed, while defendant's testimony was that the victim advanced on
defendant and was fatally wounded after failing to heed a warning
to stop.

Subsequent to the shooting, defendant enlisted the
services of roommate Thomas Hoy and the two buried the body of
Heinz in a deserted area near California State University, San
Bernardino.  Hoy and defendant split the money taken from the
deceased's person.  Hoy removed the ring the victim was wearing,
pawned the ring, and split the proceeds with defendant.  Medical
testimony suggested that the victim was shot numerous times,

-2-

there having been 12 bullets or fragments identified at the
postmortem examination.

## DISCUSSION

On appeal, defendant contends (1) the court erred in
failing to instruct the jury sua sponte on how to conduct its
deliberations when considering the lesser included offenses; (2)
the evidence was insufficient as a matter of law to support
defendant's conviction for second degree murder.

### Jury Instructions

Defendant claims the trial court committed an
instructional error which removed from the jury's consideration
the issue of whether he was guilty only of the lesser included
offense of voluntary manslaughter.  Specifically, he contends
that the court erred in giving CALJIC No. 17.10, and in failing
to give CALJIC No. 8.75 sua sponte.  We do not agree.

CALJIC No. 17.10 (1984 Revision), as given in this case,
provides: "[I]f the jury is not satisfied beyond a reasonable
doubt that the defendant is guilty of the offense charged and it
unanimously so finds, it may convict him of any lesser offense if
the jury is convinced beyond a reasonable doubt that he is guilty
of such lesser offense.  [¶]  The offense of voluntary
manslaughter is a lesser offense to the offense charged of
murder."

CALJIC No. 8.75 explains how to fill out verdict forms for
partial verdicts when deliberating about murder charges and

-3-

0300

uncharged lesser offenses.[1]/  It was fashioned in response to

our Supreme Court's holding in Stone v. Superior Court (1982) 31

Cal.3d 503.  Stone dealt with the issue of a defendant's possible

exposure to double jeopardy in a situation in which the jury

unanimously agreed that a defendant was not guilty of the greater

charge of murder, but deadlocked on the issue of whether

---

[1]/CALJIC No. 8.75 (1982 Revision) reads as follows:  "In
this case, defendant is charged [in Count _ ] with the offense of
murder.  Murder is divided into two degrees--murder in the first
degree and murder in the second degree.  Voluntary manslaughter
[and involuntary manslaughter][is an][are] lesser and necessarily
included offense[s].
    "The court [has provided][will provide] you with verdict
forms for each count charged and for each lesser and necessarily
included offense.  You should determine whether defendant is
guilty or not guilty of the offense of first degree murder
[charged in Count ___ ][and any special finding you are directed
to make].  If you unanimously agree that defendant is guilty of
said offense [charged in Count . ___ ][and any special finding you
are directed to make], you will have your foreman date and sign
the guilty verdict [and return with it into court].  Nothing
further will be then required of you as to Count ___ .
    "If you unanimously agree that defendant is not guilty of
murder in the first degree, you will have your foreman date and
sign the not guilty verdict of the offense of murder in the first
degree and you will determine whether defendant is guilty or not
guilty of murder in the second degree.  If you unanimously agree
that defendant is guilty of the offense of murder in the second
degree, you will have your foreman date and sign the guilty
verdict of murder in the second degree and nothing further will
be required of you as to the offense of murder [charged in
Count ___ ].  If you unanimously agree that defendant is not
guilty of the offense of murder in the second degree, you will
have your foreman date and sign the verdict not guilty of murder
in the second degree and you will determine whether defendant is
guilty or not guilty of the lesser included offense of voluntary
manslaughter [or said lesser included offense of involuntary
manslaughter].  If you unanimously agree that defendant is guilty
or not guilty of said lesser included offense of voluntary
manslaughter [or said lesser included offense of involuntary
manslaughter], you will have your foreman date and sign such
guilty or not guilty verdict [and return it into court together
with the not guilty verdict on the offense of first degree murder
and second degree murder [charged in Count ____ ][as well as any
special finding you are directed to make]]."

-4-

0301

defendant was guilty of a lesser offense. (Id., at p. 510.)    In
order to avoid a situation in which the defendant could be tried
again for the greater offense despite the jury's unanimous
agreement, because a verdict of acquittal on the greater offense
had not been formally entered, the court held: ". . . the trial
court is constitutionally obligated to afford the jury an
opportunity to render a partial verdict of acquittal on a greater
offense when the jury is deadlocked only on an uncharged lesser
included offense.    Failure to do so will cause a subsequently
declared mistrial to be without legal necessity." (Id., at p.
519.)    While CALJIC No. 8.75 may be given with the other
instructions before deliberations begin, it may also be given
only after the jury has indicated to the court that it is
deadlocked on an uncharged lesser included offense. (Id., at pp.
519-520; People v. Soto (1984) 157 Cal.App.3d 694, 713; CALJIC
No. 8.75 (4th ed. 1987 pocket pt. pp. 122-123; People v. Kurtzman
(1988) 46 Cal.3d 322, 329.)

    Defendant's argument on this issue is very difficult to
follow.    In his opening brief, defense counsel apparently
operated under the beliefs that defendant has been charged with
murder in the first degree; that murder in the second degree, as
well as voluntary manslaughter, was an uncharged lesser included
offense; that the jury had deadlocked on the issue of first
degree murder; and that somehow the language of CALJIC No. 17.10
allowed them to consider whether defendant was guilty of second
degree murder, despite their deadlock on the "charged" offense,
while precluding them from considering whether defendant was

-5-

guilty only of voluntary manslaughter.   The crux of counsel's argument was that if 8.75 had been given instead of 17.10, the jury would not have thought it could convict on second degree murder despite its deadlock on the "charged" offense of first degree murder, and would not have thought it was precluded from considering the lesser included uncharged offense of voluntary manslaughter.

The gravamen of counsel's argument in defendant's closing brief is the broader assertion that CALJIC No. 8.75 must always be given sua sponte in every case which involves a charge of murder and uncharged lesser included offenses.   Counsel maintains that the actual purpose of CALJIC No. 8.75 is to explain to the jury how to conduct its deliberations, and that the procedure of CALJIC No. 8.75 must always be followed, regardless of whether the jury is deadlocked.   He also argues that the "guilty" and "not guilty" verdict forms for each offense, charged and uncharged, referred to in CALJIC No. 8.75 must always be given to the jury in such cases, and that the failure to provide "not guilty" forms in this case was reversible error.

Defendant's arguments are without merit.   There is no evidence in the record that the jury was ever deadlocked on the issue of first degree murder.   Defendant was charged in the information, not with a specific degree of murder, but with murder.   The instructional scheme which was given, of which CALJIC No. 17.10 (1984 Revision) was a part, more than adequately explained to the jury how to conduct its deliberations:   CALJIC Nos. 8.10 (1983 Revision), 8.20 (1979 Revision), 8.30 (4th ed.

-6-

1979), and 8.31 (Mod. 1983 Revision) set out the definition of murder and the elements of first and second degree murder; CALJIC Nos. 8.71 (1979 Revision) and 8.72 (4th ed. 1979) instructed the jury to return a verdict of second degree murder if it was satisfied there had been a murder, but had a reasonable doubt that it was of the first degree, and to return a verdict of manslaughter if it was satisfied there had been an unlawful killing but had a reasonable doubt whether it was murder or manslaughter; and CALJIC No. 17.10 (1984 Revision) instructed that the jury should convict of voluntary manslaughter if it agreed unanimously that defendant had not committed murder but was convinced beyond a reasonable doubt that he had committed voluntary manslaughter. Nothing in the instructions told the jurors that they could not consider the uncharged offense of voluntary manslaughter in its deliberations. In fact, as the court observed in a case in which defendant contended that CALJIC No. 8.75 itself precluded the jury from considering the evidence to support uncharged lesser included defenses, instructions which tell the jury that it must decide whether or not a defendant is guilty of a greater offense before convicting him on a lesser offense do not "preclude the jury from considering all of the facts as they relate to lesser offenses. Verdicts involving a charged offense and uncharged necessarily-included offenses by their nature require the jury to consider all of the evidence to determine if the defendant is guilty of the charged offense." (People v. Gibson (1987) 195 Cal.App.3d 841, 848.)

As to defense counsel's assertion that CALJIC No. 8.75

-7-

must always be given sua sponte whether or not there is a
deadlock on the lesser included offense, we can only reiterate
that our Supreme Court has held that the trial court need afford
the jury an opportunity to render a partial verdict only if it
has reached a deadlock on a lesser included offense, though it
may wish to provide the jury with verdict forms for a verdict of
guilty or not guilty as to each offense and explain the partial
verdict process to it before it begins its deliberations.  (Stone
v. Superior Court, supra, 31 Cal.3d at pp. 519-520.)  In this
case, there was no deadlock on a lesser necessarily included
offense, and therefore no need to provide the jury with not
guilty forms for all offenses, or to instruct it on the process
to follow in returning a partial verdict.

        The defendant claims the jury was instructed in violation
of our Supreme Court's holding in Stone v. Superior Court, supra,
31 Cal.3d 503.  This assertion is made on the basis that the
alleged defect prevented the jury from appropriately considering
its options.  We do not agree.

        The defendant urges an interpretation of Stone v. Superior
Court, supra, 31 Cal.3d 503, which simply does not represent the
gravamen of the holding.  Our Supreme Court concluded:
"Accordingly, we hold that in all cases in which the jury has not
yet begun deliberations as of the date this decision becomes
final, the trial court is constitutionally obligated to afford
the jury an opportunity to render a partial verdict of acquittal
on a greater offense when the jury is deadlocked only on an
uncharged lesser included offense.  Failure to do so will cause a

-8-

subsequently declared mistrial to be without legal necessity."
(Id., at p. 519.)

It is clear then that Stone v. Superior Court, supra, 31
Cal.3d 503 deals with the double jeopardy issue and the thrust of
its holding is on that issue, not the method of deliberations.
(People v. Smith (1983) 33 Cal.3d 596; People v. Welch (1982) 137
Cal.App.3d 834.)

In the instant case, the trial court instructed the jury
on lesser offenses using a combination of CALJIC Nos. 8.74[2/]
and 17.10.[3/]  It also fully instructed the jury as to the
elements of first and second degree murder as well as voluntary
manslaughter.  Defendant contends that by the failure of the
court to give CALJIC No. 8.75 and by its use of 17.10, the jury
"was prevented from considering a conviction on the lesser
included offense of manslaughter unless it was first able to
acquit on the charged offense of first degree murder."  (Original
emphasis.)

_____

[2/]CALJIC No. 8.74 (1976 Revision) reads as follows:
"Before you may return a verdict in this case, you must agree
unanimously not only as to whether the defendant is guilty or not
guilty, but also, if you should find him guilty of an unlawful
killing, you must agree unanimously as to whether he is guilty of
[murder of the first degree] [or] [murder of the second degree]
[or] [[voluntary] [or] [involuntary]] [manslaughter]."

[3/]CALJIC No. 17.10 (1984 Revision), as given, reads as
follows:  "If the jury is not satisfied beyond a reasonable doubt
that the defendant is guilty of the offense charged and it
unanimously so finds, it may convict him of any lesser offense if
the jury is convinced beyond a reasonable doubt that he is guilty
of such lesser offense.
"The offense of voluntary manslaughter is a lesser offense
to the offense charged of murder."

-9-

0306

In a case exactly opposite to this issue, i.e., the inclusion of CALJIC No. 8.75 in jury instructions, this court held: "Although CALJIC No. 8.75 certainly sets forth a sequence which the jury must follow when making its final determination of guilty, it does not, as defendant suggests, preclude the jury from considering all of the facts as they relate to the lesser offenses. Verdicts involving a charged offense and uncharged necessarily-included offenses by their nature require the jury to consider all of the evidence to determine if the defendant is guilty of the charged offense." (People v. Gibson, supra, 195 Cal.App.3d at p. 848.)

The final thrust of defendant's claim of error in this area is the omission of second degree murder as a lesser included offense. The record, however, discloses that the degree of the offense was not alleged in the information. It is clear that the jury was fully and adequately informed of its appropriate verdict choices in CALJIC Nos. 8.74 and 17.10 coupled with the balance of the jury instructions. (People v. Soto (1984) 157 Cal.App.3d 694, 713.)

## Sufficiency of the Evidence

Defendant raises the issue of the sufficiency of the evidence to support the jury's verdict of guilty as to the second degree murder charge. The standard for review of sufficiency of evidence has been settled by the cases of Jackson v. Virginia (1979) 443 U.S. 307 and People v. Johnson (1980) 26 Cal.3d 557. In Jackson v. Virginia, the United States Supreme Court held as to the standard for review of sufficiency was ". . . to determine

-10-

0307

whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Id., at pp. 318-319, fn. omitted, original emphasis.) The California standard is the same: "'. . . whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.'" (People v. Johnson, supra, at p. 576.)

The evidence in this case, as in most cases, is in conflict. Defendant testified. It is clear from the evidence that the victim and defendant had engaged in a violent physical confrontation before the actual shooting. It is equally clear that the defendant, much smaller than the victim, received significant physical injuries during the altercation.

The record also demonstrates that after the physical portion of the battle was over, defendant sat on his bed and pondered his options. He carried a loaded .22 caliber weapon toward the victim's room and fired 10 to 15 rounds at the victim. After the homicide, defendant and Mr. Hoy disposed of the remains of the victim splitting his money and the proceeds of the sale of his ring.

The jury had an opportunity to weigh and evaluate the testimony of witnesses for both sides including that of defendant. It is entirely inappropriate for this court to reweigh the credibility of witnesses, such being the exclusive duty of the trier of fact. (People v. Chain (1971) 22 Cal.App.3d 493, 496; People v. Simmons (1971) 19 Cal.App.3d 960.)

After reviewing the evidence and employing the standard as set forth in Jackson v. Virginia, supra, 443 U.S. 307, we find "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Id., at p. 319, original emphasis.)

### DISPOSITION

Affirmed.

NOT FOR PUBLICATION


                                    /s/  Hollenhorst
                                                        J.

We concur:


   /s/  Dabney
                Acting P.J.

   /s/  Victor
                      J.*



*Assigned by the Chairperson of the Judicial Council.


-12-

0309

1 | LAW OFFICES OF STEPHEN B. SHORE
A Professional Corporation
2 | JOHN G. WURM
Post Office Box 1956
3 | Lake Arrowhead, California 92352
(714) 337-2557
4

5 | Attorney for Plaintiff

6

7

8 | SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

9 | CENTRAL DISTRICT

10

11 | ROBERT D. RUSH,                                CASE NO. 232660

12 |         Plaintiff,                    NOTICE OF MOTION AND MOTION
FOR AN ORDER FOR DEPOSITION
13 |        vs.                                OF A PRISONER; MEMORANDUM
OF POINTS AND AUTHORITIES
14 | STEPHEN I. HAIGHT, et al.,                     AND DECLARATION OF JOHN G.
WURM IN SUPPORT THEREOF
15 |        Defendants.                   AND PROPOSED ORDER
DATE:   May 2, 1988
16 | ——————————————————————                        TIME:   8:30 A.M.
DEPT:   11
17 | AND RELATED CROSS-ACTION                       TRIAL DATE:  June 13, 1988
——————————————————————

18 | TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

19 |     PLEASE TAKE NOTICE that on ___May 2,_____, 1988 at

20 | 8:30 A. M. or as soon thereafter as the matter may be heard in

21 | Dept. __11__ of this Court located at 351 North Arrowhead Avenue,

22 | San Bernardino, California 92415, Plaintiff ROBERT D. RUSH will

23 | move the court for an order that ROBERT D. RUSH, a prisoner in

24 | Soledad Prison Jail located in Soledad, California, be produced

25 | for the taking of his deposition at Soledad Prison on May 12,

26 | 1988 at 10:00 A. M. or at such other time as the court may

27 | designate or is necessary for security reasons.

28 |     This motion will be made on the grounds that ROBERT D.

- 1 -

0310

1  RUSH, is the Plaintiff in the above referenced action and has

2  personal knowledge of matters relevant and material to this

3  action, and that his testimony as to such matters is necessary

4  to Plaintiff, in the preparing for and proceeding with his

5  prosecution on this action.  Notice is further given that the

6  deposition will be video taped and that moving party intends to

7  use the video tape at deposition at trial should the Deponent be

8  unable to attend trial.

9       Notice is further given that moving party will seek a

10 protective order as to the mode of cross-examination at the

11 deposition.

12      This  motion will be based on this action of motion, the

13 Declaration of John G. Wurm and the Memorandum of Points and

14 Authorities served and filed herewith, on the papers and records

15 presented on the hearing on the motion.

16 DATED: 30 31 44.                  LAW OFFICES OF STEPHEN B. SHORE

17

18                                   By: _____

19                                       JOHN G. WURM
                                         Attorney for Robert D. Rush

20

21

22

23

24

25

26

27

28

0311

DECLARATION OF JOHN G. WURM

I, JOHN G. WURM, declare as follows:

1.  I am an attorney at law duly admitted to practice before all courts in the State of California and am an associate in the Law Offices of Stephen B. Shore, attorney of record for Plaintiff, ROBERT D. RUSH in the matter herein.

2.  In preparation for this motion I have reviewed our files in this case personally and can testify competently to all facts herein unless otherwise stated. This is a personal injury case in which Plaintiff was a passenger on a motorcycle.

3.  Plaintiff is currently incarcerated in Soledad Prison on a second degree murder conviction. The earliest he could be released would be in about six (6) years. Plaintiff's video taped deposition was taken prior to his conviction. At that time, I instructed him not to answer certain questions relating to his damages based on his Fifth Amendment Rights. These questions sought information on his damages after May, 1986, the month in which the crime for which he is incarcerated was committed. If Plaintiff is not able to attend his own trial, it will be necessary to have his deposition taken so that there can be testimony as to his damages since May, 1986, and future damages.

4.  In taking his deposition, I intend to segment the questions into the questions regarding his damages occurring before May, 1986, and after May, 1986. I request an order that other counsel do the same so that if evidence of his damages after May, 1986 is excluded, editing of the video tape will be easier. The testimony expected to be obtained from Plaintiff

- 3 -

1  will concern the extent of his damages since May, 1986, his

2  present physical condition and whether the injury caused a

3  change to his personality, thereby contributing to his criminal

4  charge.

5      I declare under penalty of perjury that the foregoing is

6  true and correct, Executed _____, at Lake Arrowhead,

7  California.

8  DATED:

                                    _____
9                                   JOHN G. WURM

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

— 4 —

0313

## MEMORANDUM OF POINTS AND AUTHORITIES

The procedure whereby a party may obtain the deposition of a witness or party who is a prisoner in a jail in the State of California is set forth in California Code of Civil Procedure Sections 1995 and 1996.

Code Section 1995 provides "If the witness be a prisoner, confirmed within the state, an order for his examination in the jail upon deposition or for his temporary removal on production before a court or officer may be made as follows:

1.    By the court itself in which the action or special proceeding is pending, unless it be a small claims court." California Code of Civil Procedure Section 1995.

California Code of Civil Procedure Section 1996 specifies what must be shown on the motion for an order for a prisoner's deposition.  "Such order can only be made on the motion of a party, upon affidavit showing the nature of the action or proceeding, the testimony expected from the witness, and the materiality."

As specifically set forth in the declaration of John G. Wurm, attached hereto, the prisoner whose deposition is being sought is the Plaintiff in this action.  The nature of this action is for personal injuries that Plaintiff, the prisoner whose deposition is being sought, suffered in an accident occurring on November 14, 1985 between a motorcycle on which he was a passenger and a truck.  The deposition in necessary in that Plaintiff may not be able to attend his own trial.  Wood

- 5 -

0314

1  vs. Superior Court (1974) 56 CA3rd 811 and certain areas of

2  damages were not explained at his prior deposition due to concern

3  about his upcoming criminal trial.

4         Plaintiff requests that cross-examination be segmented

5  into questions pertaining prior to May, 1986 and after May,

6  1986.  For ease of editing the video tape deposition should

7  evidence after May, 1986 to be expected at trial.  This order is

8  requested under CCP Section 2025 (1)(5)

9  DATED: ⌐ ⌐⌐ ⌐⌐⌐

                          LAW OFFICES OF STEPHEN B. SHORE

10

11                                  By:

12                                       JOHN G. WURM
                                         Attorney for Robert D. Rush

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Lit38:4

0315

1  LAW OFFICES OF STEPHEN B. SHORE
   A Professional Corporation
2  JOHN G. WURM
   Post Office Box 1956
3  Lake Arrowhead, California 92352
   (714) 337-2557
4

5  Attorney for Plaintiff

6

7

8         SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

9                        CENTRAL DISTRICT

10

11  ROBERT D. RUSH,              )      CASE NO.:  232660
                                 )
12              Plaintiff,       )
                                 )      ORDER FOR DEPOSITION
13       vs.                     )      OF PRISONER
                                 )
14  STEPHEN I. HAIGHT, et al.,   )
                                 )
15              Defendants       )
    _____ )
16                               )
    AND RELATED CROSS-ACTION     )
17                               )
    _____ )

18

19       The people of the State of California to: The warden

20  of Soledad Prison:

21       An order having been made this day by me that ROBERT

22  D. RUSH be produced in this court as witness in the case of

23  Rush vs. Haight, you are commanded to make him available for

24  a video tape deposition on May 12, 1988 at 10:00 A. M.

25       Counsel are directed to segment their examination in

26  the deposition as to questions pertaining to prior to May,

27  1986, and after May, 1986.

28  DATED:
                              _____
                              JUDGE OF THE SUPERIOR COURT

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF _____

I have read the foregoing _____ and know its contents.

_____

### ☒ CHECK APPLICABLE PARAGRAPH

☐ I am a party to this action. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner _____ ☐ a _____ of _____

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing document and know its contents. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for _____

a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I have read the foregoing document and know its contents. I am informed and believe and on that ground allege that the matters stated in it are true.

Executed on _____ , 19 ___ at _____ California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Signature

## ACKNOWLEDGMENT OF RECEIPT OF DOCUMENT
### (other than summons and complaint)

Received copy of document described as _____

_____

on _____ 19 _____ .

_____
Signature

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

I am employed in the county of San Bernardino _____, State of California.

I am over the age of 18 and not a party to the within action; my business address is: 28200 St. Hwy. 189, F-240, P. O. Box 1956, Lake Arrowhead, California 92352

On April 6 19 88 I served the foregoing document described as Notice of Motion & Motion for an Order for Deposition of a Prisoner, Memo of Points and Authorities, Declaration in support Thereof and Proposed Order on all parties

in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at: Lake Arrowhead, CA 92352

addressed as follows:

SEE ATTACHED LIST

☒ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail Executed on April 6, 19 88 at Lake Arrowhead , California

☐ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee. Executed on _____ , 19 ___ at _____ , California

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct

☐ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

FLORA A. BOHLMAN

_____
Signature

0317

1  Nancy J. Smith, Esq
   Solish, Jordan & Wiener
2  12100 Wilshire Boulevard
   Suite 1550
3  Los Angeles, California 90025

4  Dennis G. Popka, Esq.
   MacLachlan, Burford & Arias
5  150 West Fifth Street
   Suite 103
6  Post Office Box 1469
   San Bernardino, California 92402
7
   Stephen I. Haight
8  3058 Havasu
   Highland, California 92346
9
   James L. Faulkner, Esq.
10 5001 Commercenter Drive
   Suite 290
11 Bakersfield, California 93309

12 Eldred O. Arthur, Esq.
   Arthur & Von Rueden
13 3750 University Avenue
   Suite 230
14 Riverside, California 92668

15 Warden, Soledad Prison
   Post Office Box 689
16 Soledad, California 93960

17

18

19

20

21

22

23

24

25

26

27

28

0318

BOARD OF PRISON TERMS

**LIFE PRISONER: NOTICE OF hEARING RIGHTS**                    STATE OF CALIFORNIA

1.  **Purpose of Hearing:**

    The purpose of a parole consideration hearing is to determine whether you are suitable for parole (15 CCR § 2281 / 2402). The purpose of a progress hearing is to determine whether a parole release date should be advanced (15 CCR § 2269(a)). The purpose of a rescission hearing is to determine whether a parole date should be rescinded or postponed (15 CCR § 2450).

2.  **Right to Hearing:**

    One year prior to your minimum eligible parole date a parole suitability hearing will be held (PC § 3041(a)). You are entitled to a formal parole suitability hearing each year thereafter unless the hearing panel denies parole for more than one year (PC §. 3041(c), 3041.5(b)(2)).

3.  **Right to Be Present, Speak; Waiver; Consequence of Absence:**

    You have a right to attend the hearing, ask and answer questions, and speak on your own behalf (PC § 3041.5(a)(2)). You may waive this right (see In re Sydney M. (1984) 162 CA 3d 39,48 (juvenile hearing)). If you do not attend the hearing (unless you waive the hearing), a decision will be made in your absence (15 CCR § 2248).

4.  **Attorney:**

    You are entitled to be represented by an attorney at the hearing (except progress hearings) (PC § 3041.7). You may waive that right (15 CCR § 2256(b)). If you are unable to afford counsel (i.e., have less than $1,500 in cash and/or accounts), an attorney will be provided at state expense (15 CCR § 2256(c)).

5.  **Notice:**

    You will be notified of the week during which the hearing will be held at least one month before the hearing (15 CCR § 2246). You will be given reasonable notice of the time, date and place of the hearing.

6.  **Witnesses:**

    At a rescission hearing you are entitled to present and confront witnesses. At parole consideration and progress hearings you are not entitled to witnesses (see PC §. 3041.5(a)(5), 2932(c)).

7.  **Others Who May Attend the Hearing:**

    At parole consideration hearings the prosecutor (or representative) at the trial on the charges for which you are incarcerated will be invited to the hearing to represent the interests of the people (PC § 3041.7). At parole consideration hearings notice of the hearing will also be given to the judge, prosecutor and your attorney at your trial (PC § 3042(a)). The victim or next of kin or their attorney may also attend and address the hearing panel (PC § 3043).

8.  **Review of File; Opportunity to Present Evidence:**

    You have the right to review nonconfidential documents in your Department of Corrections central file and you may appeal insufficient disclosure. You may enter a written response to any material in the file and may present relevant documents to the hearing panel (15 CCR §. 2247, 2249). At a rescission hearing you may call witnesses and may request that witnesses (including adverse witnesses) or documents be subpoenaed (15 CCR § 2465 (c)).

| NA. | CDC NUMBER | INST/REGION |
|-----|------------|-------------|
| RUSH, ROBERT | D73321 | CTF - SOLEDAD |

BPT 1002 (Rev. 9/90)

BOARD OF PRISON TERMS                                                 STATE OF CALIFORNIA
## LIFE PRISONER: NOTICE OF HEARING RIGHTS

9.  **Assistance in Preparing for the Hearing: Assistance in Communication:**

You may receive reasonable assistance in preparing for the hearing. If you are unable to effectively communicate due to language difficulties or a physical or mental defect, appropriate assistance (e.g., an interpreter) will be arranged for you (15 CCR § 2251).

10.  **Postponements:**

A postponement is a delay of a hearing date requested and granted before the hearing actually starts. You may request a postponement by doing so in writing to department staff before the hearing or orally immediately prior to the hearing. Requests for postponements may be granted where good cause if found (see 15 CCR § 2253). Where the hearing has already started, continuances may be granted where: (1) insufficient information is present to determine any necessary fact (15 CCR § 2238), or (2) the panel determines that a decision regarding parole cannot be made because of pending new criminal or disciplinary charges (15 CCR § 2272).

11.  **Impartial Panel:**

You are entitled to a hearing by an impartial panel and may request the disqualification of one or more panel members where grounds for disqualification exist (15 CCR § 2250).

12.  **Record: Decision:**

You are entitled to a copy of the record of the hearing upon request (15 CCR § 2254). You are entitled to a copy of the decision which includes the information considered and the reasons for the decision (15 CCR § 2255).

‾eviations:

| | | |
|---|---|---|
| PC | = | California Penal Code |
| CCR | = | California Code of Regulations, formerly California Administrative Code |
| CA | = | California Appellate Reports |

I have read and understand the list of rights and procedures (Items 1 through 12, above) and I have had an opportunity to ask questions about any rights or procedures that I did not understand.

| Signature | CDC Number | Date |
|---|---|---|
| *[signature]* | D73321 | 11/19/04 |

I explained the foregoing rights to the prisoner, provided him/her with an opportunity to ask questions, and answered all questions he or she asked.

| Signature | | Date |
|---|---|---|
| *[signature]* | | 11/19/04 |
| Name  S. ARANO | Title  CCI | |

| NAME | CDC NUMBER | INST/REGION |
|---|---|---|
| **RUSH, ROBERT** | **D73321** | **CTF - SOLEDAD** |

BPT 1002 (Rev. 9/90)

0320

BOARD OF PRISON TERMS
**LIFE PRISONER HEARING – EXTRAORDINARY ACTION AND DECISION**

STATE OF CALIFORNIA
BPT 1001A (Rev. 10/89)

| ACTION TYPE (select one) | ☐ Waiver of Appearance | ☐ Request for Postponement | ☐ Waiver of Parole Consideration Hearing– Stipulation of Unsuitability |
|---|---|---|---|

| HEARING TYPE (select one) | ☒ Parole Consideration | ☐ Progress | ☐ Rescission | Hearing Date: |
|---|---|---|---|---|

## WAIVER OF RIGHT TO ATTEND HEARING

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☐ **I do not wish to attend my Board hearing and do not wish to be represented at the hearing. The hearing will be held in my absence.**

☐ **I do not personally wish to attend my hearing but I do wish to be represented by counsel at the hearing.**

    ☐ **I will employ counsel to represent me at the hearing.**

    ☐ **I cannot afford counsel and wish counsel appointed to represent me.**

## POSTPONEMENT

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☐ **I hereby request that the hearing indicated above be Postponed to** _____.

    **The reasons for my request for postponement are stated below.**

## WAIVER OF HEARING AND STIPULATION TO UNSUITABILITY

I understand that I am scheduled for the Board of Prison Terms Hearing Indicated above.

☐ **I waive my right to a parole consideration hearing and I waive the right to have an attorney represent me at a hearing in by absence. I find that I am unsuitable for parole based on my reasons given on this form and therefore request that you find me unsuitable.**

    ☐ One-year Denial      ☐ Two-year Denial      ☐ Three-year Denial

**PRISONER'S REASON(S) FOR REQUEST:**
**(For example: Psychiatric Evaluation Not Supportive, Programming Inadequate, Cat H Incomplete, etc.)**

_____

_____

_____

_____

_____

| | |
|---|---|
| **Signature of Prisoner** | **Date** |
| **Signature of Attorney (if applicable)** | **Date** |
| **Signature and Title of Witness (CDC)** | **Date** |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| RUSH, ROBERT | D73321 | CTF – SOLEDAD | 3/2005 | |

0321

BOARD OF PRISON TERMS
**LIFE PRISONER HEARING – EXTRAORDINARY ACTION AND DECISION**

STATE OF CALIFORNIA
BPT 1001A (Rev. 10/89)

☐ I certify to the best of my knowledge and information, the foregoing reasons as stated by the prisoner are accurate, and that the prisoner was capable of making a knowledgeable decision regarding his/her hearing.

..⁄e following information is submitted for the Board's consideration in making their decision:

_____

_____

_____

_____

| C&PR Signature | Date |
|---|---|
| | |

## FOR BOARD OF PRISON TERMS USE ONLY

### DECISION / ORDER

#### WAIVER OF RIGHT TO ATTEND HEARING

1. ☐ Request is denied.

   ☐ Request is granted. Hearing will be conducted in absence of prisoner.

#### POSTPONEMENT

2. ☐ Request is denied.

   ☐ Request is granted. Grant based on a finding of good cause. Place on _____ calendar.

#### WAIVER OF HEARING AND STIPULATION TO UNSUITABILITY

☐ Request is denied.

☐ Request is granted. The Board agrees to enter into the stipulation, on a finding of good cause, offered by the prisoner on the waiver of his/her Life Parole Consideration Hearing and orders a:

☐ One-year denial      ☐ Two-year denial*      ☐ Three-year denial**

\* The Board must find it unreasonable to expect that the prisoner would be eligible for parole during the second, or second and third year, and the Board must state the reasons for its finding.

\*\* In addition to the above (\*), the prisoner must have been convicted of more than one offense which involves the taking of a life.

(The basis of the finding of good cause for postponement or multiple-year denial must be stated below.)

☐ Good cause based on the reasons given by the prisoner.

Other comments (if applicable):

_____

_____

_____

_____

**Signature of BPT Commissioners**
1. _____    Date _____

2. _____    Date _____

BP⟩ Action Taken At:    ☐ BPT Headquarters    ☐ Institution

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| RUSH, ROBERT | D73321 | CTF - SOLEDAD | 3/2005 | |

0322

## LIFE PRISONER: NOTICE OF HEARING RIGHTS

| Date of Hearing | Time of Hearing | Type of Hearing |
|---|---|---|
| | | **SUBSEQUENT** |

Please complete and return as instructed by staff as soon as possible but no later than 5 days after receipt.

### REQUEST FOR ATTORNEY

☒ I request the assistance of an attorney at my hearing.

1. ☒ I have or can retain my own attorney. The attorney is:

| Attorney's Name STEVE DEFILIPPIS | Telephone (408) 292 - 0441 |
|---|---|

Attorney's Address
45 E. JULIAN ST. SAN JOSE, CA 95112

2. ☐ I wish to have the state provide an attorney to assist me. I declare under penalty of perjury that I am indigent (I have less than $1,500 in cash and/or accounts, (Title 15 CCR §2256(c)) and cannot afford an attorney.

| Signature of Prisoner | CDC Number D73321 | Date 11/19/04 |
|---|---|---|

### WAIVER OF ATTORNEY

☐ I waive my right to have an attorney.

On _____ (Date), I was informed that I have been scheduled to appear before the BOARD OF PRISON TERMS for a hearing. I was also informed of my right to be represented by an attorney at my Board hearing. I know that if I am indigent and cannot afford to retain an attorney the state will appoint an attorney to represent me at state expense. Knowing this, I have decided that I DO NOT wish the assistance of an attorney at my Board hearing.

| Signature of Prisoner | CDC Number | Date |
|---|---|---|

### WITHDRAWAL OF REQUEST FOR AN ATTORNEY

☐ I withdraw my request for an attorney.

I have reconsidered my request for an attorney at my Board hearing and have decided that I DO NOT wish to have the assistance of an attorney at my Board hearing. This decision to withdraw my request for an attorney is not being made as a result of any promises or duress. I know that if I withdraw my request for an attorney, I will not be able to later request an attorney again for this hearing

| Signature of Prisoner | CDC Number | Date |
|---|---|---|

| NAME RU▓ ROBERT | CDC NUMBER D73321 | INSTITUTION CTF - SOLEDAD |
|---|---|---|

BPT 1003 (Rev. 9/90)

0323

STATE OF CALIFORNIA

QUEST FOR INTERPRETER

Please complete and return as instructed by staff as soon as possible but no later than 5 days after receipt.

I do not speak or understand the English language, and I request the assistance of an interpreter at my hearing.

| SIGNATURE | CDC NUMBER | DATE |
|---|---|---|
|  |  |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

'CITUD PARA INTÉRPRETE

Favor de llenar como le indique el miembro del personal y devolver tan pronto como le sea posible, en cinco días a más tardar.

No hablo ni entiendo el idioma inglés, y solicito la ayuda de un intérprete en mi audiencia.

| FIRMA | NUMERO DE CDC | FECHA |
|---|---|---|
| NAME | CDC NUMBER | INSTIT / REGION |
| RUSH, ROBERT | D73321 | CTF - SOLEDAD |

BPT 1079 (Rev. 9/90)

0324

## I. PRE-INTERVIEW FILE REVIEW (STAFF ONLY)

Documents verifying/identifying disability: (Check all verifying documents and attach copies to 1073.)

☐ CDC 128C ☐ CDC 128C-1 ☐ CDC 128C-2 ☐ CDC 611 ☐ CDC 1845 ☐ CDC 1515 ☐ Current BPT 1073

☐ CDC 128B (TABE 4.0 or lower) Score/GPL_____ ☐ Other documents_____ ☑ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.):

## II. PRISONER/PAROLEE RIGHTS & SELF IDENTIFICATION

The Americans with Disabilities Act (ADA) is a law to help people with disabilities. Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others. Nobody can be kept out of public places or activities because of a disability. If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process. BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help. If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form. You can also get help to fill it out.

☒ I **do not** have a disability. (Sign and date at the "X" below.)

☐ I **do** have a disability.

**My disability is:**

☐ Seeing        ☐ Talking        ☐ Reading        ☐ Hearing        ☐ Walking

☐ Understanding/Learning        ☐ Mental Problems        ☐ Other_____

**I need help for my parole hearing:** (Check all boxes that apply to you)

☐ Reading        ☐ Understanding        ☐ Talking

☐ Hearing Device (type)_____        ☐ Wheelchair or _____

☐ Visual Aids/optical device (type)_____        ☐ Walking

☐ Sign language Interpreter (type)_____        ☐ Other _____

☐ Attorney        ☐ I do not need help for my parole hearing.

X ___Rush Pen___        D73321        X 11/19/04
   Prisoner/Parolee Signature        CDC #        Date Signed

## III. INITIAL SERVICE OF RIGHTS (STAFF ONLY)

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she: ☑ Appears to understand.        ☐ Appears to have difficulty understanding.

☐ **Non—English Speaking** (indicate language): _____

☐ **EFFECTIVE COMMUNICATION METHOD USED:** (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____

Comments:_____

S. ARNO, CCI        ___signature___        11/19/04
Staff Name and Title (please print)        Staff Signature        Date

## IV. REVIEW INDICATING NO CHANGES

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| NAME | CDC # | TYPE OF HEARING | DATE OF HEARING | LOCATION |
|---|---|---|---|---|
| Rush, R. | D73321 | SUB | 3/05 | CTF |

BPT 1073 (REV. 01/02)    Distribution: White-Central File, Yellow-BPT ADACU, Pink- Inmate, Goldenrod-Field File

STATE OF CALIFORNIA

**NAME and NUMBER**        **RUSH, R.**                                      **D73321**        **BW-327U**

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

Inmate RUSH, has been actively attending the **Alcoholics Anonymous** (Group "B") at CTF-Central Facility. The meetings are held in the Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. RUSH has been a c ibuting member of this group since **11/1993**. Mr. RUSH has positively participated and shown his ability to understand and comprehend all aspects of the Twelve Steps Programs, through his own self-improvement techniques. Mr. RUSH is to be commended for his continued participation and positive contributions to Alcoholics Anonymous here at CTF-Central Facility.

[For: 1st Quarter 2005]

ORIG    :    CENTRAL FILE
cc      :    INMATE                 (RUSH, D73321)
        :    SPONSOR

DATE    4/1/2005

**DAVE RODRIGUEZ**
Alcoholics Anonymous Sponsor
CTF-Central Facility

*LAUDATORY A.A. PARTICIPATION CHRONO*        **GENERAL CHRONO**

---

STATE OF CALIFORNIA

**NAME and NUMBER**        **RUSH, R.**                                      **D73321**        **BW-327U**

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

Inmate RUSH, is a current member of a **TWELVE STEP PROGRAM** modeled on the principles of **ALCOHOLICS ANONYMOUS and NARCOTICS ANONYMOUS**, and has been actively attending the **AA/NA** (Group "B") meetings at CTF-Central Facility, held in Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. RUSH has been a contributing member of this group since **11/1993**. Mr. RUSH has positively participated and sh  his ability to understand and comprehend all aspects of the Twelve Steps Programs, through his own self-mprovement techniques. Mr. RUSH is to be commended for his continued participation and positive contributions to Alcoholics Anonymous here at CTF-Central Facility.

For: 4th Quarter 2004]

)RIG    :    CENTRAL FILE
c       :    INMATE                 (RUSH, D73321)
        :    SPONSOR

ATE    12/7/04

**DAVE RODRIGUEZ**
Alcoholics Anonymous Sponsor
CTF-Central Facility

*LAUDATORY A.A. PARTICIPATION CHRONO*        **GENERAL CHRONO**

---

STATE OF CALIFORNIA

**NAME and NUMBER**        **RUSH, R.**                                      **D73321**        **BW-327U**

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

Inmate RUSH, has been actively attending the **Alcoholics Anonymous** (Group "B") at CTF-Central Facility. The meetings are held in the Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. RUSH has been an contributing member of this group since **11/1993**. Mr. RUSH has positively participated and shown his ability to understand and comprehend all aspects of the Twelve Steps Programs, through his own self-improvement techniques. Mr. RUSH is to be commended for his continued participation and positive contributions to Alcoholics Anonymous here at CTF-Central Facility.

RIG    :    CENTRAL FILE
        :    INMATE                 (RUSH, D73321)
        :    SPONSOR

ATE    October 8, 2004

**DAVE RODRIGUEZ**
Alcoholics Anonymous Sponsor
CTF-Central Facility

0326

*LAUDATORY A.A. PARTICIPATION CHRONO*        **GENERAL CHRONO**

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

NAME and NUMBER     RUSH, R.         D73321     BW-327U

Inmate RUSH, has been actively attending the **Alcoholics Anonymous** (Group "B") at CTF-Central Facility. The m̲ ̲ings are held in the Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. RUSH has been an c̲ ̲ ̲ibuting member of this group since 11/1993. Mr. RUSH has positively participated and shown his ability to understand and comprehend all aspects of the Twelve Steps Programs, through his own self-improvement techniques. Mr. RUSH is to be commended for his continued participation and positive contributions to Alcoholics Anonymous here at CTF-Central Facility.

ORIG : CENTRAL FILE    (RUSH, D73321)
cc    : INMATE
        SPONSOR

DAVE RODRIGUEZ
Alcoholics Anonymous Sponsor
CTF-Central Facility

DATE    July 9, 2004      *LAUDATORY A.A. PARTICIPATION CHRONO*      **GENERAL CHRONO**

NAME    **Rush, R.**      CDC NUMBER    **D73321**     CELL/BED    **BW-327U**    CDC-128B

This is to recognize inmate Rush, D73321, for his voluntary assistance with the CTF Video Reports Program. This s an in-cell study program that involves the broadcast of educational videos to the Tri-facility population complete with questionnaires and certificates for completion of specific numbers of lessons. Inmate Rush has helped to make his an effective extension of the CTF Education Department's Distance Learning Curriculum, and is a credit to his peers. He is to be commended for his efforts.

Di̲  ̲tion:
⅜Fﬓe   ̲
Video File
Ed. File
Inmate

B. Henares
**CTF-C Recreation Supervisor**

R. Adams-Barnes
**CTF-C Testing Coordinator**

DATE: June 24, 2004

**LAUDATORY CHRONO**

TE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

ᴧME and NUMBER     **RUSH, R.**       **D73321**    **BW-327U**

nate RUSH, has been actively attending the **Alcoholics Anonymous** (Group "B") at CTF-Central Facility. The etings are held in the Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. RUSH has been an tributing member of this group since 11/1993. Mr. RUSH has positively participated and shown his ability to lerstand and comprehend all aspects of the Twelve Steps Programs, through his own self-improvement techniques. . RUSH is to be commended for his continued participation and positive contributions to Alcoholics Anonymous e at CTF-Central Facility.

CENTRAL FILE    (RUSH, D73321)
INMATE
SPONSOR

DAVE RODRIGUEZ
Alcoholics Anonymous Sponsor
CTF-Central Facility

E    April 9, 2004      *LAUDATORY A.A. PARTICIPATION CHRONO*      **GENERAL CHRONO**

0327

NAME: Rush, R.

*CTFC*

NUMBER: D7332I

CELL: B327

CDC-128B

I/M **RUSH** has successfully completed Dr. Thomas Gordon's Family Effectiveness Training/Harmony in the Home self-help program. This program consists of six two-hour sessions covering the following topics: A Credo for Your Relationships; Paricipative Rule-Setting; Solving Problems You Own; The Pitfalls of Punishments and Rewards; Helping Others Find Solutions to Their Own Problems; Resolving Conflicts Peacefully; Dealing with Values, Collisions, and Courage for Learning the Skills – Rewards for Using Them. This program is recognized by CTF Psychology staff as a beneficial limited instruction self-help program.

INSTITUTION/FACILITY **CTF Central**

Original  C-File
   CC: CCI
       Inmate

Date: 2/7/2004

**Information Chrono**

R. Cauntay
Sr. Librarian
Program Facilitator

CDC-128B

---

TAT    CALIFORNIA

NAME and NUMBER     **RUSH, R.**

D73321    BW-327U

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

Inmate **RUSH**, has been actively attending the **Alcoholics Anonymous** (Group "B") at CTF-Central Facility. The meetings are held in the Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. **RUSH** has been an contributing member of this group since **11/1993**. Mr. **RUSH** has positively participated and shown his ability to understand and comprehend all aspects of the Twelve Steps Programs, through his own self-improvement techniques. Mr. **RUSH** is to be commended for his continued participation and positive contibutions to Alcoholics Anonymous here at CTF-Central Facility.

Due to budgetary restraints and redundant lockdowns, this chrono covers 2nd, 3rd and 4th quarters of 2003

CC  :  **CENTRAL FILE**
      **INMATE RUSH**
      **SPONSOR**

**DAVE RODRIGUEZ**
Alcoholics Anonymous Sponsor
CTF-Central Facility

DATE  12/15/03

*LAUDATORY A.A. PARTICIPATION CHRONO*

**GENERAL CHRONO**

**NAME AND NUMBER**    Rush    D 73321    B 327    CDC 128 B

This is a laudatory chrono for inmate **Rush, D 73321, B 327**.

In the true spirit of giving, inmate Rush volunteered his time and organizational skills to provide clerical and production support for the Central Education Department's Graduation and Promotion Ceremony on April 25, 2003. Inmate Rush is one of the original organizers of the commencement exercises, and he has dedicated considerable time and energy since the first one several years ago. This is to acknowledge inmate Rush's willingness to give back, and to thank him for his contributions to the overall success of both ceremonies. The Education staff, students and participants appreciate his efforts.

cc:    C file
       Ed file
       Inmate
       Writer

R. Adams-Barnes
Testing Coordinator/Academic Counselor

**DATE** May 15, 2003    **LAUDATORY CHRONO**    General Chrono

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

**NAME and NUMBER**    **RUSH, R.**    D73321    **BW-327U**

Inmate **RUSH,** has been actively attending the **Alcoholics Anonymous** (Group "B") at CTF-Central Facility. The meetings are held in the Dining Hall #2 on Saturdays between 1030 and 1230 hours. Mr. **RUSH** has been an contributing member of this group since **11/1993**. Mr. **RUSH** has positively participated and shown his ability to understand and comprehend all aspects of the Twelve Steps Programs, through his own self-improvement techniques. Mr. **RUSH** is to be commended for his continued participation and positive contributions to Alcoholics Anonymous here at CTF-Central Facility.

RIG :    CENTRAL FILE
     :    INMATE ABRAHAM
     :    SPONSOR

**DAVE RODRIGUEZ**
Alcoholics Anonymous Sponsor
CTF-Central Facility

ATE    04/23/03    *LAUDATORY A.A. PARTICIPATION CHRONO*    GENERAL CHRONO

0329