$\mathcal{F}$

15 CCR s 2029

Cal. Admin. Code tit. 15, s 2029

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 15. CRIME PREVENTION AND CORRECTIONS
DIVISION 2. BOARD OF PRISON TERMS
CHAPTER 1. GENERAL
ARTICLE 4. PUBLIC PARTICIPATION
This database is current through 04/01/2005, Register 2005, No. 13.

s 2029. Victims, Next of Kin, and Immediate Family Members at Hearings.

(a) Notice to Board. Victims or, if the victim has died, the next of kin or immediate family members may, upon request to the Board of Prison Terms, receive notification of any parole consideration hearing, to review or consider the parole suitability or the setting of a parole date for any prisoner in a state prison, so that an opportunity to make a statement is afforded them. The Board shall notify each such person who has informed it of his or her address at least 30 days prior to the hearing date.

(b) Notification and Appearance, Next of Kin. The next of kin and immediate family members shall be entitled to notification and to appear under this section in the following order:

(1) spouse

(2) children

(3) parents

(4) siblings

(5) grandchildren

(6) grandparents

If one person qualifies as the next of kin, he or she shall be entitled to notice and appearance under this section.

(c) Notification and Appearance, Immediate Family Members. If there is no next of kin, immediate family members shall be entitled to notification and to appear under this section in the order specified in subsection (b).

Up to two persons of the categories in descending order are entitled to notice and to appear. More than two persons may appear with the prior approval of a panel member, the chairman, or the executive officer.

(d) Representation by Counsel. The victim, next of kin, or immediate family members may appear personally or be represented by counsel. If counsel and client both attend the hearing, only one may appear by making a statement or addressing the panel.

(e) Support Persons. Victims, next of kin, or immediate family members attending hearings may be accompanied by one support person of his or her own choosing who shall not participate in the hearing nor make comments while in attendance. In order for such person to be admitted to the hearing, the person requesting support shall advise the board of the name of the support person at the time he or she informs the board of his or her intention to attend.

(f) Audio or Video Tapes. In lieu of personal appearance, any victim, next of kin, or immediate family member may submit an audio taped (cassette) or video taped (VHS format) statement, not to exceed 15 minutes in length, to the Classification and Parole Representative of the appropriate institution

0401

three weeks before the hearing for consideration by the hearing panel. [The Classification and Parole Representative shall advise the executive officer of the receipt of any such tape and transcript.] Material submitted after this deadline need not be considered. A written transcript must accompany an audio or video taped statement. The tape and transcript shall be placed in the prisoner's central file. The person submitting the tape may request at the time of any subsequent hearing that the board reconsider the tape.


Note: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Sections 3043, 3043.1, 3043.2, 3043.3, 3043.5, 5075 and 5076.1, Penal Code; and Section 11120, Government Code.

                                    HISTORY

1. Amendment filed 8-17-78; effective thirtieth day thereafter. Filed in the week of Register 78, No. 33, this amendment is printed in Register 78, No. 41 for technical reasons (Register 78, No. 41).

2. Amendment filed 11-13-85; effective thirtieth day thereafter (Register 85, No. 46).

3. Amendment filed 1-20-88; operative 2-19-88 (Register 88, No. 5).

4. Amendment of section heading, subsection (a) and Note and new subsections (b)-(f) filed 4-24-92; operative 5-25-92 (Register 92, No. 19).
15 CA ADC s 2029

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

15 CCR s 2029.1

Cal. Admin. Code tit. 15, s 2029.1

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 15. CRIME PREVENTION AND CORRECTIONS
DIVISION 2. BOARD OF PRISON TERMS
CHAPTER 1. GENERAL
ARTICLE 4. PUBLIC PARTICIPATION
This database is current through 04/01/2005, Register 2005, No. 13.

s 2029.1. Visitors and Observers at Hearings.

Visitors and observers may attend individual case hearings if prior permission has been obtained from any commissioner, deputy commissioner, person assigned to the hearing panel, the chairman, or the executive officer, subject to the authority of the hearing panel to exclude visitors and observers upon the request of the prisoner or parolee or upon the panel's own motion. Attendance may be permitted only for educational or informational purposes. Persons having a personal interest in the case shall disclose that interest when requesting permission to attend. Visitors and observers may not participate in the hearing except to review written records as permitted by law.

Note: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Sections 3043, 3043.1, 3043.2, 3043.3, 3043.5, 5075 and 5076.1, Penal Code; and Section 11120, Government Code.

HISTORY

1. New section created and amended from second paragraph of section 2029 filed 4-24-92; operative 5-25-92 (Register 92, No. 19).
15 CA ADC s 2029.1

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

0403



12-22-04

# FILED

DEC 2 9 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____

United States District Court

Eastern District of California

|  |  |
|---|---|
| Melvyn H. Coleman, | No. Civ. S-96-0783 LKK PAN P |
| Petitioner, | Findings and Recommendations |
| vs. |  |
| Board of Prison Terms, et al., |  |
| Respondents. |  |

-oOo-

Petitioner seeks a writ of habeas corpus.

In his November 14, 1997, second amended petition petitioner claims his federal due process guarantee was violated because the California Board of Prison Terms (Board) has failed to conduct a fair parole suitability hearing.

In 1974 petitioner was convicted of first degree murder, attempted murder, first degree robbery, first degree burglary and other charges. The victims, Mr. And Mrs. Siewart, returned to their home while petitioner was burglarizing it; he then

1    approached before they got out of their car and robbed and shot

2    them, killing Mr. Siewart and seriously wounding Mrs. Siewart.

3    Petitioner had a prior juvenile record.

4         Under California law, a prisoner including a convicted

5    murderer serving an indeterminate term (i.e., seven years to

6    life) is entitled to a hearing before a panel composed of members

7    of the Board to determine his suitability for parole.  By

8    statute, parole at some point normally is appropriate and the

9    Board "shall set a release date unless it determines that the

10   gravity of the current convicted offense or offenses, or the

11   timing and gravity of current or past convicted offense or

12   offenses, is such that consideration of the public safety

13   requires a more lengthy period of incarceration. . . ."  Cal.

14   Penal Code § 3041(b).  Procedures  governing suitability hearings

15   are set forth in Penal Code § 3041.5 (providing prisoners with

16   notice and an opportunity to be heard and requiring a written

17   statement of reasons if the panel refuses to set a parole date).

18   Regulations prescribe factors for the panel to consider in

19   determining whether each prisoner is suitable or unsuitable for

20   parole.  15 CAC § 2281.[1]

21   _____

22   [1] Factors supporting a finding of unsuitability include: (1) whether the
     prisoner's offense for which he is confined was committed in an "especially

23   heinous, atrocious or cruel manner"; (2) the prisoner's record of violence prior
     to the offense; (3) whether the prisoner has an unstable social history; (4)

24   whether the prisoner has committed sadistic sexual offenses; (5) whether the
     prisoner has a lengthy history of severe mental problems related to the offense;

25   and (6) whether the prisoner has engaged in serious misconduct in prison or jail.
     Factors supporting a finding of suitability include: (1) whether the prisoner has

26   a juvenile record; (2) whether the prisoner has experienced reasonably stable
     relationships with others; (3) whether the prisoner shows signs of remorse; (4)

0405

1    Petitioner presents evidence that under Governors Wilson and

2  Davis the Board disregarded regulations ensuring fair suitability

3  hearings and instead operated under a sub rosa policy that all

4  murderers be found unsuitable for parole.  The record shows that

5  between 1992 and 1998 less than one percent of the prisoners in

6  this group were released on parole.  During the previous period

7  the parole rate had been about four percent.  Petitioner presents

8  sworn testimony that the policy was enforced by (1) appointing

9  Board members less likely to grant parole and more willing to

10  disregard their statutory duty; (2) removing Board members more

11  likely to grant parole; (3) reviewing decisions finding a

12  prisoner suitable and setting a new hearing before a different

13  panel; (4) scheduling rescission hearings for prisoners who had

14  been granted a parole date; (5) re-hearing favorable rescission

15  proceedings and hand-picking panels to ensure the desired

16  outcome; (6) panel members agreeing upon an outcome in advance of

17  the hearing; and (7) gubernatorial reversal of favorable parole

18  decisions.  See e.g., declaration of former BPT Commissioner

19  Albert Leddy (Leddy) paras. 5, 6, 8-17, 20 (attached as Ex. 17 to

20  petitioner's March 27, 2003, motion for discovery); deposition of

21  Leddy taken in In re Fortin, et al., San Diego Superior Court

22  ─────────────────────────────────

whether the prisoner committed his crime as the result of significant stress in
23  his life; (5) whether the prisoner suffered from Battered Woman Syndrome when she
committed the crime; (6) whether the prisoner lacks any significant history of
24  violent crime; (7) whether the prisoner's present age reduces the probability of
recidivism; (8) whether the prisoner has made realistic plans for release or has
25  developed marketable skills that can be put to use on release; and (9) whether
the prisoner's institutional activities indicate an enhanced ability to function
26  within the law upon release.  15 CAC § 2281.

3

0406

1  case number HSC10279 at 18-19, 47-50, 56-59, 61-63, 65-66, 88-89,

2  95, 97-99, 102, 106, 110, 118 & 126 (attached as Ex. 10 to

3  petitioner's March 27, 2003, motion for discovery); deposition of

4  former BPT Commissioner Edmund Tong taken in Kimble v. Cal. BPT,

5  C.D. Cal. case number CV 97-2752 at 42-43, 45-47, 71, 73, 80-82,

6  85-86, 96, 103, 105, 107 & 109 (lodged December 30, 2003).[2]

7        The unrefuted record shows the no-parole-for-murderers

8  policy existed and continued under Governor Davis.  In In re

9  Rosencrantz, the California Supreme Court took note of evidence

10  presented in the state trial court establishing that the Board

11  held 4800 parole suitability hearings between January 1999

12  through April 2001, granting parole to 48 murderers (one

13  percent).  29 Cal. 4th 616, 685 (2003).  Of those 48, the

14  governor reversed 47 of the Board's decisions and only one

15  murderer out of 4800 actually was released on parole.  Id.

16  Petitioner in Rosenkrantz also submitted evidence of the

17  following interview of Governor Davis reflected in the April 9,

18  1999, edition of the Los Angeles Times: " '. . . [T]he governor

19  was adamant that he believes murderers - even those with second-

20  degree convictions - should serve at least a life sentence in

21  prison. [Para.]  Asked whether extenuating circumstances should

22  _____

23        [2] Meanwhile, the annual cost to taxpayers of conducting these "pro forma"
   hearings is enormous, amounting to millions of dollars per year.  See Exhibit 7
24  to petitioner's March 27, 2003, motion for discovery (California Legislative
   Analyst's Office - Analysis of the 2000-01 Budget Bill for the Board of Prison
25  Terms criticizing proposed $19 million annual budget and noting huge cost of
   additional incarceration resulting from no-parole policy).

26

4

0407

1  be a factor in murder sentences, the governor was blunt: "No.

2  Zero . . .  They must not have been listening when I was

3  campaigning. . . .  If you take someone else's life, forget it.

4  I just think people dismiss what I said in the campaign as either

5  political hyperbole or something that I would back away from . .

6  . .  We are doing exactly what we said we were going to do.""

7  29 Cal. 4th at 684.

8      Respondent does not refute the alleged facts.  Instead,

9  respondent argues that, assuming arguendo prisoners in California

10  have an interest in a parole date protected by the due process

11  clause, constitutional requirements are met so long as there is

12  "some evidence" supporting the findings petitioner is unsuitable.

13  See Oppo. at 7:20 (so long as "some evidence" standard is met,

14  "the Board decisions could not have been arbitrary.")  For the

15  reasons explained, this court rejects that claim.  As this court

16  previously has found, there always will be "some evidence" that

17  can be used to explain a denial or rescission under the

18  circumstances.  Federal due process requires more.

19  California's parole scheme gives rise to a protected liberty

20  interest in release on parole. McQuillion v. Duncan, 306 F.3d

21  895, 902 (2002); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389,

22  1390 (9th Cir. 1987); Greenholtz v. Inmates of Nebraska Penal &

23  Correctional Complex, 442 U.S. 1 (1979); Biggs v. Terhune, 334

24

25

26

0408

1   F.3d 910, 915 (9th Cir. 2003); In re Rosenkrantz, 29 Cal. 4th 616

2   (2003).[3]

3       Therefore, petitioner is entitled to the process outlined in

4   Greenholtz, viz., notice, opportunity to be heard, a statement of

5   reasons for decision, and limited right to call and cross-examine

6   witnesses.  The determination that petitioner is unsuitable for

7   parole must be supported by some evidence bearing some indicia of

8   reliability.

9       These guarantees do not exhaust petitioner's right to due

10   process.  The fundamental core of due process is protection

11   against arbitrary action:

12         The principal and true meaning of the phrase has never
           been more tersely or accurately stated than by Mr.
13         Justice Johnson, in Bank of Columbia v. Okely, 17 U.S.
           235, 4 Wheat. 235-244, 4 L.Ed. 449 [(1819)]: "As to the
14         words from Magna Charta, incorporated into the
           Constitution of Maryland, after volumes spoken and
15         written with a view to their exposition, the good sense
           of mankind has at last settled down to this: that they
16         were intended to secure the individual from the
           arbitrary exercise of the powers of government,
17         unrestrained by the established principles of private
           right and distributive justice."

18
  Hurtado v. California, 110 U.S. 516, 527, (1884).  "The
19
  concessions of Magna Charta were wrung from the king as
20
  guaranties against the oppressions and usurpations of his
21

22 _____

23      [3] That is so because the parole statute, Penal Code § 3041, uses mandatory
  language ("The panel or board shall set a release date unless it determines"
24   further incarceration is necessary in the interest of public safety) which
  "'creates a presumption that parole release will be granted," unless the
25   statutorily defined determinations are made. Board of Pardons v. Allen, 482 U.S.
  369, 378 (1987) (quoting Greenholtz, 442 U.S. at 12).  As of 1988, by amendment
26   of the state constitution, a parole date given can be withdrawn by the Governor
  under the same factors considered by the Board.

1  prerogative." Id. at 531. "The touchstone of due process is

2  protection of the individual against arbitrary action of

3  government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974),

4  citing Dent v. West Virginia, 129 U.S. 114 (1889).

5      A government official's arbitrary and capricious exercise of

6  his authority violates the essence of due process, contrary to

7  centureis of Anglo-American jurisprudence. See Yick Wo v.

8  Hopkins, 118 U.S. 356, 369 (1886) ("When we consider the nature

9  and the theory of our institutions of government, the principles

10 upon which they are supposed to rest, and review the history of

11 their development, we are constrained to conclude that they do

12 not mean to leave room for the play and action of purely personal

13 and arbitrary power."); United States v. Lee, 106 U.S. 196, 220

14 (1882) ("No man in this country is so high that he is above the

15 law.  No officer of the law may set that law at defiance with

16 impunity.  All the officers of the government from the highest to

17 the lowest, are creatures of the law and are bound to obey it.

18 It is the only supreme power in our system of government, and

19 every man who by accepting office participates in its functions

20 is only the more strongly bound to submit to that supremacy, and

21 to observe the limitations which it imposes upon the exercise of

22 the authority which it gives."); U.S. v. Nixon, 418 U.S. 683,

23 695-96 (1974) (rule of law is "historic commitment"); Accardi v.

24 O'Shaughnessy, 347 U.S. 260, 267-68 (1954) (Attorney General must

25 abide by regulations and cannot dictate immigration board's

26 exercise of discretion in decision on application to suspend

7

0410

1  deportation; remedy is new hearing where board will exercise it's

2  discretion free from bias).

3      Concomitant to the guarantee against arbitrary and

4  capricious state action is the right to a fact-finder who has not

5  predetermined the outcome of a hearing. See Withrow v. Larkin,

6  421 U.S. 35 (1975) (a fair trial in a fair tribunal is a basic

7  requirement of due process, and this rule applies to

8  administrative agencies which adjudicate as well as to courts);

9  Edwards v. Balisok, 520 U.S. 641 (1997) (recognizing due process

10  claim based on allegations that prison disciplinary hearing

11  officer was biased and would suppress evidence of innocence);

12  Bakalis v. Golembeski, 35 F.3d 318, 326 (7th Cir. 1994) (a

13  decision-making body "that has prejudged the outcome cannot

14  render a decision that comports with due process").

15      Courts too numerous to list have recognized that the right

16  to a disinterested decision-maker, who has not prejudged the

17  case, is part of the fundamental guarantee against arbitrary and

18  capricious government conduct in the California parole context.

19  See, e.g., Rosenkrantz, 29 Cal. 4th at 677 (parole decision "must

20  reflect an individualized consideration of the specified criteria

21  and cannot be arbitrary and capricious"); In re Ramirez, 94 Cal.

22  App. 4th 549, 563 (2001) ("some evidence" standard is "only one

23  aspect of judicial review for compliance with minimum standards

24  of due process" (citing Balisok) and Board violates due process

25  if its decision is "arbitrary and capricious"); In re Minnis, 7

26  Cal. 3d 639 (1972) (blanket no-parole policy as to certain

8

1  category of prisoners is illegal); In re Morrall, 102 Cal. App.

2  4th 280 (2003) (same).  The guarantee of neutral parole officials

3  in a suitability hearing is just as fundamental as the right to a

4  neutral judge in a court proceeding.  Compare Sellars v.

5  Procunier, 641 F.2d 1295 (9th Cir. 1981) (holding that California

6  parole officials, analogous to judges, are entitled to absolute

7  immunity).

8          The Ninth Circuit previously has acknowledged California

9  inmates' due process right to parole consideration by neutral

10  decision-makers.  See O'Bremski v. Maas, 915 F.2d 418, 422 (9th

11  Cir. 1990).  In that case the appellate court found that a

12  neutral parole panel at a new hearing would reach the same

13  outcome and so denied relief.  The record in this case simply

14  will not permit the same conclusion.  The requirement of an

15  impartial decision-maker transcends concern for diminishing the

16  likelihood of error.  As the Supreme Court clearly held in

17  Balisok a decision made by a fact-finder who has predetermined

18  the outcome is per se invalid -- even where there is ample

19  evidence to support it.  520 U.S. at 648.

20          Petitioner presents a convincing case that a blanket policy

21  against parole for murderers prevented him from obtaining a

22  parole suitability determination made after a fair hearing.

23  Respondent offers nothing to counter petitioner's showing.

24          Accordingly, the court hereby recommends that the petition

25  for habeas corpus be granted unless, within 60 days of the

26  district court's adoption of these recommendations, respondent

9

1  provides a fair parole suitability hearing, conducted by a board

2  free of any prejudice stemming from a gubernatorial policy

3  against parole for murderers.

4        Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these

5  findings and recommendations are submitted to the United States

6  District Judge assigned to this case.  Within 20 days after being

7  served with these findings and recommendations, respondent may

8  file written objections.  The document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."

10  The district judge may accept, reject, or modify these findings

11  and recommendations in whole or in part.

12        Dated:  __DEC 2 1 2004__ .

13                                    _____
                                         Peter A. Nowinski
14                                         Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26  cole0783.f&r grant

                                    10

                                                                    0413



Westlaw.

2006 WL 1344584                                                    Page 1
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
**(Cite as: 2006 WL 1344584 (N.D.Cal.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently
available.

United States District Court,
N.D. California.
Eulogio MARTIN, Petitioner,
v.
John MARSHALL, Warden, Respondent,
No. C 05-3486 MHP.

May 17, 2006.

**Background:** Petitioner sought a writ of
habeas corpus, challenging California's
Governor's reversal of his grant of parole.

**Holdings:** The District Court, Marilyn H.
Patel, J., held that:

(1) sole reliance on circumstances of
petitioner's offense and conduct prior to the
offense in denying parole constituted a due
process violation, and

(2) denial of parole under California
Governor's no-parole policy for murderers
denied inmate his due process right for to be
heard by an impartial decision-maker.
Petition granted.

**[1] Pardon and Parole** ☜0

284k0 k.
In the parole context, a violation of an
inmate's due process occurs when (1) the
inmate has been deprived of a
constitutionally protected liberty interest in
parole, and (2) the inmate has been denied
adequate procedural protections in the
parole process. U.S.C.A. Const.Amend. 14.

**[2] Pardon and Parole** ☜0
284k0 k.
There is no cognizable right to parole under
the federal Constitution; however, when a
state's parole statute uses mandatory
language, the statute creates a presumption
that parole release will be granted unless
certain findings are made, and thereby gives
rise to a due process protected liberty
interest. U.S.C.A. Const.Amend. 14.

**[3] Pardon and Parole** ☜0
284k0 k.
California's parole scheme gives rise to a
cognizable due process protected liberty
interest in release on parole. U.S.C.A.
Const.Amend. 14; West's Ann.Cal.Penal
Code § 3041.

**[4] Pardon and Parole** ☜0
284k0 k.
Under due process clause, inmate has been
afforded an adequate parole process if the
parole procedure itself provides inmate with
sufficient safeguards, including an
opportunity to be heard before an unbiased
decision-maker, and in the case of a denial
of parole, given the reasons underlying the
decision, and if "some evidence" supports
the decision to grant or deny parole.
U.S.C.A. Const.Amend. 14.

**[5] Pardon and Parole** ☜0
284k0 k.
"Some evidence" standard of support for the
decision to grant or deny parole applies
equally to parole board's decision and
California's Governor's review of the grant
or denial of parole.

**[6] Pardon and Parole** ☜0

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1344584
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
(Cite as: 2006 WL 1344584 (N.D.Cal.))

284k0 k.
California's Governor is not limited to considering the same factors considered by the parole board in reviewing the grant or denial of parole.

[7] Habeas Corpus 🖙0
197k0 k.
Because habeas petitioner's claim of a due process violation resulting from Governor's parole decision was heard by state courts on collateral review, that claim had been adjudicated on the merits in a state court proceeding within the meaning of Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C.A. § 2254(d)(1).

[8] Pardon and Parole 🖙0
284k0 k.
Evidence that a particular suitability factor in California's parole scheme did not apply could constitute evidence that inmate was unsuitable for parole. 15 CCR § 2402.

[9] Pardon and Parole 🖙0
284k0 k.
Fact that California inmate did not have viable parole plans in the United States did not preclude a finding that inmate, who had realistic parole plans in Mexico, had made realistic plans for release or had developed marketable skills that could be put to use upon release. 15 CCR § 2402(d)(8).

[10] Pardon and Parole 🖙0
284k0 k.
Sole reliance on circumstances of petitioner's offense and conduct prior to the offense in denying parole constituted a due process violation. U.S.C.A. Const.Amend. 14.

[11] Pardon and Parole 🖙0
284k0 k.
Denial of parole under California Governor's

no-parole policy for murderers denied inmate his due process right to be heard by an impartial decision-maker. U.S.C.A. Const.Amend. 14.

Joseph Vincent Camarata, Law Offices of Joseph V. Camarata, Vallejo, CA, for Petitioner.

Brian G. Walsh, Office of the Attorney General for the State of California, Scott Colin Mather, CA State Attorney General's Office, San Francisco, CA, for Respondent.

**MEMORANDUM & ORDER**
**Re: Petition for Writ of Habeas Corpus**

MARILYN H. PATEL, District Judge.

*1 Eulogio Martin, an inmate at the California Men's Colony in San Luis Obispo, California, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. section 2254. His petition is now before the court for review pursuant to 28 U.S.C. section 2243 and Rule 4 of the Rules Governing Section 2254 Cases. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

*BACKGROUND*

Petitioner was convicted of second-degree murder in connection with a shooting that took place on November 15, 1979 in San Francisco. [FN1] The facts surrounding petitioner's crime are largely undisputed, and are set forth in petitioner's Life Prisoner Evaluation (Pet.'s Exh. E). One of the victims, Walter Acosta, had a prior relationship with petitioner relating to the sale of drugs. Acosta was well known in his neighborhood as a drug dealer with a penchant for violence. Petitioner owed Acosta money for drugs and for damage to a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

car petitioner had borrowed. Petitioner claims that Acosta had threatened and harassed him in the weeks leading up to the shooting.

On November 15, 1979, petitioner was sitting in a restaurant with two friends. Acosta entered the restaurant and approached petitioner. Petitioner asked Acosta to leave, but Acosta refused. Petitioner was convinced that Acosta had come to the restaurant to shoot him. Petitioner had entered the restaurant unarmed, but one of his friends passed him a gun. It was clear that Acosta would not leave the restaurant, and when petitioner saw him reach into his pocket, petitioner began to shoot at him. He shot Acosta seven times, killing him immediately. Petitioner claims he had lost control of himself at this point, and continued shooting, hitting two innocent bystanders. One bystander died, while the other sustained a non-fatal shot to the foot. A .39 caliber gun was found on Acosta.

On February 22, 1980, petitioner was sentenced to a prison term of fifteen years-to-life, with a five year enhancement. Petitioner's fifth parole hearing took place on April 30, 2003. At that hearing, the Board of Prison Terms ("Board" or "BPT") concluded that petitioner was suitable for parole. The Board detailed its findings in its order. *See* Pet.'s Exh. B, at 57-61. The Board found that petitioner had no juvenile criminal record. *Id.* at 57. Petitioner's only prior offense was a charge of possession of a controlled substance in 1978, to which he pleaded no contest. Pet. at 12. He was placed on probation for this crime and was deported to Mexico. *Id.* The Board also found that petitioner lacked a significant history of violent crime, and that he committed the instant offense as a result of

stress in his life. Pet.'s Exh. B at 58. Petitioner showed signs of remorse, understood the nature and magnitude of the offense and accepted responsibility for his criminal behavior. *Id.* The record indicated that his last psychological evaluation, performed by Dr. Kate Burkham, supported release. *Id.* at 59. Dr. Burkham had found that petitioner fell in the low-moderate range for future offense within the community as long as he abstained from substance abuse and followed through with his plans for parole. *Id.* The doctor also found petitioner a low-medium risk for future violence. *Id.* Because of maturation, growth, a better understanding and advanced age, the Board found that petitioner had a reduced possibility of recidivism. *Id.* at 58.

*2 The Board also outlined petitioner's accomplishments while in prison. *Id.* at 57-58. Petitioner participated in education programs, self-help and therapy, vocational programs, institutional job assignments, and volunteer work. *Id.* Petitioner had been involved in Alcoholics Anonymous and Narcotics Anonymous since 1990. *Id.* at 59. He participated in several courses, including a marriage and family course, an anger management course, The Big Four Fellowship and the Inmate Peer Education Program. *Id.* Petitioner also improved his marketable job skills while in prison. *Id.* at 57. He earned a certificate in Vocational Sewing Machine Repair and completed a Vocational Automachine Shop course. *Id.* Since February 2001, petitioner has worked in the Prison Industry Authority shoe factory, earning above average to exceptional work reports. *Id.* at 39, 57.

The Board found that petitioner had realistic parole plans in Jalisco, Mexico, including job offers in his brother's auto shop and his sister's textile shop, and family

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1344584                                                    Page 4
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
(Cite as: 2006 WL 1344584 (N.D.Cal.))

support. *Id.* at 58. He planned to live with his parents on their ranch. *Id.* The Board found these plans realistic due to an INS hold indicating that petitioner would be deported to Mexico after release. *Id.* at 36.

The Board's Decision Review Unit approved the grant of parole on September 2, 2003. Governor Gray Davis reversed the grant of parole on September 24, 2003. [FN2]

In his review of petitioner's parole grant, Governor Davis cited several reasons for reversing the Board's decision. *See* Pet.'s Exh. D. First, Governor Davis stressed the gravity of petitioner's crime, highlighting the facts that petitioner continued to fire the gun after Acosta was dead and that petitioner failed to call for help after committing the crime. Governor Davis stated that petitioner's crime demonstrated a "callous disregard for human life and a lack of remorse." Second, Governor Davis disagreed with the Board's finding that the crime was a result of stress in petitioner's life. Governor Davis concluded that petitioner was responsible for his stress because he voluntarily entered into a life of selling drugs and he failed to go to the police when Acosta threatened him. Third, Governor Davis stated that petitioner's parole plans in Mexico were unrealistic. The Governor pointed out that petitioner has a history of entering the United States illegally. Therefore, the Governor concluded, petitioner should have viable parole plans in the United States as well as in Mexico.

The Governor also relied on at least two facts that were not discussed in petitioner's April 30th hearing. First, petitioner has received twenty disciplinary violations while in prison. Ans. at 7. The disciplinaries

included "possession of drugs, weapons materials and gambling paraphernalia." Pet.'s Exh. D at 3. Since 1995, however, petitioner has not had a serious rules violation. Ans. at 7. Second, the Governor asserts that petitioner was stabbed three times between 1987 and 1990 as a result of his involvement with loan sharks in prison. [FN3] *Id.* The Governor found that these two facts belied the Board's finding that petitioner was suitable for parole based on positive institutional behavior.

*3 After the Governor reversed petitioner's parole grant, petitioner filed a petition for writ of habeas corpus in the San Francisco Superior Court ("Superior Court"). The Superior Court denied the petition. The California Court of Appeal and the Supreme Court subsequently denied the petition without comment. After exhausting his state remedies, petitioner filed a petition for writ of habeas corpus in this court.

Petitioner contends that there was no evidence to support the Governor's reversal of petitioner's parole grant, and that petitioner was therefore denied due process of the law.

*LEGAL STANDARD*

I. *Liberty Interest in Parole*

[1] The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV. In the parole context, a violation of an inmate's due process occurs when (1) the inmate has been deprived of a constitutionally protected liberty interest in parole, and (2) the inmate has been denied adequate procedural protections in the parole process. *See, e.g., Biggs v. Terhune,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1344584                                                      Page 5
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
(Cite as: 2006 WL 1344584 (N.D.Cal.))

334 F.3d 910, 913 (9th Cir.2003).

[2][3] There is no cognizable right to parole under the Federal Constitution. The Supreme Court has held, however, that when a state's parole statute uses mandatory language, the statute "creates a presumption that parole release will be granted" unless certain findings are made, and thereby gives rise to a constitutionally protected liberty interest. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Board of Pardons v. Allen,* 482 U.S. 369, 377-78, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). California Penal Code section 3041 states that "[t]he panel or board *shall* set a release date *unless* it determines that" statutorily defined determinations are met. Thus, under *Greenholtz* and *Allen,* the Ninth Circuit found "that California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan,* 306 F.3d 895, 901 (9th Cir.2002).

[4][5][6] The second prong of the due process inquiry--whether the inmate has been afforded an adequate parole process--is satisfied if two considerations are met. First, the parole procedure itself must provide an inmate with sufficient safeguards. The inmate must be afforded an opportunity to be heard before an unbiased decision-maker, and in the case of a denial of parole, must be informed of the reasons underlying the decision. *See Jancsek v. Oregon Bd. of Parole,* 833 F.2d 1389, 1390 (9th Cir.1987). Second, "some evidence" must support the decision to grant or deny parole. *Id.* (adopting the "some evidence" standard established by the Supreme Court in *Superintendent v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). The evidence underlying the grant or denial of parole must have "some indicia of

reliability." *Id.* The "some evidence" standard applies equally to the Board's decision and the Governor's review of the grant or denial of parole. *See, e.g., In re Rosenkrantz,* 29 Cal.4th 616, 656, 660-61, 128 Cal.Rptr.2d 104, 59 P.3d 174 (2003). The Governor is not limited to considering the same factors considered by the Board. *Id.* at 677, 128 Cal.Rptr.2d 104, 59 P.3d 174.

*4 However, the deferential "some evidence" standard has outer limits. *See Coleman v. Board of Prison Terms,* No. 96-0783 LKK PAN, slip op. at 9 (E.D.Cal. May 19, 2005). If it is established that a particular judgment was predetermined, then a prisoner's due process rights will have been violated even if there is "some evidence" to support the decision. *See Bakalis v. Golembeski,* 35 F.3d 318, 326 (7th Cir.1994) (a decision-making "body that has prejudged the outcome cannot render a decision that comports with due process."); *see also, In re Rosenkrantz,* 29 Cal.4th at 677, 128 Cal.Rptr.2d 104, 59 P.3d 174 (a parole decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary and capricious."). The California Supreme Court has explicitly stated that a blanket no-parole policy as to a certain category of prisoners is illegal. *See In re Minnis,* 7 Cal.3d 639, 102 Cal.Rptr. 749, 498 P.2d 997 (1972); *see also In re Morrall,* 102 Cal.App.4th 280, 125 Cal.Rptr.2d 391 (2003).

*II. Habeas Corpus*

[7] The court is required to analyze state habeas claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that an application for a writ of habeas corpus on behalf of a person in custody pursuant to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1344584 .                                                                                                     Page 6
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
(Cite as: 2006 WL 1344584 (N.D.Cal.))

the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in · a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). Although petitioner is "a person in custody pursuant to the judgment of a State court," it is unsettled in the Ninth Circuit whether the state courts' review of the Governor's parole decision is a "state court proceeding" as contemplated by AEDPA. See *McQuillion, 306 F.3d at 901*. Petitioner is not challenging the state trial court's handling of his trial. "Nonetheless, it is possible that, because his claim of a due process violation by the state parole authority was heard by state courts on collateral review, that claim has been 'adjudicated on the merits in [a] State court proceeding' within the meaning of AEDPA." *Id.* (alteration in original).

Accordingly, this court will review the last reasoned state court opinion under the standards outlined in AEDPA. See *Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)*. The Supreme Court has interpreted AEDPA to require a district court to uphold the state court's decision unless that decision was an "objectively unreasonable" application of a clearly established federal law. *Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)*. Here, the last reasoned state court opinion occurred in the Superior Court for the County of San Francisco. Thus, this court will apply the deferential AEDPA standard to the Superior Court proceeding to determine whether it was "objectively unreasonable" to find the denial of petitioner's parole to be supported

by some evidence.

*DISCUSSION*

*5 Petitioner argues that the state court erred in its analysis of the factors underlying the Governor's decision to reverse petitioner's parole grant, and that there was no evidence warranting the Governor's reversal. Petitioner also notes that another district court has granted relief based on the finding that the Governor operated under a blanket no-parole policy for prisoners convicted of murder, and that this may provide an explanation for the Governor's reversal here.

Respondent argues that this court must uphold the Superior Court's decision because that court did not err in finding that there was some evidence to support the Governor's decision to reverse the grant of parole.

*I. Due Process Violation*

*A. Liberty Interest in Parole*

Respondent asserts that a recent California Supreme Court decision, *In re Dannenberg, 34 Cal.4th 1061, 23 Cal.Rptr.3d 417, 104 P.3d 783 (2005)*, abrogated California's state-created liberty interest in parole. Respondent's argument depends on a single decision from the Eastern District of California, *Sass v. Board of Prison Terms, 376 F.Supp.2d 975 (E.D.Cal.2005)*. The Northern District has expressly declined to follow Sass, reaffirming that California law recognizes a liberty interest in parole. *Lewis v. Solis*, No. 04-2152 JF, 2005 WL 3454137, at *3-*4 (N.D.Cal. Dec.14, 2005) (Fogel, J.).

Indeed, all subsequent decisions have rejected Sass. *See, e.g., Coleman*, No. 96-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

0783 LKK PAN (finding that there is a liberty interest under California's parole scheme (citing *McQuillion, 306 F.3d 895, Greenholtz, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668, Biggs, 334 F.3d 910,* and *In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174*)); *Saif'ullah v. Carey,* No. C 02-2664 MCE, *2005 WL 1555389 \*9 (E.D.Cal. June 28, 2005)* (citing *Biggs* for the proposition that there is a liberty interest in parole); *Devries v. Schwarzenegger,* No. C 05-0235, *2005 WL 2175875 (E.D.Cal. Sept.8, 2005),* as amended, *2005 WL 2604203, \*3-\*4 (E.D.Cal. Oct.13, 2005)* (concluding that *Dannenberg* found there was no liberty interest in a uniform parole date, which is different from holding that the parole scheme as a whole does not create a conditional liberty interest); *Clay v. Kane,* No. 04-8663, slip op. at 18 (C.D.Cal. Dec. 21, 2005) ("The *[Dannenberg]* court did not hold that there is no protected liberty interest in parole whatsoever. It simply held that the BPT was not required to compare one inmate's parole suitability with the parole suitability determinations given to other inmates who had been convicted of similar crimes.... California courts continue to analyze claims regarding denial of parole under the Due Process Clause, even after *Dannenberg.*"). The court therefore finds that *California Penal Code section 3041* continues to establish a liberty interest in parole.

B. *Compliance with the "Some Evidence" Standard*

Petitioner contends that there was no evidentiary basis for the Governor's reversal of the parole grant. Respondent argues that the Governor identified specific evidence in support of several parole suitability factors, which satisfies the "some evidence"

standard. Respondent stresses that the Governor may independently review the evidence that was before the Board, and has wide discretion to come to a different conclusion on parole suitability based on that evidence.

*6 *Section 2402 of Title 15 of the California Code of Regulations* ("section 2402") sets forth a non-exhaustive list of factors to consider when determining an inmate's suitability or unsuitability for parole.

Subsection (c) of *section 2402* enumerates six factors that tend to show unsuitability for parole. The Governor found that the Board placed insufficient weight on three of the six factors: (1) the seriousness of the crime; (2) the extent to which the nature of the crime showed a callous disregard for human life; and (3) the disciplinary violations during the period prior to 1995, eight years before the parole hearing. *See § 2402(c)(1)(A), (c)(1)(D) and (c)(6).*

Subsection (d) of *section 2402* sets forth nine factors tending to demonstrate a prisoner's suitability for parole. The Governor made three findings under subsection (d): (1) the commission of the crime showed a lack of remorse because petitioner fled the scene without securing medical help; (2) life stress should not be considered because any stress petitioner experienced was due to his own fault; and (3) petitioner lacks viable parole plans. *See § 2402(d)(3), (d)(4), and (d)(8).*

The Superior Court found no evidence to support the Governor's conclusions with respect to the unsuitability factors, a conclusion which this court finds to be reasonable. The record indicates that petitioner committed the crime, at least in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

part, out of an immediate fear for his life and that he had no prior violent offenses. These two facts temper the view that petitioner displayed a "callous disregard for human life" and contextualize the serious nature of the crime. With respect to petitioner's disciplinary violations, there is significant evidence in the record of petitioner's positive institutional behavior, which reasonably mitigates the effect that petitioner's past violations have on his suitability for parole. Under the deferential AEDPA standard, the Superior Court's findings with respect to the unsuitability factors were therefore not objectively unreasonable, and this court will not disturb that court's conclusions.

The Superior Court concluded that some evidence supported the Governor's findings relating to the suitability factors, but did not specify the evidence it relied upon in reaching that conclusion. This court will therefore independently review the factual record in order to determine whether the Superior Court's findings were objectively unreasonable. *See Greene v. Lambert,* 288 F.3d 1081, 1088-89 (9th Cir.2002).

[8] As a threshold matter, petitioner argues that the state court's ruling was in error because all the Governor's findings with respect to unsuitability factors were rejected. According to petitioner, evidence that a particular *suitability* factor does not apply cannot constitute evidence that petitioner is *unsuitable* for parole. In other words, petitioner argues that the absence of a factor indicating suitability does not constitute some evidence of unsuitability for parole.

*7 Petitioner reads the governing regulation too narrowly. As the Superior Court noted, subsection (b) of 2402 provides that "[a]ll relevant, reliable information available to

the panel shall be considered in determining suitability for parole." The subsection further provides that the panel may consider "any other information which bears on the prisoner's suitability for release." Thus, the Governor's findings under the suitability factors may properly be considered in denying parole under the broad scope of subsection (b). The court will now review the evidence supporting those factors.

The Governor relied on only three facts in finding that petitioner did not meet the suitability criteria for parole. First, the Governor noted that petitioner fled the scene of the crime rather than seeking medical assistance for the victims, demonstrating a lack of remorse. Indeterminate Sentence Parole Release Review, Pet.'s Exh. D at 2 ("After he was done shooting, rather than call for help for those that he injured, he ran out of the restaurant...."). Second, the Governor disapproved of the Board's finding that petitioner committed the crime as a result of stress in his life. *Id.* ("The stress that [petitioner] faced was ... of his own making by continuing to deal drugs."). Finally, the Governor determined that petitioner's parole plans in Mexico, despite petitioner's INS hold, were unrealistic. *Id.* at 2-3 ("[A]lthough [petitioner] had previously been deported, he came back to the United States illegally. While he may have employment, family and residency in Mexico, he also has two grown children here.... If he is not deported, there is nothing in this record to indicate that [petitioner] has viable parole plans here in the United States.").

[9] With respect to the third of these findings, the court finds that the Governor's reasoning is contrary to the regulation and to common sense. Section 2402(d)(8) provides that a prisoner may be suitable for release if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release." The subsection does not require that a prisoner have viable parole plans *in the United States.* Petitioner, as the Governor acknowledges, has realistic parole plans in Mexico. He has at least two job offers and a place to live. When Governor Davis reversed petitioner's grant of parole in 2003, petitioner had an INS hold and was certain to be deported to Mexico upon release. Respondent does not contend that petitioner's immigration status has changed in any way. The Governor's reasoning would require petitioner to make plans to enter the United States illegally, and then communicate those illegal plans to the Board in order to be granted a release date. This argument is untenable, and the court therefore finds the Superior Court's determination of this issue objectively unreasonable.

[10] The Governor's reliance on the first two facts--petitioner's flight from the scene of the crime without securing medical help and petitioner's involvement with drugs at the time he committed the crime--presents a different problem. Both of these facts date from at or before the time of the crime. Because petitioner cannot change the past, denying petitioner parole based only on the facts surrounding the crime itself effectively changes his sentence from twenty years-to-life into life imprisonment without the possibility of parole.

*8 The Supreme Court has recognized that [t]he requirements of due process vary with the private and governmental interests at stake and the circumstances of the alleged deprivation.... To insure that a state-created parole scheme serves the public interest purposes of rehabilitation

and deterrence, the Parole Board must be cognizant not only of the factors required by state statute to be considered, but also the concepts embodied in the Constitution requiring due process of law.

*Biggs,* 334 F.3d at 916 (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Greenholtz,* 442 U.S. at 7-8). In *Biggs,* the Ninth Circuit applied the Supreme Court's language in *Morrissey* and *Greenholtz* when analyzing whether the denial of an inmate's parole violated his constitutional due process rights. The court recognized that in the context of denying an inmate parole, reliance "on an unchanging factor, [such as] the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* at 917. The petitioner in *Biggs* had been convicted of first-degree murder. *Id.* at 912. Although he had been a model inmate throughout his incarceration, a parole panel found him unsuitable for parole after he had served fourteen years of a twenty-five years-to-life sentence. *Id.* at 913. The panel based its decision in part on the gravity of the offense. The appellate court found that there was evidence to support this finding, but cautioned that over time, "should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." *Id.* at 916.

This case presents a stronger case for release than *Biggs* for several reasons. First, petitioner's commitment offense was less serious than the petitioner's in *Biggs.* The *Biggs* petitioner was involved in a violent, manipulative, and premeditated murder,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1344584
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
(Cite as: 2006 WL 1344584 (N.D.Cal.))

while petitioner here acted impulsively and, at least in part, in response to the circumstances. *See id.* at 912. Second, the *Biggs* petitioner had not yet served the full terms of his sentence, while petitioner here has exceeded his sentence by approximately six years. Finally, unlike petitioner here, the petitioner in *Biggs* had not been granted parole by the original panel hearing his case. Petitioner here has "demonstrate[d] exemplary behavior and evidence of rehabilitation," as required by the *Biggs* court, for a significant period of time. Therefore, the sole reliance on petitioner's commitment offense in denying him parole impinges on petitioner's constitutional liberty interest in parole.

The Eastern District of California has also considered the problem of continuing to rely on an unchanging factor in denying an inmate a parole release date. *See Irons v. Warden of California State Prison-Solano, 358 F.Supp.2d 936, 947 (E.D.Cal.2005).* The court in *Irons* noted that if reliance on an unchanging factor were enough to constitute a valid denial of parole, petitioner would have "no hope for ever obtaining parole except perhaps that a panel in the future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial." *Id.* The petitioner in *Irons* had been denied parole at his fifth parole hearing. *Id.* at 939. The petitioner had been convicted of second-degree murder, and his fifth parole hearing occurred after he had served sixteen years of a seventeen years-to-life sentence. The court reversed the denial of parole, finding that the Board had impermissibly relied on the commitment offense and petitioner's drug use at the time of the offense, when petitioner had "continue[d] to demonstrate exemplary behavior and evidence of rehabilitation." *Id.* at 947 (citing *Biggs* ).

Petitioner here presents facts more favorable to a finding of suitability for parole than the petitioner in *Irons*. He has surpassed his minimum sentence, and has already been found suitable for parole by two decision-making bodies.

*9 Applying the principles espoused in *Irons* and *Biggs* to this case, the court finds that there was no evidence to support the Governor's reversal of petitioner's parole grant. As the granting Board found, petitioner has not had a significant disciplinary violation since 1995. He has been in prison for approximately twenty-six years and has taken advantage of numerous rehabilitation and enrichment programs. He has exceeded his minimum sentence by approximately six years. Petitioner's supervisor at the Prison Industry Authority shoe factory documented that petitioner demonstrates "exceptional teamwork, attitude, and cooperation with staff and co-workers," and that petitioner is an "asset, not easily replaced on short notice, if not impossible." After four panels denied petitioner a release date, he was granted parole at his fifth hearing. The Governor's sole reliance on "the circumstance of the offense and conduct prior to the offense," *Biggs, 334 F.3d at 917,* constitutes a due process violation. The court finds no evidence to support any of the Governor's reasons for denying parole, and therefore finds that the Superior Court's denial of the petition for habeas corpus was objectively unreasonable.

II. *The No-Parole Policy*

[11] The flimsy nature of the evidence underlying the Governor's denial of parole and the facile, legally flawed argument with respect to petitioner's parole plans indicate another problem with the denial of parole in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this case. As petitioner notes, [FN4] a recent decision from the United States District Court for the Eastern District of California concluded that Governors Wilson and Davis operated under a blanket no-parole policy for inmates serving sentences for murder. Pet.'s Mem. Supp. Pet. Writ of Habeas Corpus at 25-28 (citing *Coleman,* No. 96-0783 LKK PAN, slip op. at 9). The *Coleman* court's factual findings are equally applicable to the instant petition and may provide an alternative reason behind Governor Davis's reversal of petitioner's parole grant.

Under Governors Wilson and Davis, the state "disregarded regulations ensuring fair suitability hearings and instead operated under a sub rosa policy that all murderers be found unsuitable for parole." *Coleman,* 96-0783 LKK PAN, slip op. at 3. Between 1992 and 1998, less than one percent of prisoners serving murder terms were released on parole, while about four percent had been released on parole during the previous period. *Id.* The petitioner in *Coleman* presented testimony from former BPT Commissioners that the no-parole policy was enforced by "(1) appointing Board members less likely to grant parole and more willing to disregard their statutory duty; (2) removing Board members more likely to grant parole; (3) reviewing decisions finding a prisoner suitable and setting a new hearing before a different panel; (4) scheduling rescission hearings for prisoners who had been granted a parole date; (5) re-hearing favorable rescission proceedings and hand-picking panels to ensure the desired outcome; (6) panel members agreeing upon an outcome in advance of the hearing; and (7) gubernatorial reversal of favorable parole decisions." *Id.*

*10 The no-parole policy for murderers was initiated by Governor Wilson and continued under Governor Davis. *Id.* at 4. Davis was governor of California from 1999 until 2003, the date of the petition in this case. The California Supreme Court in *In re Rosencrantz* found that "the Board held 4800 parole suitability hearings between January 1999 through April 2001, granting parole to 48 murderers." *Id.* (citing *In re Rosencrantz,* 29 Cal.4th at 685, 128 Cal.Rptr.2d 104, 59 P.3d 174). However, of the 48 prisoners granted parole, "the governor reversed 47 of the Board's decisions and only one murderer out of 4800 actually was released on parole." *Id.* The *Coleman* court noted evidence submitted by the petitioner in *In re Rosencrantz* of an interview with Governor Davis in the April 9, 1999 edition of the Los Angeles Times:

[T]he governor was adamant that he believes murderers--even those with second-degree convictions--should serve at least a life sentence in prison. Asked whether extenuating circumstances should be a factor in murder sentences, the governor was blunt: 'No. Zero.... They must not have been listening when I was campaigning .... If you take someone else's life, forget it. I just think people dismiss what I said in the campaign as either political hyperbole or something that I would back away from.... We are doing exactly what we said we were going to do.' *Id.* at 4-5 (internal quotation marks omitted) (citing *In re Rosencrantz,* 29 Cal.4th at 684, 128 Cal.Rptr.2d 104, 59 P.3d 174).

Based on the above facts, the *Coleman* court concluded that the denial of parole under the governors' no-parole policy for murderers is per se invalid, because the petitioner in that case was denied his constitutional right to be heard by an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1344584
Page 12
--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)
(Cite as: 2006 WL 1344584 (N.D.Cal.))

impartial decision-maker. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ("Not only is a biased decision-maker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.' " (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955))). The Ninth Circuit has held that a California inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice." *O'Bremski v. Maas,* 915 F.2d 418, 422 (9th Cir.1990). Inmates are entitled to the same constitutional safeguards when the Governor reviews parole decisions. *See In re Rosenkrantz,* 29 Cal.4th at 660, 128 Cal.Rptr.2d 104, 59 P.3d 174.

Here, Governor Davis's reasoning behind his reversal of petitioner's parole grant is thin to the point of being pretextual. At best, the Governor gave petitioner's post-conviction accomplishments cursory attention; the conclusion, however, appears to have been preordained. The Governor's review of petitioner's case therefore did not comport with petitioner's constitutional rights, and the court finds that the reasoning in *Coleman* further justifies a grant of relief in this case.

CONCLUSION

For the reasons set forth above, the petition for habeas corpus is GRANTED unless, within 60 days of this order, respondent provides a parole suitability hearing that comports with due process.

*11 IT IS SO ORDERED.

> FN1. All references in this section are to the Petition for Writ of Habeas Corpus unless otherwise noted.

> FN2. After another parole suitability hearing on June 23, 2004, a subsequent Board, independently from the Governor, found petitioner unsuitable for parole. Pet.'s Exh. M. The result of that hearing is not at issue here.

> FN3. The court has found nothing in the record to support this contention except for Governor Davis's reliance on this fact in his decision to reverse the grant of parole.

> FN4. As respondent emphasized at the April 10, 2006 hearing, petitioner expressly declined to assert the *Coleman* court's factual findings as an alternative basis for granting the habeas petition. The purpose of the court's discussion of *Coleman* here is to provide a possible explanation for the reasoning behind the Governor's decision to reverse the grant of parole.

--- F.Supp.2d ----, 2006 WL 1344584 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 3:05cv03486 (Docket) (Aug. 29, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H

# CALIFORNIA APPELLATE COURTS

## Case Information



## Court Case Search Results - Second Appellate District

Court data last updated: 11/04/2003 10:11 AM

### Matching Cases

Search·by Party

Last Name or Organization : Cortez

First Name : Javier
Middle Name :

1 - 6 of 6 Records Found.

Click on the Appellate case number to see more information about a case.



home

| Court of Appeal Case Number | Trial Court Case Number | Case Caption |
|---|---|---|
| B019152 | A702321 | Cortez v S.C.L.A. |
| B019807 | A702321 | Cortez v S.C.L.A. |
| B025368 | A702321 | The People v Cortez |
| B053854 | C689641 | Cortez v Aguilar |
| B083738 | BA058812 | The People v Cortez |
| B116159 | A702321 | Cortez |

<< Back to Case Search screen

@ 2002 Judicial Council of California

0426

# SUPERIOR C____ CALIFORNIA COUNTY __ LOS ANG__

Date: August 5, 2003
Honorable: DAVID S. _____          Judge    GARMENTA          Dep__
NONE                                   Bailiff  NONE

(Parties and Counsel checked if present)

BH 00____
IN RE
JAVIER _____,                        Counsel for Petitioner: NONE
PETITIONER
ON HABEAS CORPUS                       Counsel for Respondent: NONE

Nature of Proceedings:    ORDER RE WRIT OF HABEAS CORPUS

The Court has read and considered all the pleadings and exhibits filed by petitioner in support of his petition for relief and all pleadings and exhibits filed by respondent in opposition thereto. The central issue i the propriety of a Counselor I, without any special training, filing a Life Prisoner's Evaluation Report, Initial Parole Consideration Hearing, assessing an inmate's risk of threat to the community if paroled. In the instan matter, the report was found defective by the Department of Corrections Inmate Appeals Branch and the institution was ordered to re-write the report. (Pet. Ex. 2.) However, it was referred to by the Board at the suitability hearing held on November 6, 2001 and apparently discounted as "a mistake". (Ex. I, p. 57, 58.) What effect it may have had on the final decision is hard to say.

Petitioner was making his initial parole consideration hearing when the LPER was considered. He ha been convicted of first degree murder on December 8, 1986 and sentenced to a term of 27 years to life with th possibility of parole. His EPRD (Early Possible Release Date) was set at June 17, 2002.

The authority for the preparation of an LPER is DOM (Department Operations Manual) section 62090( The contents of the LPER is covered by DOM 62090.11 through 62090.11.2.1.2. Nowhere in these sections, elsewhere in the DOM, is there authority or an instruction that an "assessment of threat" be opined. The fact, it be a fact, that the format of the LEPR has a place for an expression of that kind of an opinion does not mak valid. The LEPR should contain only what the DOM authorizes, nothing more, nothing less. If that kind of a opinion was required for a correctional counselor without any specialized training, the DOM could very easily have spelled it out.

Respondent's references to DOM sections other than those between 62090.11 and 61090.11.2.1.2 as supporting an LPER containing an "assessment of threat" prepared by a CCI, is not supported by the manual. The section following 62090.11.2.1.2 is 620909.11.3 and is entitled "Non-Life Prisoner Evaluation Format" a has nothing to do with Life Prisoners. (Resp. Ex. E.) That section is followed by 62090.12 which refers to ISI Prisoner Progress Hearing. Next are sections 62090.13, 62090.13.1, and 62090.13.2 which deal with psychiatric reports, again having nothing to do with a correctional counselor's function vis a vis LPER.

The petition for habeas corpus relief is granted as far as to order the DOC to remove the LPER prepare by Correctional Counselor Mitchell from petitioner's "C" file and substitute the re-written report prepared as ordered by the Inmate Appeals Branch on October 15, 200_. The re-written report is not to have any "assessment of risk" evaluation unless prepared by either a psychologists or psychiatrist.

Further, the Board is not to require an LPER to have in it anything not specifically called for by the DOM and to refrain from asking for an opinion on an inmate's "risk of threat" in the preparation of that report.

1

Minutes Entere
8/5/03
County Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | | |
|---|---|---|
| Date: August 5, 2003 | | Dept |
| Honorable: DAVID S. WESLEY | Judge: J. ARGENTA | |
| NONE | Bailiff: | |

(Parties and Counsel checked if present)

| | |
|---|---|
| BH 001955 | |
| IN RE, | |
| JAVIER CORTEZ, | Counsel for Petitioner: NONE |
| PETITIONER, | |
| ON HABEAS CORPUS | Counsel for Respondent: NONE |

The request for a new Initial Parole Consideration Hearing is denied. This Court can not say the Bo abused its discretion by failing to set a parole date at the November 6, 2001 hearing.

Order re Writ of Habeas Corpus is signed and filed.

A copy of this minute order is mailed via United States Mail addressed as follows:

State of California
Department of Justice
Office of the Attorney General
Heather Bushman, DAG
110 West A Street, Ste. 1100
San Diego, CA 92101

California Department of Corrections
Inmate Appeals Branch
P.O. Box 942883
Sacramento, CA 94283-0001

THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE, AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

AUG 0 5 2003

ATTEST

JOHN A. CLARKE,
Ch. JExecutive Officer of the Superior
Court of California, County of Los Angeles.

BY _____

Nancy L. Tetreault
Attorney at Law
346 No. Larchmont Blvd.
Los Angeles, CA 90004

Javier Cortez, D-44595
P.O. Box 689
GW No. 246L
Soledad, CA 93960-0689

2

| | |
|---|---|
| | Minute Ente |
| | 8/5/03 |
| | County Cle |

FILED

JUL 2 4 2002

LOS ANGELES
SUPERIOR COURT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re,                          )
                                )   CASE NO. BH 001953
JAVIER CORTEZ,                  )
                                )   ORDER TO SHOW CAUSE
        Petitioner,             )
                                )
                                )
    On Habeas Corpus            )
                                )
                                )
                                )

The Warden is ordered to show cause why the petition should not be granted and sha

return within 30 days of service of this order. Petitioner may file a denial within 30 days after fil

service of the return. Unless further hearing is ordered. the matter will be deemed submitte

receipt of petitioner's denial or after the expiration of the time for filing the denial.

The affidavit shows a copy of the petition was served on the Attorney General's Los A

Office.

The question the court has is why shouldn't the report of the Counselor I be removed fr

inmate's central file?

July 24, 2002

                                    DAVID S. WESLEY
Clerk to give notice.               Judge of the Superior Court

State of California                                                                          Department of Corrections

# Memorandum

                                                                                                    cc:   CDW'S
                October 23, 1997                                                                          AW'S
                                                                                                          C&PR CCRM
                                                                                                          HCM
To:        Wardens                                                                                        LIT COOR
           Classification and Parole Representatives
           Classification Staff Representatives
           Correctional Counselor IIIs


Subject:   CLARIFICATION OF CALIFORNIA CODE OF REGULATIONS SECTION 3375.2
           HOUSING FOR LEVEL I AND LEVEL II LIFE-TERM INMATES


           This memorandum clarifies questions regarding the California Department of
           Corrections' policy for housing life-term inmates. The California Code of Regulations
           Section 3375.2 (a)(7)(A) explains an inmate serving any life term shall not be housed in
           a Level I or II facility if "...the commitment offense involved multiple murders, unusual
           violence, execution-type murders or received high notoriety."

           Staff repeatedly question the meaning and intent of these exclusionary factors. Staff
           shall use the following definitions in applying this policy:

           •   "Multiple murders" means the inmate killed more than one victim during the
               commission of the crime for which the inmate is currently serving the life term. This
               does not include inmates who have killed more than one person during their criminal
               career. Serial killers shall be excluded from Level I or II placement even if the
               murders were prosecuted separately.

           •   "Unusual violence" means offenses wherein the inmate tortured the victim over a
               period of time or intentionally made the victim endure great pain and suffering.
               While stabbing, shooting, or beating the victim may be very violent, it is not
               necessarily "unusual violence."

           •   "Execution-type murders" include those crimes wherein the victim was shot in the
               head after being bound or cuffed, made to kneel, made to lie down, or made to face
               a wall. This does not include all crimes wherein the victim was killed to prevent
               testimony, killed in a "drive-by" shooting, or killed as an informant by orders of prison
               or street-gang leadership.

           •   "High notoriety" is meant to describe those cases that received, at least, statewide
               media coverage. Extensive coverage by local newspapers or television stations is
               not sufficient for exclusion.

I



# Judges should follow law, not politics of Gov. Davis

California Gov. Gray Davis' recent comments that his judicial appointees should remember who appointed them caused a sensation in legal circles, both in California and around the country.

All Californians, not just lawyers, should be concerned. The governor's views are contrary to what every California schoolchild learns about how our country works.

At a recent Washington, D.C., breakfast with California reporters, Davis said judges' decisions should reflect his policies. And if that weren't enough, he said those who cannot do that should resign.

"They are not there to be independent agents," he told reporters. "They're there to reflect the sentiments that I expressed in the campaign."

Gov. Davis: This is exactly how a democracy does not operate.

At the heart of our democratic system of government is the concept of three branches of government, each separate but equal.

The separation of powers, as every schoolchild knows, ensures that one branch of government will not hold sway over another. This very basic American concept, an essential tenet of our Constitution and our governmental system, should be cherished and guarded fearlessly from all who would erode it.

When our country's founders invented the three branches of government, they realized that the judicial branch was the weakest because it had neither the power of the purse nor the power of the military. The founders knew that the power of the judicial branch lies in the trust and faith of the citizenry.

Judges hear millions of cases every year, impartially guided by the rule of law. Countless citizens depend on this impartiality to resolve their disputes in the courtroom.

For a democracy to work, judges must be independent from any other branch of government. Those appearing before a judge in California, or anywhere else in our country, should have the confidence that the court will make fair and impartial decisions based on the law and the merits of the individual case — not based on the political views of a politician.

Gov. Davis needs to remember how American democracy works. California's judges are neither his puppets nor his pawns. California judges should not be taking into consideration the whims of the day or looking over their shoulder, fearful that a decision might lose them their job.

Without an independent judiciary, our nation, and California, will be less than its constitutional promise and far less than our citizens deserve.

**William G. Paul,** president American Bar Association

J

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

| NAME | CDC NUMBER |
|------|------------|
|      |            |

*The panel reviewed all information received from the public and relied on the
following circumstances in concluding that the prisoner is not suitable for parole
and would pose an unreasonable risk of danger to society and a threat to public
safety if released from prison:*

### 1.  COMMITMENT OFFENSE(S)

☐   The offense was carried out in an especially heinous, atrocious, cruel, and/or
callous manner.

☐   The offense was carried out in a manner which exhibits a callous disregard for
the life and/or suffering of another.

☐   The offense was carried out in a dispassionate and/or calculated manner.

☐   Multiple victims were attacked, injured, and/or killed in the same or separate
incidents.

☐   The victim was abused, defiled, and/or mutilated during or after the offense.

☐   The murder of the victim did not deter the prisoner from

    ☐   later committing other criminal offenses

    ☐   (specify) _____

    _____

☐   These conclusions are drawn from the Statement of Facts wherein the prisoner
(describe specific behavior):

_____

_____

_____

_____

_____

0432

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### 2. PREVIOUS RECORD

*The prisoner has*

☐    a record of violence or assaultive behavior.

☐    an escalating pattern of criminal conduct and/or violence.

☐    previously sexually assaulted another person.

☐    a persistent pattern of tumultuous relationships and criminal behavior which commenced at an early age.

☐    an unstable social history.

☐    failed previous grants of   ☐ probation    ☐ parole and cannot be counted upon to avoid criminality.

☐    failed to profit from society's previous attempts to correct his/her criminality. Such attempts include:

     ☐    Juvenile probation     ☐   CYA commitment     ☐   a prior prison term

     ☐    Juvenile camp     ☐   County jail     ☐   Parole

☐    An unstable social history and prior criminality which includes

_____

_____

_____

_____

_____

☐    (Other, specify) _____

_____

_____

BPT 1000(a) (Rev. 8/90)                         Page 2 of 9

0433

BOARD OF PRISON TERMS                                                STATE OF CALIFORNI.

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### 3.    INSTITUTIONAL BEHAVIOR

*The prisoner has*

☐    programmed in a limited manner while incarcerated.

☐    failed to develop a marketable skill that can be put to use upon release.

☐    failed to upgrade   ☐ educationally   ☐ vocationally as previously recommended by the Board.

☐    not participated in beneficial self-help and/or therapy programs.

☐    failed to demonstrate evidence of positive change.  Misconduct while incarcerated includes:

_____

_____

_____

_____

_____

_____

_____

☐    continued to misbehave while incarcerated. 'As a result he has been placed in special housing where program participation is limited and the ability to demonstrate parole readiness is hampered.

☐    Other   (specify)   _____

_____

_____

_____

_____

_____

0434

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### 4.  PSYCHIATRIC FACTORS

The psychological/psychiatric report dated _____, authored by

_____, is  ☐ unfavorable;  ☐ not totally supportive of release;

☐ contradictory;  ☐ inconclusive;  ☐ (other conclusions, specify) _____ ir

that _____

_____

_____

_____

_____

_____

_____

_____

The psychological/psychiatric report dated _____, authored by

_____, is  ☐ unfavorable;  ☐ not totally supportive of release;

☐ contradictory;  ☐ inconclusive;  ☐ (other conclusions, specify) _____ ir

that _____

_____

_____

_____

_____

_____

_____

_____

BPT 1000(a)  (Rev. 8/90)                    Page 4 of 9

0435

BOARD OF PRISON TERMS

STATE OF CALIFORNI

SETTING A LIFE PRISONER TERM - PAROLE DENIED

## 5. OTHER INFORMATION BEARING UPON UNSUITABILITY

(Other factors include past mental state; past or present attitude toward the crime; and any other relevant, reliable information or circumstances which taken alone may not firmly establish unsuitability but which, when taken together, contribute to a pattern which results in unsuitability.)

_____

_____

_____

_____

## 6. REMARKS

*The panel makes the following findings:*

☐ The prisoner needs therapy in order to face, discuss, understand, and cope with stress in a non-destructive manner. Until progress is made, the prisoner continues to be unpredictable and a threat to others.

☐ Therapy in a controlled setting is needed but motivation and amenability are questionable.

☐ The prisoner's gains are recent and he/she must demonstrate an ability to maintain gains over an extended period of time.

☐ In view of the prisoner's assaultive history, continued negative behavior and/o lack of program participation, there is no indication that the prisoner would behave differently if paroled.

☐ Nevertheless, the prisoner should be commended for _____

_____

_____

However, this/these positive aspects of his/her behavior does/do not outweig the factors of unsuitability.

☐ (Other, specify) _____

_____

_____

0436

BOARD OF PRISON TERMS                                                      STATE OF CALIFORNI.

## SETTING A LIFE PRISONER TERM · PAROLE DENIED

### 7.  MULTIPLE YEAR DENIALS

THE PRISONER IS DENIED PAROLE FOR:        1        2        3        Years.

CAUTION:  *Specific reasons must be given in each decision.  These reasons must*
*be different whenever possible from the reasons used in the category*
*of suitability  (In re Jackson)   Use no less than two reasons.*

*Reasons for a two/three-year denial may include but are not limited*
*to the samples given below in Section C.  Provide the panel's*
*individual reasoning.*

A.  ☐  **Two-Year Denial:**

"THE HEARING PANEL FINDS THAT IT IS NOT REASONABLE TO EXPECT THAT
PAROLE WOULD BE GRANTED AT A HEARING DURING THE FOLLOWING TWO YEAR
THE SPECIFIC REASONS FOR THIS FINDING ARE AS FOLLOWS:"

*(Go to Section C below)*

B.  ☐  **Three-Year Denial:**

"THE HEARING PANEL FINDS THAT THE PRISONER HAS BEEN CONVICTED OF MORI
THAN ONE OFFENSE WHICH INVOLVES THE TAKING OF A LIFE, TO WIT,

_____

THE PANEL FURTHER FINDS THAT IT IS NOT REASONABLE TO EXPECT THAT
PAROLE WOULD BE GRANTED AT A HEARING DURING THE NEXT THREE YEARS.
THE SPECIFIC REASONS FOR THIS FINDING ARE AS FOLLOWS:"

*(Go to Section C below)*

C.  (List at least two reasons.)

☐    1.  The prisoner committed the offense in an especially heinous, atrocious,

and/or cruel manner.  Specifically, he/she _____

_____

_____

As a result, a longer period of observation and/or evaluation is requir
before the Board should set a parole date.

0437

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNI,

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### 7.   MULTIPLE YEAR DENIALS (Continued)

☐   2.   The prisoner has a prior record of violent behavior in that the prisoner

_____

_____

_____

Therefore, he/she requires a longer period of observation and/or evaluation before the Board should set a parole date.

☐   3.   A longer period of time is required to evaluate his/her suitability in view of the prisoner's long history of criminality and misconduct, including

_____

_____

_____

☐   4.   The prisoner recently committed a serious disciplinary violation by

_____

_____

_____

Therefore, he/she requires a longer period of observation and/or evaluation before the Board should set a parole date.

☐   5.   A recent psychological/psychiatric report dated _____
authored by _____, indicates a need for a longer period of observation and evaluation or treatment.

☐   6.   The prisoner has not completed necessary programming which is essential to his/her adjustment and needs additional time to gain such programming. He/she has failed to ☐ participate in ☐ complete

_____

_____

(e.g., prisoner failed to participate in/complete vocational auto body/ Alcoholics Anonymous/counseling/psychiatric stress control, etc.).

BPT 1000(a) (Rev. 8/90)                    Page 7 of 9

0438

Case 3:07-cv-03990-CRB    Document 3-8    Filed 08/02/2007    Page 45 of 53 STATE OF CALIFORNIA

## 7.  MULTIPLE YEAR DENIALS (Continued)

6.  (Continued)

This (class/course/counseling) is critical in that _____

_____

_____

(e. g., prisoner admits he/she is unable to control anger, the prisoner has been unable to control his/her use of alcohol which is related to the life crime, etc.).

☐  7.  (Other,  specify)  _____

_____

_____

_____

_____

## 8.  RECOMMENDATIONS TO THE PRISONER

The panel recommends that the prisoner

☐  become  ☐  remain disciplinary free,

☐  work toward reducing his/her custody level so that program opportunities will become more available,

☐  upgrade  ☐  vocationally  ☐  educationally,

☐  participate in  ☐  self-help (and)  ☐  therapy  programming,

☐  cooperate with clinicians and staff and/or the psychiatric council in a Category "X" program,

☐  (Other,  specify)  _____

_____

_____

BOARD OF PRISON TERMS                                                    STATE OF CALIFORN

**SETTING A LIFE PRISONER TERM - PAROLE DENIED**

## 9. NOTE TO CDC STAFF: RECOMMENDATIONS AND REQUESTS

The panel requests that CDC

☐   Transfer the prisoner to _____ for purpose (

_____

_____

☐   Enter the prisoner in a Category "X" program at _____ to explore

   ☐   his/her violence potential in the free community;

   ☐   the significance of alcohol/drugs as it relates to the commitment offense
and an estimate of the prisoner's ability to refrain from use/abuse
of same when released;

   ☐   and evaluate the prisoner's psycho-sexual problems;

   ☐   the extent to which the prisoner has explored the commitment offense and
come to terms with the underlying causes;

   ☐   the need for further therapy programs while incarcerated.

☐   Obtain the following other Category "X" information: _____

_____

_____

☐   (Other requests to CDC staff:)

_____

_____

_____

_____

Please notify the Chief Deputy Commissioner if the Hearing Panel's recommendation
requests cannot be met (P.C. §5080).

BPT 1000(a) (Rev. 8/90)                    Page 9 of 9

0440

BOARD OF PRISON TERMS                                                           STATE OF CALIFORNIA

# SETTING A LIFE PRISONER TERM - PAROLE GRANTED

| NAME | CDC NUMBER |
|------|------------|

## CIRCUMSTANCES RELATING TO SUITABILITY

*The panel reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is suitable for parole and would not pose an unreasonable risk of danger to society or a threat to public safety if released from prison:*

The prisoner

☐   has no juvenile record of assaulting others.

☐   has a stable social history as exhibited by reasonably stable relationship(s) with others.

☐   while imprisoned enhanced his ability to function within the law upon release through participation in:

    ☐   educational programs      ☐   institutional job assignments

    ☐   self-help and/or therapy programs      ☐   (other, specify) _____

    ☐   vocational programs

    _____

☐   committed the crime as a result of significant stress in his/her life.

☐   lacks a significant criminal history of violent crime.

☐   because of maturation, growth, greater understanding, and/or advanced age has a reduced probability of recidivism.

☐   has realistic parole plans which include a job offer and/or family support.

☐   has maintained close family ties while imprisoned via letters and/or visits.

☐   has (recently) maintained positive institutional behavior which indicates significant improvement in self-control.

☐   shows signs of remorse.  He/she has indicated that he/she understands the nature and magnitude of the offense and accepts responsibility for the criminal behavior and has a desire to change toward good citizenship.

0441

BOARD OF PRISON TERMS                                    STATE OF CALIFORNIA

## SETTING A LIFE PRISONER TERM - PAROLE GRANTED
### CIRCUMSTANCES RELATING TO SUITABILITY (Continued)

☐   (Any other reason/information bearing upon suitability for release:)

_____

_____

_____

_____

_____

_____

_____

_____


☐   (Psychiatric factors:)

The psychological/psychiatric report dated _____, authored by

_____, ☐ is favorable;    ☐ appears to support

release;   ☐ (other conclusions, specify) _____ in that _____

_____


☐   (Psychiatric factors:)

The psychological/psychiatric report dated _____, authored by

_____, ☐ is favorable;    ☐ appears to support

release;   ☐ (other conclusions, specify) _____ in that _____

_____


BPT 1000(b) (Rev. 8/90)                  Page 2 of 7

0442

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
## SETTING A LIFE PRISONER TERM - PAROLE GRANTED
### WORKSHEET FOR MURDERS COMMITTED ON OR BEFORE NOVEMBER 7, 1978 AND OTHER LIFE AND NONLIFE CRIMES COMMITTED BEFORE JANUARY 1, 1979

## A.  BASE TERM OF CONFINEMENT

The base Life offense of which the prisoner has been convicted is

_____

P.C. § _____.  The offense occurred on (date) _____
The term is derived from the matrix at 15 CCR §    ☐ 2282(b);  ☐ 2282(c);

☐ 2403(b);  ☐ 2403(c);  ☐ (specify) _____.  The panel finds that

Category _____ is appropriate in that:  _____

_____

_____

_____

The panel assesses _____ months for the base offense and notes that
this is the/an/a   ☐ middle   ☐ aggravated   ☐ mitigated   term due to:
(Reasons for aggravation or mitigation; see 15 CCR §§2283-2284 or 2404-2405)

_____

_____

_____

_____

## B.  BEFORE JANUARY 1, 1979 ONLY

FIREARM ENHANCEMENT: _____ months.

ARMING ENHANCEMENT: _____ months.

(If the prisoner personally used a firearm, assess two (2) years or give a
reason below for not doing so.)

_____

_____

_____

BPT 1000(b) (Rev. 8/90)                    Page 3 of 7

0443

BOARD OF PRISON TERMS                                    STATE OF CALIFORNIA
**SETTING A LIFE PRISONER TERM - PAROLE GRANTED**
## WORKSHEET FOR CRIMES (Continued)
## ADDITIONAL TERMS FOR OTHER CRIMES

Other Life Offenses - 15 CCR §2286(b)(2):

| OFFENSE | CODE § | CASE # | CT. # | | TIME ASSESSED |
|---------|--------|--------|-------|------|---------------|
| _____ | _____ | _____ | _____ | +7 yrs. | _____ |
| _____ | _____ | _____ | _____ | +7 yrs. | _____ |

Reason for aggravation or mitigation:

_____

_____


Non-Life Commitments (1 year & 1 day cases);
   15 CCR §2271 and §2286(b)(3):

| OFFENSE | CODE § | CASE # | CT. # | | TIME ASSESSED |
|---------|--------|--------|-------|------|---------------|
| _____ | _____ | _____ | _____ | +6 mos. | _____ |
| _____ | _____ | _____ | _____ | +6 mos. | _____ |

Reason for aggravation or mitigation:

_____

_____


Non-Life Commitment - Principal Term (15 CCR §2286(b)(1)):

| OFFENSE | CODE § | CASE # | CT. # | | TIME ASSESSED |
|---------|--------|--------|-------|----------|---------------|
| _____ | _____ | _____ | _____ | Mid DSL | _____ |
| | | | | Agg. Term | _____ |
| | | | | Mit. Term | _____ |

Reason for Aggravation/Mitigation (15 CCR §§2287-2288):
(See California Rules of the Court, Rules 421, 423 and 425)

_____

_____

0444

BOARD OF PRISON TERMS                                           STATE OF CALIFORNIA
**SETTING A LIFE PRISONER TERM - PAROLE GRANTED**
## WORKSHEET FOR CRIMES (Continued)

|  |  |  | TIME ASSESSED |
|---|---|---|---|
| Possession of a Firearm (Vicarious) | [PC §12022(a)] | +1 | _____ |
| Personally Used Deadly Dangerous Weapon | [PC §12022(b)] | +1 | _____ |
| Personal Use of Firearm | [PC §12022.5] | +2 | _____ |
| Personally Intentionally Inflicted GBI | [PC §12022.7] | +3 | _____ |
| Great Loss - over $25,000 | [PC §12022.6(a)] | +1 | _____ |
| Great Loss - over $100,000 | [PC §12022.6(b)] | +2 | _____ |

**Non-Life Commitments; Subordinate Terms:**

| OFFENSE | CODE § | CASE # | CT. # |  | TIME ASSESSED |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ 1/3 of Mid DSL | | _____ |
| _____ | _____ | _____ | _____ 1/3 of Mid DSL | | _____ |
| _____ | _____ | _____ | _____ 1/3 of Mid DSL | | _____ |

**Prior Prison Terms [PC §667.5; 15 CCR §2286(c)(1)]:**

| OFFENSE | CODE § | PRISON RECEPTION DATE | PRISON RELEASE DATE |  | TIME ASSESSED |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | +3 | _____ |
|  |  | (AND/OR) |  |  |  |
| _____ | _____ | _____ | _____ | +1 | _____ |

[The hearing panel may add three (3) years if:

    a.  The prior prison term was for a violent felony;  <u>AND</u>

    b.  The prisoner served one year in prison; <u>AND</u>

    c.  <u>Ten felony-free years have not expired</u> from the date of release from

        prison to the date of the new crime.]

0445

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
**SETTING A LIFE PRISONER TERM - PAROLE GRANTED**
**WORKSHEET FOR CRIMES (Continued)**

[The panel may add one (1) year if:

    a.   The prior prison term was for a non-violent felony;  AND

    b.   The prisoner served one year in prison;  AND

    c.   Five felony-free years have not expired from the date of release from prison to the date of the new crime.]

**Prior Felony Convictions with Probation [15 CCR §2286(c)(2)]:**

| DATE | OFFENSE | CODE § | COUNTY OR STATE OF CONVICTION | TIME ASSESSED |
|------|---------|--------|-------------------------------|---------------|
| ____ | ____ | ____ | ____ +6 mos. | ____ |
| ____ | ____ | ____ | ____ +6 mos. | ____ |
| ____ | ____ | ____ | ____ +6 mos. | ____ |

**Additional Terms for Serious Disciplinary Offenses [15 CCR §2286(d)]:**

| DATE | OFFENSE | DATE FOUND GUILTY BY CDC | TIME ASSESSED |
|------|---------|--------------------------|---------------|
| ____ | ____ | ____ | ____ |
| ____ | ____ | ____ | ____ |

**Total Term:**                                                          TIME ASSESSED

Base Offense, Firearm Enhancement and other crimes              ____

**Post-Conviction Credit [15 CCR §2290]:**                        TIME GRANTED

Post-Conviction Credit from (Date life term starts) _____        ____
to _____ (See attached BPT Form 1004)

**TOTAL PERIOD OF CONFINEMENT**                                    ____

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
**SETTING A LIFE PRISONER TERM - PAROLE GRANTED**
**WORKSHEET FOR CRIMES (Continued)**

### Special Conditions:

The following Special Condition(s) of parole is/are imposed:

☐ Do not use alcoholic beverages

☐ Submit to periodic anti-narcotic testing

☐ Attend the Parole Outpatient Clinic (POC)

☐ Other (specify) _____

_____

The reason(s) for the imposition of the Special Condition(s) is/are as follows:

_____

_____

_____

Note: If the Life crime occurred prior to July 1, 1977, have CDC contact the BPT
Scheduling Unit regarding a PBR Hearing Date (AD 83-2A).