1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | SCOTT C. MATHER, State Bar No. 190912
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 | Telephone:  (415) 703-5709
Fax:  (415) 703-5843
8 | Email:  Scott.Mather@doj.ca.gov

9 | Attorneys for Respondent Ben Curry

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **ROBERT RUSH,**

16 | Petitioner,

17 | v.

18 | **BEN CURRY, Warden,**

19 | Respondent.

20

C07-03990 CRB

**ANSWER TO ORDER TO
SHOW CAUSE;
MEMORANDUM OF POINTS
AND AUTHORITIES**

Judge:     The Honorable
           Charles R. Breyer

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

                                                                    **Page**

INTRODUCTION                                                            1

ANSWER TO THE ORDER TO SHOW CAUSE                                       1

MEMORANDUM OF POINTS AND AUTHORITIES                                   10

    ARGUMENT                                       10

        THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIMS WAS
NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF
CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN
UNREASONABLE DETERMINATION OF THE FACTS.                               10

      A.  Petitioner Received All Process Due Under the Only United States
Supreme Court Law Addressing Due Process in the Parole Context.        11

      B.  The Ninth Circuit's Some-Evidence Test Is Not Clearly Established
Supreme Court Law, and thus Is Not Applicable to Petitioner's
Claims Under AEDPA.                                                    12

      C.  Even if the Some-Evidence Standard Was Clearly Established
Federal Law, the Standard Was Correctly Applied by the State
Court.                                                                 15

      D.  Petitioner Cannot Demonstrate that the State Court Unreasonably
Rejected His Remaining Claims.                                         17

          1.  Petitioner erroneously argues that he is entitled to parole based
on the language of California Penal Code section 3041(a).              17

          2.  Petitioner cannot show that the Board is required, before
denying parole based in part on the commitment offense, to
engage in a comparative review of similar offenses by other
inmates or to consider the proportionality of his sentence based
on the length of his incarceration.                                   18

          3.  The Board may rely on static factors to deny parole.             19

          4.  The Board's regulatory provision regarding consideration of
the commitment offense is not unconstitutionally vague given
that the challenged term has more specific and detailed
standards than similar terms used in death penalty statutes that
have been upheld as valid against vagueness challenges in the
United States Supreme Court.                                           21

CONCLUSION                                                             24

# TABLE OF AUTHORITIES

Page

**Cases**

*Arave v. Creech*
507 U.S. 463 (1993)                                                    21-23

*Benny v. U.S. Parole Comm'n*
295 F.3d 977 (9th Cir. 2002)                                            9

*Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003)                                      6, 20, 21

*Carey v. Musladin,* __ U.S. __
127 S. Ct. 649 (2006)                                         5, 12, 13, 15

*Crater v. Galaza*
491 F.3d 1119 (9th Cir. 2007)                                         13

*Foote v. Del Papa*
492 F.3d 1026 (9th Cir. 2007)                                         13

*Garner v. Jones*
529 U.S. 244 (2000)                                                   22

*Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*
442 U.S. 1 (1979)                                              5, *passim*

*Gurley v. Rhoden*
421 U.S. 200 (1975)                                                   19

*Gutierrez v. Griggs*
695 F.2d 1195 (9th Cir. 1983)                                     17, 18

*In re Dannenberg*
34 Cal. 4th 1061 (2005)                                       5, 16, 18-20

*In re Ramirez*
94 Cal. App. 4th 549 (2001)                                           19

*In re Rosenkrantz*
29 Cal.4th 616 (2002)                                          3, 6-9, 15

*Irons v. Carey*
__ F.3d __, 2007 WL 3256594 at *2-4 (9th Cir. Nov. 6, 2007)    13, 18, 21

*Jancsek v. Oregon Board of Parole*
833 F.2d 1289 (9th Cir. 1987)                                         12

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                         15

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Lockyer v. Andrade*
583 U.S. (2003)                                                                 10

*Maynard v. Cartwright*
586 U.S. 356 (1988)                                                          21-23

*Middleton v. Cupp*
768 F.2d 1083 (9th Cir. 1985)                                            17, 18

*Nelson v. City of Irvine*
143 F.3d 1196 (9th Cir. 1998)                                                19

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007)                                                 13

*Pedro v. Or. Parole Bd.*
825 F.2d 1396 (9th Cir. 1987)                                                11

*Pulley v. Harris*
465 U.S. 37 (1984)                                                          17, 18

*Rompilla v. Beard*
545 U.S. 374 (2005)                                                          13

*Rose v. Hodges*
423 U.S. 19 (1975)                                                          17, 18

*Sandin v. Conner*
515 U.S. 472 (1995)                                                           5

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123 (9th Cir. 2006)                                          5, 15, 20

*Schriro v. Landrigan*
___U.S.___, 127 S. Ct. 1933 (2007)                                       12, 13

*Superintendent v. Hill*
472 U.S. 445 (1985)                                                    6, 12, 15-17

*Wainwright v. Greenfield*
474 U.S. 284 (1986)                                                          13

*Wiggins v. Smith*
539 U.S. 510 (2003)                                                          13

*Wilkinson v. Austin*
545 U.S. 2384 (2005)                                                       11, 14

*Williams v. Taylor*
529 U.S. (2000)                                                              10

**TABLE OF AUTHORITIES  (continued)**

| | Page |
|---|---|
| *Wolff v. McDonnell*<br>418 U.S. 539 (1974) | 14 |
| *Ylst v. Nunnemaker*<br>501 U.S. 797 (1991) | 10 |

**Constitutional Provisions**

Sixth Amendment ....................................................... 13

**Statutes**

United State Code, Title 28
    § 2254(a) ........................................................ 5, 18
    § 2254(d) ........................................................ 9, 11, 14
    § 2254(d)(1)-(2) ............................................ 10, 13
    § 2254(e) ........................................................ 9
    § 2254(e)(1) .................................................... 15

California Code of Regulations, Title 15
    § 2281(b) ........................................................ 6
    § 2281(c) ........................................................ 6
    § 2281 (d) ....................................................... 6
    § 2402(a) ........................................................ 8, 19, 20
    § 2402(b) ........................................................ 17
    § 2402 (c) ....................................................... 8
    § 2402(c)(1)(A)-(E) ....................................... 7, 21, 23
    § 2402(d) ........................................................ 8
    § 2403(a) ........................................................ 19

Penal Code
    § 3041 ............................................................ 5, 6, 17-19
    § 3041(a) ........................................................ 17
    § 3041(b) ........................................................ 8, 19
    § 3042 ............................................................ 3, 16
    § 3043 ............................................................ 16

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5709
     Fax:  (415) 703-5843
8    Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry

11           IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

| | |
|---|---|
| **ROBERT RUSH,**<br><br>                                    Petitioner,<br><br>        **v.**<br><br>**BEN CURRY, Warden,**<br><br>                                    Respondent. | C07-03990 CRB<br><br>**ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    The Honorable<br>              Charles R. Breyer |

## INTRODUCTION

Petitioner Robert Rush is a California state inmate incarcerated at the Correctional Training Facility in Soledad, California, proceeding with counsel in this habeas corpus action.  Petitioner alleges that the Board of Parole Hearings unconstitutionally denied him parole at his October 2005 parole consideration hearing.  Respondent Warden Ben Curry answers as follows:

## ANSWER TO THE ORDER TO SHOW CAUSE

In response to the Petition for Writ of Habeas Corpus and this Court's September 19, 2007 Order to Show Cause, Respondent admits, denies, and alleges the following:

1    1.    Petitioner is lawfully within the custody of the California Department of Corrections

2  and Rehabilitation pursuant to a judgment of the San Bernardino County Superior Court

3  sentencing him to an indeterminate term of seventeen years to life following his conviction of

4  second-degree murder with use of a firearm. (Ex. 1, Judgment - Commitment, Abstract of

5  Judgment - Commitment; Ex. 2, Oct. 2005 Subsequent Parole Consideration Hearing Transcript,

6  at 1.) Petitioner does not challenge the validity of the conviction or sentence in his petition.

7  Rather, he alleges that the Board of Parole Hearings unlawfully denied him parole at his October

8  2005 parole consideration hearing. (*See generally* Pet.)

9    2.    Petitioner does not contest that he received notice of his 2005 parole hearing, appeared

10  at the hearing, and received a copy of the Board's decision finding him unsuitable for parole.

11  (*See generally* Pet.)

12    3.    The Board denied Petitioner parole finding that his release would pose an

13  "unreasonable risk of danger to society or threat to public safety" based on the gravity of his

14  commitment offense and the public opposition to parole by the prosecuting District Attorney and

15  the victim's family. As summarized by the Board, Petitioner's murder offense occurred some

16  time before July 1, 1986, when John Heinz (victim) and Petitioner, his roommate, had "an

17  argument and a physical altercation over household responsibilities" at their residence. This

18  dispute ended when Petitioner shot John "numerous times" with a .22 caliber rifle. After the

19  murder, Marcus Hoy, another roommate, arrived at the residence. Petitioner and Marcus

20  "cleaned the house of incriminating evidence and placed the victim's body in plastic bags and a

21  sleeping bag." Petitioner and Marcus then drove John's body to the Dover Canyon area in John's

22  truck, where they buried his body and wallet identification in separate locations. After leaving

23  John's truck in Riverside, Petitioner and Marcus used John's money to go drinking. (Ex. 2 at 16-

24  17, 85-86; Ex. 3, Probation Officer's Report, at 1-3; Ex. 4, Mar. 2005 Life Prisoner Evaluation

25  Report [Board Report], at 1; Ex. 5, July 2002 Board Report at 1.)

26    4.    In denying him parole, the Board found that Petitioner's murder offense was carried

27  out in a manner that was "particularly callous and cruel" because Petitioner had initiated the fatal

28  confrontation by arming himself with a loaded gun and shooting the victim nine times due to an

Answer to OSC; Mem. of P. & A.                                *Rush v. Curry*
C07-03990 CRB

1  argument. Similarly, the Board further found that this murder was "certainly dispassionate and

2  didn't have to happen" given that "people argue all the time[,] [b]ut it doesn't result in

3  homicide." Further, the Board determined that the murder was carried out in a "very

4  dispassionate" manner on the ground that Petitioner knew the victim had been killed but "left the

5  family to suffer for a month" while he "partied with the victim's money." Indeed, the Board

6  stated that had another person not "come forth" to resolve the victim's disappearance, "we don't

7  know what would have transpired in this[,] whether [the victim] would have ever been found or

8  whether there would have been a commitment offense." The Board also considered the motive

9  for murder, stating that an argument as a motive for murder "just doesn't cut it." Finally, the

10  Board found that the circumstances of the murder reflected a "callous disregard for human

11  suffering." (Ex. 2 at 85-86.)

12      The Board also reiterated at the conclusion of the hearing that Petitioner's offense was

13  "horrific" in that he shot the victim nine times "over an argument about dog food or domestic

14  problems that roommates have with each other." The Board particularly emphasized that

15  Petitioner had other "remedies" for this dispute other than "getting a loaded 22-caliber rifle and

16  shooting [the victim]." (Ex. 2 at 89.)

17      5.   In response to Penal Code section 3042 notices regarding Petitioner's parole hearing,

18  the Board also considered opposition to parole from the San Bernardino County District

19  Attorney's Office and the victim's family. (Ex. 2 at 57-64 [Deputy District Attorney's closing

20  statement], 32-35 [Board's discussion of letters in opposition to parole]; 80-94 [victim's next of

21  kin testimony at hearing].)

22      6.   Although it denied him parole, the Board panel commended Petitioner on his progress

23  in prison. (Ex. 2 at 86-89.)

24      7.   Before filing his federal petition, Petitioner sought relief in the state courts, generally

25  raising the same claims raised in his federal petition. The last reasoned decision was issued by

26  the San Bernardino County Superior Court in November 2006, which denied his petition and

27  chastised Petitioner's attorney for not applying the relevant law. The court stated that under *In re*

28  *Rosenkrantz*, 29 Cal.4th 616 (2002), the applicable standard was whether the Board's decision

Answer to OSC; Mem. of P. & A.                                                          *Rush v. Curry*
                                                                                       C07-03990 CRB

3

1  was supported by some evidence based on the factors specified by statute and regulation. The

2  court thus reasoned that "[i]t matters not whether this Court would grant parole to Petitioner,"

3  but rather found that the Court had authority only to remedy a due process violation. Moreover,

4  the court rejected Petitioner's argument that a preponderance-of-evidence standard should apply

5  as being unsupported by any authority.

6      After these preliminary considerations, the court found that the Board validly denied

7  Petitioner parole based solely on the evidence demonstrating the gravity of his murder offense.

8  Specifically, the court found that Petitioner's murder reflected "an extreme degree of

9  callousness." The court further found that Petitioner's depiction of the shooting as being the

10 result of a "flinch" showed a "lack of remorse" given that a flinch would not result in "numerous

11 shots." Additionally, the court stated that rather than "acting responsibly and without criminal

12 intent, the Petitioner devised and carried out a plan to hide evidence of the murder. . . . Then,

13 instead of confessing to the police, Petitioner and his friend proceed to 'party' with the victim's

14 money." The court determined that "[s]uch a lack of concern after such a heinous crime

15 manifests a callousness which is difficult to describe" and that "[o]bviously, the Board

16 recognized this when they found[:] the crime was 'callous and cruel'; the offense was carried out

17 in a 'dispassionate manner' with 'callous disregard for human suffering[,]' over a trivial matter."

18 As a result, the court found that "there was sufficient evidence presented at the hearing to justify

19 a finding of unsuitability" and also found that Petitioner's remaining contentions were "without

20 merit." (Ex. 6, Cal. Super. Ct. Pet.;[1/] Ex. 7, Cal. Super. Ct. Order.)

21     8.    Petitioner then filed a petition for habeas corpus in the California Court of Appeal,

22 which was summarily denied in February 2007. (Ex. 8, Cal. Ct. Appeal. Pet.; Ex. 9, Cal. Ct.

23 Appeal Order.) Petitioner then filed a petition for review in the California Supreme Court, which

24 was summarily denied in May 2007. (Ex. 10, Cal. Sup. Ct. Pet.; Ex. 11, Cal. Sup. Ct. Order.)

25

26

27     1. Because Petitioner's voluminous exhibits filed in support of his state court petitions have also been filed in support of his federal petition, Respondent omits them from state court petitions attached as exhibits to this filing. If the Court orders these documents to be submitted, however, Respondent will promptly provide them.

28

1    9.    Based on the orders issued in his state court proceedings, Petitioner appears to have

2  exhausted his cognizable claims in the instant petition.  Respondent does not admit Petitioner has

3  exhausted his claims to the extent they are more broadly interpreted to encompass any systematic

4  issues beyond this particular parole consideration hearing.

5    10.    Respondent denies that Petitioner has shown that the state court's denial of

6  habeas corpus was contrary to, or involved an unreasonable application of, clearly established

7  Supreme Court law, or that the denial was based on an unreasonable determination of facts in

8  light of the evidence presented.  Petitioner therefore fails to make a case for relief under the

9  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

10    11.    Respondent denies that Petitioner has a federally protected liberty interest in parole.

11  *Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*, 442 U.S. 1 (1979); *In re Dannenberg*, 34

12  Cal. 4th 1061, 1087-88 (2005) (clarifying that under California Penal Code section 3041, the

13  setting of a parole release date is neither mandatory nor presumed); *Sandin v. Conner*, 515 U.S.

14  472, 484 (1995); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).

15  Accordingly, because Petitioner is not in custody in violation of federal law, he has not alleged a

16  federal question and this Court does not have subject matter jurisdiction to decide his petition.

17  28 U.S.C. § 2254(a).

18    12.    Respondent affirmatively alleges that even if Petitioner has a federally protected liberty

19  interest in parole, Petitioner had an opportunity to present his case before the Board at his 2005

20  parole hearing, and that the Board provided him with a detailed explanation as to why he was

21  denied parole.  (Ex. 2.)  Hence, Petitioner received all the process due under *Greenholtz*, the only

22  clearly established Supreme Court law regarding the due process rights of inmates at parole

23  consideration hearings.

24    13.    Respondent affirmatively alleges that there is no United States Supreme Court decision

25  requiring a state parole decision to be supported by some evidence.  *See Carey v. Musladin*, __

26  U.S. __, 127 S. Ct. 649, 654  (2006) (holding that the absence of Supreme Court law on a

27  particular issue precludes habeas relief under AEDPA).  Thus, Petitioner has not shown that the

28  state court's denial of habeas corpus was contrary to, or involved an unreasonable application of,

Answer to OSC; Mem. of P. & A.                                                *Rush v. Curry*
                                                                          C07-03990 CRB

1 clearly established Supreme Court law, or that the denial was based on an unreasonable

2 determination of facts in light of the evidence presented. Hence, Petitioner fails to make a prima

3 facie case for relief under AEDPA.

4    14.   If an evidentiary standard of review applies, Respondent denies that the state court

5 unreasonably determined that it is the some-evidence standard. Respondent denies that the

6 preponderance-of-the-evidence standard, and not the some-evidence standard, is the appropriate

7 standard. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *Biggs v. Terhune*, 334 F.3d 910,

8 915 (9th Cir. 2003); *see Greenholtz*, 442 U.S. at 15 (finding that the executive decisionmaker

9 need not specify the evidence relied on when denying parole); *Rosenkrantz*, 29 Cal. 4th at 658,

10 665 (adopting the some-evidence test and distinguishing it from "considering whether substantial

11 evidence supports the findings underlying a gubernatorial decision").

12    15.   Respondent affirmatively alleges that the state court reasonably determined that the

13 Board's 2005 decision denying Petitioner parole was supported by some evidence regarding the

14 gravity of his offense and the Board's consideration of the opposition to parole.

15    16.   Respondent denies that state court unreasonably rejected Petitioner's claim that the

16 Board was required to parole Petitioner in 2005 based on the statutory language of Penal Code

17 section 3041, the Board's base term matrices, or based on Petitioner's age at the time of his

18 murder offense.

19    17.   Respondent denies that the state court unreasonably rejected Petitioner's claims that

20 the evidence in favor of parole, such as the extent to which Petitioner was under stress when he

21 committed the murder (Pet., Mem. of P.&A. at 44), mandated that the Board find Petitioner

22 suitable for parole.

23    18.   Respondent denies that the state court unreasonably rejected Petitioner's claims that

24 the Board was restricted to solely considering the illustrative parole criteria under California

25 Code of Regulations title 15, § 2281(c), (d), as opposed to subdivision (b) of this regulation

26 which requires that the parole authority consider "[a]ll relevant, reliable information," including

27 any information "which bears on the prisoner's suitability for release."

28    19.   Respondent denies that the state court unreasonably rejected Petitioner's claims that

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

6

1  the Board's decision was not supported by some evidence of his current dangerousness and that

2  the Board must establish a nexus between the unsuitability factors and his current dangerousness.

3  *See Rosenkrantz*, 29 Cal. 4th at 679 (finding that the prisoner's conduct during the weeks

4  following the crime, although remote in time from the Governor's assessment of the prisoner's

5  present suitability for parole, was not irrelevant to the Governor's decision whether the prisoner

6  now poses a risk of danger to society). Alternatively, Respondent denies that the state court

7  unreasonably rejected these claims because the Board's determination that Petitioner would

8  "pose an unreasonable risk of danger to society or threat to public safety if he was released from

9  prison" (Ex. 2 at 85) was supported by some evidence regarding the gravity of his murder offense

10  and the public opposition to parole.

11      20.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

12  Board's regulations regarding consideration of the commitment offense in parole consideration

13  hearings are unconstitutionally vague. Respondent affirmatively alleges that the phrase

14  "especially heinous, atrocious or cruel," as used in these illustrative regulatory provisions is

15  defined in the regulations as a crime for which one or more of the five stated sub-criteria apply,

16  and may not be properly defined or applied to the Board's parole consideration analysis outside

17  of this context. Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E). Respondent further affirmatively

18  alleges that the regulations do not require that a murder have been committed in an execution-

19  style manner before it may be deemed "dispassionate and calculated," but rather references

20  execution-style murders as one example of a dispassionate and calculated offense. *Id.* at §

21  2402(c)(1)(B) ["The offense was carried out in a dispassionate and calculated manner, such as an

22  execution-style murder"].)

23      21.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

24  manner in which the Board applied the allegedly vague parole regulations regarding the

25  commitment offense has resulted in a no-parole policy. *Rosenkrantz*, 29 Cal. 4th at 684-85

26  (rejecting no-parole policy claim despite evidence that Governor had allowed only two parole

27  decisions to stand on the ground that there was no evidence the parole denials were based on a

28  no-parole policy rather than an individualized consideration of each inmate's suitability for

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

7

1   parole).  Respondent further denies that the state court unreasonably rejected Petitioner's claim

2   that the Board denied him parole pursuant to a policy against paroling indeterminate term

3   prisoners.

4       22.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

5   Board has unlawfully continued to rely on the circumstances of Petitioner's murder offense to

6   deny him parole.

7       23.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

8   Board cannot find an inmate unsuitable for parole without first conducting a proportionality

9   review regarding the length of the inmate's incarceration and an inter-case comparative review

10  between the inmate's offense and similar offenses committed by other inmates.

11      24.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

12  Board's decision has altered petitioner's sentence to life without parole.

13      25.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

14  Board must inform him as to what conduct will make him suitable for parole.  Respondent

15  affirmatively alleges that regardless of any evidence or factors tending to support suitability for

16  parole, the Board must deny an inmate parole if, as in this case, it determines that "the gravity of

17  the current convicted offense or offenses, or the timing and gravity of current or past convicted

18  offense or offenses, is such that consideration of the public safety requires a more lengthy period

19  of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this

20  meeting."  *See* Cal. Penal Code § 3041(b); *see also* Cal. Code Regs. tit. 15, § 2402(a) (providing

21  that "[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and

22  denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of

23  danger to society if released from prison").  Respondent further affirmatively alleges that the

24  Board retains the discretion to decide what weight should be attributed to any factors, positive or

25  negative, regarding an inmate's suitability for parole.  *Id.* at § 2402 (c) & (d); *see also*

26  *Rosenkrantz*, 29 Cal.4th at 679.

27      26.  Respondent denies that the state court unreasonably rejected Petitioner's claim that the

28  proper evidentiary standard of judicial review is a preponderance of evidence.  Respondent

Answer to OSC; Mem. of P. & A.                                              *Rush v. Curry*
                                                                            C07-03990 CRB

8

1    affirmatively asserts that state court reasonably found that the California Supreme Court has

2    determined that some-evidence is the applicable standard.

3        27.   Respondent denies that the state court unreasonably rejected Petitioner's claim that the

4    Board is subject to the standards imposed on sentencing judges by the United States Supreme

5    Court.

6        28.   Respondent denies that the Board's decision denying parole violated Petitioner's

7    federal due process rights.

8        29.   Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

9    for federal habeas corpus relief.  28 U.S.C. § 2254(d).

10        30.   Respondent denies that Petitioner may rely on arguments submitted in prior federal

11    petitions as a basis for relief in this case.  (*See* Pet. at 4.)

12        31.   Respondent affirmatively alleges that if the Petition is granted, Petitioner's remedy is

13    limited to a new parole consideration hearing before the Board that comports with due process.

14    *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 984-85 (9th Cir. 2002) (finding that the Board must

15    exercise the discretion in determining whether or not an inmate is suitable for parole); *In re*

16    *Rosenkrantz,* 29 Cal. 4th 616, 658 (2002) (finding that the proper remedy if a Board decision

17    lacks some evidence is a new hearing that comports with due process).

18        32.   Respondent does not allege that there is any procedural bar to this action, including

19    statute of limitations or non-retroactivity.

20        33.   Respondent denies that an evidentiary hearing is necessary in this matter.  28 U.S.C. §

21    2254(e).

22        34.   Except as expressly admitted above, Respondent denies, generally and

23    specifically, each and every allegation of the Petition, and specifically denies that Petitioner's

24    administrative, statutory, or constitutional rights have been violated in any way.

25        For the reasons stated in this Answer and in the following Memorandum of Points and

26    Authorities, this Court should deny the Petition.

27    //

28    //

Answer to OSC; Mem. of P. & A.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**ARGUMENT**

3

**THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
CLAIMS WAS NOT CONTRARY TO OR AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
NOR BASED ON AN UNREASONABLE DETERMINATION
OF THE FACTS.**

4

5

6       Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state

7   court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's

8   adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly

9   established Federal law, as determined by the Supreme Court of the United States;" or (2) "based

10  on an unreasonable determination of the facts in light of the evidence presented at the State Court

11  proceeding." 28 U.S.C. § 2254(d)(1)-(2).

12      "Clearly established federal law, as determined by the Supreme Court of the United States,"

13  refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

14  of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court

15  decision is contrary to established federal law if "the state court applies a rule that contradicts the

16  governing law set forth in [United States Supreme Court] cases," or "the state court confronts a

17  set of facts that are materially indistinguishable from a decision of [the United States Supreme]

18  Court and nevertheless arrives at a result different from [the Court's] precedent." *Lockyer v.

19  Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks omitted).  A state court

20  decision is an unreasonable application of clearly established law "if the state court identifies the

21  correct governing legal principle from [the United States Supreme Court's] decision but

22  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.  It is not enough

23  that the state court applies the law erroneously or incorrectly; rather, the application must be

24  objectively unreasonable. *Id.* at 75-76.

25      When, as here, the California Supreme Court denies a habeas corpus petition without

26  comment, the federal court will look to the last reasoned decision as the basis for the state court's

27  judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the last reasoned

28  decision is the San Bernardino County Superior Court's order denying Petitioner's habeas

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

1  claims. (Ex. 7.) As this decision is neither contrary to or an unreasonable application of federal

2  law, nor based on an unreasonable determination of the facts in light of the evidence presented,

3  Petitioner fails to establish a violation of AEDPA standards. Therefore, his petition for writ of

4  habeas corpus must be denied.

5  **A.    Petitioner Received All Process Due Under the Only United States Supreme**
   **Court Law Addressing Due Process in the Parole Context.**

6

7        The setting of a parole date is not part of the criminal prosecution so the full panoply of

8  rights afforded a defendant in a criminal proceeding are not constitutionally mandated in a parole

9  proceeding. *Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The only

10 Supreme Court decision to address the requirements of due process at a parole consideration

11 hearing has held that a parole board's procedures are constitutionally adequate if the inmate is

12 given an opportunity to be heard and a decision informing him of the reasons he did not qualify

13 for parole. *Greenholtz*, 442 U.S. at 16.[2]

14       Here, Petitioner does not contend that he failed to receive an opportunity to be heard and

15 a statement of the grounds for which the Board found him unsuitable for parole. (*See generally*

16 Pet.) Similarly, the Board's hearing transcript reflects that Petitioner appeared at the hearing and

17 received an opportunity to be heard, and that the Board issued a decision informing him of the

18 grounds upon which he was denied parole. (Ex. 2.) Accordingly, because Petitioner thus

19 received all the process due under the United States Supreme Court precedent finding a federal

20 liberty interest in discretionary parole release, the state court decision was not contrary to or an

21 unreasonable application of clearly established federal law as determined by the United States

22 Supreme Court. *See* 28 U.S.C. § 2254(d).

23 //

24

25       2. The Supreme Court has continued to cite *Greenholtz* approvingly for the proposition that
26 the "level of process due for inmates being considered for release on parole includes an opportunity
   to be heard and notice of any adverse decision" and noted that *Greenholtz* remains "instructive for
27 [its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S.
   2384, 2397 (2005).
28

Answer to OSC; Mem. of P. & A.                                                    *Rush v. Curry*
                                                                                 C07-03990 CRB

1   **B.    The Ninth Circuit's Some-Evidence Test Is Not Clearly Established Supreme Court Law, and thus Is Not Applicable to Petitioner's Claims Under AEDPA.**

2

3        Petitioner alleges that the Board's decision must be overturned because it is not

4   supported by some evidence. (Pet. at 17; Mem. of P.&A. at 40-50.) This argument stems from

5   the holding in *Hill*, 472 U.S. at 455, in which the United States Supreme Court determined that

6   some evidence must support the decision of a prison disciplinary board to revoke good time

7   credits. In *Jancsek v. Oregon Board of Parole*, 833 F.2d 1289, 1290 (9th Cir. 1987), the Ninth

8   Circuit held that this standard applies not only in the disciplinary context, but the parole context

9   as well, and that some evidence must support the Board's denials of parole. Because the holding

10  in *Jancsek* is not clearly established federal law under AEDPA standards, the some-evidence

11  standard may not be applied in federal habeas proceedings challenging parole denials.

12        As the Supreme Court clarified in *Musladin*, 127 S. Ct. at 654, where the Court has not

13  applied a test or standard to a certain type of case it cannot be said that the failure of a state court

14  to do so was an unreasonable application of clearly established federal law. In *Musladin*, the

15  petitioner challenged a state court decision finding that the fact that the victim's family wore

16  buttons displaying the victim's image at the defendant's trial was not inherently prejudicial. *Id.*

17  at 650. The Ninth Circuit held that the state court decision was contrary to or an unreasonable

18  application of federal law regarding state-sponsored courtroom practices. *Id.* In reversing the

19  Ninth Circuit, the Supreme Court noted that although it had articulated a test to determine

20  whether state-sponsored courtroom practices were inherently prejudicial, it had never addressed

21  the issue of whether conduct by a private party was so prejudicial that it deprived the defendant

22  of his right to a fair trial. *Id.* at 654. "Given the lack of holdings" on the specific issue, the Court

23  reversed the Ninth Circuit and held that the state court's decision was not an unreasonable

24  application of federal law. *Id.*

25        The Supreme Court has since reiterated its holding in *Musladin*, confirming that a state

26  court decision cannot be contrary to or an unreasonable application of federal law where the

27  Court has not addressed what protection or test is required in a specific factual or legal scenario.

28  In *Schriro v. Landrigan*, ___U.S.___, 127 S. Ct. 1933 (2007), the Ninth Circuit found that the

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

12

1  state court unreasonably applied *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*,

2  545 U.S. 374, 381 (2005) when it denied federal habeas relief to a defendant asserting ineffective

3  assistance of counsel, despite the fact that he had refused to allow the presentation of any

4  mitigating evidence. *Landrigan*, 127 S. Ct. at 1942. The Supreme Court reversed that part of the

5  decision after distinguishing the facts of the case from those in *Wiggins* and *Rompilla*. *Wiggins*

6  did not address a situation in which the client had interfered with counsel's efforts to present

7  mitigating evidence. *Id.* And in *Rompilla*, the defendant had not informed the court that he did

8  not want mitigating evidence presented. *Id.* Because the high court had never addressed a

9  situation like the one raised in *Landrigan*, the state court's decision was not objectively

10  unreasonable. *Id.*

11    Several recent Ninth Circuit decisions also emphasize that there can be no clearly

12  established federal law where the Supreme Court has never addressed a particular issue or

13  applied a certain test to a specific type of proceeding. *Crater v. Galaza*, 491 F.3d 1119, 1122-23,

14  1126-27 & n.8 (9th Cir. 2007) (citing *Musladin*, the Ninth Circuit acknowledged that decisions

15  by courts other than the Supreme Court as "non-dispositive" under § 2254(d)(1)); *Foote v. Del*

16  *Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007) (affirming district court's denial of petition

17  alleging ineffective assistance of appellate counsel based on an alleged conflict of interest

18  because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth

19  Amendment); *Nguyen v. Garcia*, 477 F.3d 716, 718, 727 (9th Cir. 2007) (holding that state

20  court's decision finding *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did not apply to a state

21  court competency hearing was not contrary to clearly established federal law because Supreme

22  Court had not held that *Wainwright* applied to competency hearings).

23    Because the Supreme Court developed the some-evidence standard in the context of a

24  prison disciplinary hearing, which is fundamentally different from a parole proceeding, applying

25  this standard to a parole decision cannot be clearly established federal law. *Musladin*, 127 S. Ct.

26  at 654; *Landrigan*, 127 S. Ct. at 1942 *Irons v. Carey*, __ F.3d __, 2007 WL 3256594 at *2-4 (9th

27  Cir. Nov. 6, 2007) (en banc) (Kleinfeld, J., and Bea, J., dissenting). The level of due process

28  protections to which an inmate is entitled is directly related to the level of his liberty interest and

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

1   the nature of the decision being made. *Greenholtz*, 442 U.S. at 13-14. At a disciplinary hearing,

2   the inquiry is retrospective and factual in nature, and the prisoner faces a potential loss of credits.

3   *Greenholtz*, 442 U.S. at 14. But a decision to parole an inmate is fundamentally different. First,

4   the level of liberty interest an inmate has in the possibility of parole is markedly different from

5   that of an inmate who is facing a loss of credits. *Wolff v. McDonnell*, 418 U.S. 539, 560-61

6   (1974) (contrasting the different interests that a parolee and a prisoner may have in their

7   deprivation of liberty); *Greenholtz*, 442 U.S. at 13-14 (distinguishing the parole suitability

8   decision from the parole revocation and disciplinary decisions). Second, a parole decision is not

9   factual in nature. Rather, it is a predictive and subjective decision requiring discretionary

10  analysis of the inmate's suitability for release. *Greenholtz*, 442 U.S. at 9-10; *Wilkinson*, 545 U.S.

11  at 229. In fact, due to the discretionary nature of parole decisions, the Supreme Court has held

12  that, in contrast to prison disciplinary hearings, due process does not require the decision-maker

13  to specify the evidence showing that a prisoner is unsuitable for parole. *Greenholtz*, 442 U.S. at

14  15.

15      In summary, applying the some-evidence standard to a parole proceeding is not clearly

16  established federal law. Instead, the *only* clearly established Supreme Court authority describing

17  the process due when there is a federal liberty interest in parole simply requires that the inmate be

18  given an opportunity to be heard and advised of the reasons he was not found suitable for parole.

19  *Greenholtz*, 442 U.S. at 16. Indeed, in *Greenholtz* the Supreme Court rejected the argument that

20  due process requires an evidentiary standard of review in parole cases, holding that there is

21  "nothing in the due process concepts as they have thus far evolved that requires the Parole Board

22  to specify the particular 'evidence' . . . on which it rests the discretionary determination that an

23  inmate is not ready for conditional release." *Id.* at 15-16. The Supreme Court has thus explicitly

24  rejected the notion that a parole decision must be supported by any particular quantum of

25  evidence. *Id.*

26      Accordingly, because application of the some-evidence standard to parole denial

27  challenges is not clearly established Supreme Court law regarding federal due process, AEDPA

28  precludes this standard from being applied to Petitioner's claims in this case. *See* 28 U.S.C. §

Answer to OSC; Mem. of P. & A.                                                    *Rush v. Curry*
                                                                                  C07-03990 CRB

14

1   2254(d); *Musladin*, 127 S. Ct. at 654.

2   **C.**      **Even if the Some-Evidence Standard Was Clearly Established Federal Law, the Standard Was Correctly Applied by the State Court.**

3

4        Even if the some-evidence standard was clearly established federal law for AEDPA

5   purposes, Petitioner's claim would nonetheless fail because he cannot show that the state court

6   unreasonably applied this standard or made an unreasonable determination of the facts. As the

7   state court found (Ex. 7), under California law the proper level of judicial review is whether

8   "some evidence in the record before the Board supports the decision to deny parole, based upon

9   the factors specified by statute and regulation." *Rosenkrantz*, 29 Cal. 4th at 658. Similarly, as a

10   matter of federal due process, the some-evidence standard "does not require examination of the

11   entire record, independent assessment of the credibility of witnesses, or weighing of the

12   evidence;" rather, it is satisfied if there is "any evidence in the record that could support the

13   conclusion reached by the [B]oard." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129

14   (stating that "*Hill's* some evidence standard is minimal.")

15        Although Petitioner invites the Court to re-examine the facts of his case and re-weigh the

16   evidence presented to the Board, AEDPA does not permit this degree of judicial intrusion.

17   Petitioner bears the burden of proving that the state court's factual determinations were

18   objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th

19   Cir. 2005). So long as the state court's reasoned decision was a reasonable determination of the

20   facts presented, Petitioner's claim must fail.

21        Moreover, in assessing the state court's review of Petitioner's claims, not only should the

22   appropriate deference be afforded under AEDPA to the state court's review, but deference is also

23   due to the underlying Board decision. The Supreme Court has recognized the difficult and

24   sensitive task faced by the Board members in evaluating the advisability of parole release.

25   *Greenholtz*, 442 U.S. at 9-10. Thus, contrary to Petitioner's belief that he should be paroled

26   based on the evidence in support of parole presented at the hearing (Pet. at 18, Mem. of P.&A. at

27   48-49), the Supreme Court has stated that in parole release, there is no set of facts which, if

28   shown, mandate a decision favorable to the inmate. *Greenholtz*, 442 U.S. at 9-10. Instead, under

1   the some-evidence standard, the court's inquiry is limited solely to determining whether the state

2   court properly found that the Board's decision to deny parole is supported by some evidence in

3   the record, i.e., any evidence. *Hill*, 472 U.S. at 455.

4        Here, Petitioner cannot show that the state court's decision denying him relief was based

5   on an unreasonable application of the *Hill* some-evidence standard or an unreasonable

6   determination of the facts. In upholding the Board's parole denial, the state court found that the

7   Board validly denied petitioner parole based solely on the evidence demonstrating the gravity of

8   his murder offense. (Ex. 7.) Specifically, the court found that Petitioner's murder reflected "an

9   extreme degree of callousness." (*Id.*) The Court further found that Petitioner's depiction of the

10  shooting as being the result of a "flinch" showed a "lack of remorse" given that a flinch would

11  not result in "numerous shots." (*Id.*) Additionally, the court stated that rather than "acting

12  responsibly and without criminal intent, the Petitioner devised and carried out a plan to hide

13  evidence of the murder. . . . Then, instead of confessing to the police, Petitioner and his friend

14  proceed to 'party' with the victim's money." (*Id.*) The Court determined that "[s]uch a lack of

15  concern after such a heinous crime manifests a callousness which is difficult to describe" and that

16  "[o]bviously, the Board recognized this when they found[:] the crime was 'callous and cruel'; the

17  offense was carried out in a 'dispassionate manner' with 'callous disregard for human

18  suffering[,]' over a trivial matter." (*Id.*; *see also* Ex. 2 at 16-17, 85-86,89; Ex. 3 at 1-3; Ex. 5 at

19  1.) Accordingly, the court state court did not unreasonably apply the *Hill* some-evidence

20  standard in concluding that "there was sufficient evidence presented at the hearing to justify a

21  finding of unsuitability." (Ex. 7.)[3/]

22       The Board's findings regarding these criteria were supported by some evidence from

23  Petitioner's testimony at the hearing, his prior transcripts, relevant documents from Petitioner's

24  prison files, and statements and letters in opposition and in support of parole. (Ex. 2 at 4, 32-35,

25  _____

26       3.   Contrary to Petitioner's argument (Pet., Mem. of P.&A. at 49-50), the Board also
     appropriately considered the opposition to parole by the victim's family and the prosecuting District
27  Attorney (Ex. 2 at 32-35, 57-64, 80-94), as required by California Penal Code sections 3042-3043.
     *Dannenberg*, 34 Cal. 4th at 1084-85 (finding that public opposition to parole must not only be
28  considered, but "may be influential, and even decisive in appropriate cases").

Answer to OSC; Mem. of P. & A.                                          *Rush v. Curry*
                                                                        C07-03990 CRB

1   80-94.)  Further, even if some of these criteria are individually insufficient to support the parole

2   denial, the Board still properly considered this evidence within the context of the other parole

3   criteria.  Cal. Code Regs. tit. 15, § 2402(b) (providing that "[c]ircumstances which taken alone

4   may not firmly establish unsuitability for parole may contribute toward a pattern which results in

5   a finding of unsuitability").  Accordingly, to the extent that the *Hill* some-evidence standard

6   applies, Petitioner's claims must be denied because he cannot show that the state court

7   unreasonably applied this standard or made an unreasonable determination of the facts in

8   upholding the Board's 2005 decision denying Petitioner parole.

9   **D.     Petitioner Cannot Demonstrate that the State Court Unreasonably Rejected His
            Remaining Claims.**

10

11           **1.     Petitioner erroneously argues that he is entitled to parole based on the
                      language of California Penal Code section 3041(a).**

12          In addition to challenging the sufficiency of the evidence, Petitioner also contends that he

13  was unlawfully denied parole because the Board is "normally" required to parole all

14  indeterminate life-term prisoners after they become eligible for parole under California Penal

15  Code section 3041.  (Pet. at 17.)  Petitioner's allegation is both with merit and fails to state a

16  federal claim.  Thus, Petitioner cannot establish that the state unreasonably denied his claims on

17  this basis.

18          As an initial matter, Petitioner's claim regarding the proper interpretation of California's

19  parole statute is solely a state law claim, and thus is not cognizable in federal habeas corpus.  *See,*

20  *e.g., Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197-98 (9th

21  Cir. 1983).  Moreover, even if Petitioner is alleging that the state court erroneously interpreted or

22  applied the applicable California law when it denied his petition, a federal court may not

23  challenge a state court's interpretation or application of state law, *Middleton v. Cupp*, 768 F.2d

24  1083, 1085 (9th Cir. 1985), or grant relief "on the basis of a perceived error of state law," *Pulley*

25  *v. Harris*, 465 U.S. 37, 41 (1984).  Thus, the Petition should be denied as to this claim.

26          Alternatively, to the extent Petitioner alleges a federal claim, his claim is without merit.

27  As to Petitioner's construction of the language in Penal Code section 3041(a) indicating that

28  parole shall "normally be granted," the California Supreme Court has determined, in construing

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

17

1  the *entire* statute, that "the statutory language belies the notion of a *mandatory duty*" to parole

2  any prisoner, nor does it notably restrict the Board's discretion in determining parole suitability.

3  *Dannenberg*, 34 Cal. 4th at 1084-88 (emphasis original).  Rather, Petitioner is only entitled to

4  parole after having been found suitable for parole release.  *Irons v. Carey*, __ F.3d

5  __, 2007 WL 2027359 at *4 & n.3 (9th Cir. July 13, 2007) (citing *Dannenberg*, 34 Cal. 4th at

6  1078).  Thus, Petitioner cannot show that the state court unreasonably rejected this claim.

7      **2.**      **Petitioner cannot show that the Board is required, before denying parole**
           **based in part on the commitment offense, to engage in a comparative**

8           **review of similar offenses by other inmates or to consider the proportionality**
           **of his sentence based on the length of his incarceration.**

9

10  Petitioner alleges that his federal due process rights also require that the Board conduct a

11  comparative review of similar offenses committed by other inmates in determining whether

12  Petitioner's crime is a factor weighing against suitability for parole.  (Pet. at 18; Mem. of P.&A.

13  at 42-46, 55.)  In addition, Petitioner alleges that, regardless of whether the Board finds him

14  unsuitable for parole, the Board is required to set him a proportional release date based on the

15  length of his incarceration thus far.  (*Ibid.*)  Petitioner's claims, however, are contrary to the

16  provisions of California Penal Code section 3041, and thus without merit.

17  First, Petitioner's claims are again predicated on state law questions, and thus not

18  cognizable in federal habeas corpus.  *See, e.g., Rose*, 423 U.S. at 21; *Gutierrez*, 695 F.2d at

19  1197-98.  Here, Petitioner's allegations fail to implicate a federal claim to the extent they are

20  based on his construction of the state statutes and regulations regarding the manner in which the

21  Board determines suitability for parole.  As a result, the Petition must be denied as to these

22  claims.  28 U.S.C. § 2254(a); *Rose*, 423 U.S. at 21; *Gutierrez*, 695 F.2d at 1197-98.  Moreover,

23  even if Petitioner is alleging that the state court erroneously rejected these claims, a federal court

24  may not challenge a state court's interpretation or application of state law, *Middleton v. Cupp*,

25  768 F.2d 1083, 1085 (9th Cir. 1985), or grant relief "on the basis of a perceived error of state

26  law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Thus, the Petition should be denied as to these

27  claims.

28  Second, even if addressed on the merits, California Penal Code section 3041 and the

1  applicable regulations governing parole separate the suitability determination from setting a

2  release date, and make it clear that the determination of an appropriate release date occurs only

3  *after* deciding that an inmate is suitable for parole.  Cal. Penal Code § 3041; Cal. Code Regs. tit.

4  15, §§ 2402(a), 2403(a); *Dannenberg*, 34 Cal. 4th at 1082-83.[4]  As a result, the Board may

5  lawfully deny Petitioner parole without "comparing [his] crime to other second degree murders,

6  to [the Board's] base term matrices, or to the minimum statutory prison term for that offense."

7  *Dannenberg*, 34 Cal. 4th at 1098.  Accordingly, Petitioner's claims regarding the Board's alleged

8  failure to conduct a comparative review or set a proportional parole release date are without

9  merit.[5]

10      **3.      The Board may rely on static factors to deny parole.**

11          Petitioner also argues that due process precludes the Board from relying on static

12  factors—namely, the circumstances of the commitment offense—to deny parole.  (Pet. 19-20;

13  Mem. of P.&A. 20-24, 24-38.)  For several reasons, Petitioner cannot show that the state court's

14  rejection of this claim was contrary to, or an unreasonable application of, clearly established

15  Supreme Court law.

16          First, California Penal Code section 3401 requires that the parole authority examine the

17  commitment offense, providing that the Board "shall set a release date unless it determines that

18  the gravity of the current convicted offense or offenses, or the timing and gravity of current or

19  past convicted offense or offenses, is such that consideration of the public safety requires a more

20  lengthy period of incarceration."  Cal. Penal Code § 3041(b); *Dannenberg*, 34 Cal. 4th at 1080.

21  The applicable regulations also provide that a prisoner shall be denied parole if he "will pose an

22

23

---

24      4. Although a federal court is generally not bound by state-court decisions, federal courts are

25  bound by the decision of the state's highest court interpreting its own law, *Nelson v. City of Irvine*, 143 F.3d 1196, 1206-07 (9th Cir. 1998), as the state's highest court is the final arbiter of the meaning of the state statutes.  *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975).

26      5. Petitioner's reliance on *In re Ramirez*, 94 Cal. App. 4th 549 (2001) to support his claim

27  that he is entitled to a proportionate term is misplaced because that decision was disapproved in *Dannenberg* "to the extent it conflicts with the views expressed in [the *Dannenberg*] decision."

28  *Dannenberg*, 34 Cal. 4th at 1100.

Answer to OSC; Mem. of P. & A.                                                                                    *Rush v. Curry*
                                                                                                                  C07-03990 CRB

1  unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, §

2  2402(a). As a result, the California Supreme Court held in *Dannenberg* that the Board may rely

3  *solely* on the circumstances of the commitment offense to deny parole. 34 Cal. 4th at 1094.

4  Hence, "an inmate whose offense was so serious as to warrant, at the outset, a maximum term of

5  life in prison, may be denied parole during whatever time the Board deems required for 'this

6  individual' by 'consideration of the *public safety*.'" *Id.* at 1084.

7        Moreover, the Board's consideration of public safety is not limited solely to the inmate's

8  potential for violence as suggested by Petitioner's argument that it is improper to consider the

9  static circumstances of his commitment offense given the length of time since that offense was

10 committed. Rather, the Supreme Court has indicated that the parole authority's consideration of

11 the commitment offense also must account for "whether, in light of the nature of the crime, the

12 inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others,

13 and undermine respect for the administration of justice." *Greenholtz*, 442 U.S. at 8.

14       The Ninth Circuit's holding in *Biggs* does not compel a different result. In *Biggs*, the

15 Ninth Circuit stated that the Board's continuing reliance on an unchanging factor to deny parole

16 "could result in a due process violation." 334 F.3d at 917. However, the *Biggs* court did not

17 definitively indicate that reliance on an unchanging factor necessarily violates due process, only

18 that it possibly could. Indeed, the court praised Biggs for being "a model inmate," and found that

19 the record was "replete with the gains Biggs has made," including a master's degree in business

20 administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's

21 decision to deny parole—which relied solely on the commitment offense—was supported by

22 some evidence. *Id.* at 917.

23       Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

24 established federal law sufficient to overturn a state court decision under AEDPA standards. In

25 *Sass*, the Ninth Circuit emphasized that *Biggs* does not contain mandatory language, and that

26 "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could

27 proceed." *Sass*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's

28 reliance on "immutable behavioral evidence" to deny parole violated federal due process. *Id.*

Answer to OSC; Mem. of P. & A.                                           *Rush v. Curry*
                                                                        C07-03990 CRB

1    The Ninth Circuit most recently addressed this issue in *Irons*.  In overturning a district court

2    grant of habeas corpus, the Ninth Circuit held that despite substantial evidence of the inmate-

3    petitioner's rehabilitation, the Board acted properly and did not abuse its discretion by relying on

4    the circumstances of the commitment offense to deny parole.  *Irons*, 2007 WL 2027359, at *5-6.

5    Thus, the dicta from *Biggs* and its progeny do not preclude the Board from using circumstances

6    of the commitment offense to deny parole, nor may this dicta be used to overturn a valid state

7    court decision.

8            Accordingly, because Petitioner fails to prove that the state court decision denying parole

9    and rejecting his claims regarding the Board's continued reliance on his murder offense is

10   contrary to or an unreasonable application of clearly established Supreme Court law, his federal

11   petition must be denied.

12        **4.      The Board's regulatory provision regarding consideration of the
               commitment offense is not unconstitutionally vague given that the challenged
13             term has more specific and detailed standards than similar terms used in
               death penalty statutes that have been upheld as valid against vagueness
14             challenges in the United States Supreme Court.**

15           Petitioner alleges that the Board's regulations are unconstitutionally vague as applied to

16   him at his 2005 hearing, specifically challenging the regulation set forth at title 15 section

17   2402(c)(1) of the California Code of Regulations, which indicates that a crime committed in an

18   "especially heinous, atrocious or cruel manner" is a circumstance tending to show unsuitability

19   for parole. (Pet., Mem. of P. & A. 56-58.)  But while Petitioner asserts his vagueness claim

20   regarding the Board's regulations, this type of claim typically is asserted in the context of the

21   application of death penalty statutes.  For instance, in *Maynard v. Cartwright*, 586 U.S. 356

22   (1988), the Supreme Court rejected as unconstitutionally vague an Oklahoma death penalty

23   statute that used as an aggravating factor the same term at issue here–"especially heinous,

24   atrocious, or cruel." 486 U.S. at 363.  The Court did not find that this term was unconstitutional

25   on its face, but rather only that the statute was too vague because it was not applied with any

26   limiting constructions or further sub-definitions to provide some guidance to the discretion of the

27   decision-maker. *Id.* at 364-65.

28           Subsequently, in *Arave v. Creech*, 507 U.S. 463 (1993), the United States Supreme Court

Answer to OSC; Mem. of P. & A.                                                          *Rush v. Curry*
                                                                                        C07-03990 CRB

1 | addressed a death penalty statute that contained a limiting construction. The Court initially stated

2 | that the language in a death penalty statute was not unconstitutionally vague unless it was "too

3 | vague to provide any guidance" and the challenged language had not been further defined to

4 | provide "some guidance." *Id.* at 471. Thus, the Court held that an Idaho death penalty statute

5 | citing as an aggravating factor crimes carried out with an "utter disregard for human life" was not

6 | unconstitutionally vague because a limiting construction had been adopted which defined this

7 | factor as those crimes demonstrating the "utmost callous disregard for human life, i.e., the cold-

8 | blooded pitiless slayer." *Id.* at 407-08. Thus, even though there was but one further sub-

9 | definition that essentially restated the original term in its beginning and then added only the very

10 | subjective term "cold-blooded pitiless slayer," the Court held it was sufficient to provide some

11 | guidance and therefore it passed constitutional muster. *Id.*

12 | Here, the heightened scrutiny of the death penalty review in *Maynard* and *Arave* does not

13 | apply because Petitioner is merely challenging a discretionary parole suitability regulation. Thus,

14 | while *Maynard* held that the term "especially heinous, atrocious, or cruel" was unconstitutionally

15 | vague in the absence of a limiting construction, that reasoning would not apply to this non-death

16 | penalty case. *See Arave*, 507 U.S. at 470-71 (setting forth standard to be applied in the context of

17 | challenges to death penalty statutes). Indeed, the Supreme Court has determined that parole

18 | suitability determinations necessarily require in part a discretionary, subjective analysis. For

19 | instance, in *Greenholtz* the Court reasoned:

20 | [T]here is no set of facts which, if shown, mandate a decision favorable to the
   | individual. The parole determination, like a prisoner-transfer decision, may be

21 | made for a variety of reasons and often involve[s] no more than informed
   | predictions as to what would best serve [correctional purposes] or the safety and

22 | welfare of the inmate. The decision turns on a discretionary assessment of a
   | multiplicity of imponderables, entailing primarily what a man is and what he may

23 | become rather than simply what he has done.

24 | *Greenholtz*, 442 U.S. at 10 [citations and quotations omitted]. Similarly, the Supreme Court later

25 | adhered to this understanding of parole suitability determinations, holding that "we can say with

26 | some assurance that where parole is concerned discretion, by its very definition, is subject to

27 | changes in the manner in which it is informed and then exercised. The idea of discretion is that it

28 | has the capacity, and the obligation, to change and adapt based on experience." *Garner v. Jones*,

Answer to OSC; Mem. of P. & A.

*Rush v. Curry*
C07-03990 CRB

1    529 U.S. 244, 253 (2000).  For instance, the Court determined that "[n]ew insights into the

2    accuracy of predictions about the offense and the risk of recidivism consequent upon the

3    offender's release, along with a complex of other factors, will inform parole decisions."  *Id.*

4    As a result, Petitioner cannot demonstrate that the Board's parole regulations are

5    unconstitutionally vague merely because they provide the Board with substantial discretion in

6    making a subjective determination regarding his suitability for parole.

7         In the alternative, assuming that the death-penalty notice standard were to be applied here,

8    the Board's regulation far, far exceeds the clarity of the Idaho and Oklahoma death penalty

9    statutes discussed above, especially when it is considered in the context in which it was applied

10   at Petitioner's 2005 parole consideration hearing.  First, while the Oklahoma statute in *Maynard*

11   contained no limiting constructions and the Idaho statute in *Arave* contained only one subjective

12   sub-definition, the Board's regulation challenged in this case sets forth five additional sub-

13   definitions, some subjective and some objective.  Specifically, the Board's regulations provide

14   that in determining whether a crime was "especially heinous, atrocious, or cruel," the factors to

15   be considered include whether:  (A) multiple victims were attacked, injured, or killed; (B) the

16   offense was carried out in a dispassionate and calculated manner, such as an execution-style

17   murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the

18   offense was carried out in a manner that demonstrates an exceptionally callous disregard for

19   human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the

20   offense."  Cal Code Regs., tit. 15, § 2402(c)(1).  While factors "B," "D," and "E" provide

21   additional subjective limiting definitions, factors "A" and "C" provide objective considerations.

22        Given the thoroughness of the Board's regulation, a comparison to *Arave* is almost

23   unnecessary to show that the Board's regulation is not unconstitutionally vague even under the

24   heightened scrutiny which would be applied to a death penalty statute.  Indeed, given that the

25   single subjective sub-definition of "utmost callous disregard for human life, i.e., the cold-blooded

26   pitiless slayer" was deemed a sufficient limiting factor for the term "utter disregard for human

27   life" to pass constitutional scrutiny in a death penalty statute (*Arave*, 507 U.S. at 407-08), the

28   Board's regulations using the term "especially heinous, atrocious, or cruel," as further limited by

Answer to OSC; Mem. of P. & A.                                                    *Rush v. Curry*
                                                                                  C07-03990 CRB

23

1 the regulation's five detailed sub-definitions, is not unconstitutionally vague.

2       Accordingly, Petitioner cannot demonstrate that the state court's decision rejecting his

3 vagueness claim was contrary to, or an unreasonable application of, United States Supreme Court

4 law.

5                                    **CONCLUSION**

6       Under AEDPA, the Court may grant a writ of habeas corpus only if it determines that the

7 state court findings denying relief were contrary to, or an unreasonable application of, clearly

8 established federal law, or involved an unreasonable interpretation of the facts.  Petitioner fails to

9 prove this.  First, he received all process due under *Greenholtz*, the only clearly established

10 federal law specifically addressing the process due at parole consideration hearings.  Second,

11 even if the some-evidence standard applies, Petitioner cannot show that the state court decision

12 denying him relief was based on either an unreasonable application of this standard under clearly

13 established Supreme Court law or that it was based an unreasonable determination of the facts.

14 For these reasons, Respondent respectfully requests that the Petition for Writ of Habeas Corpus

15 be denied.

16       Dated:  November 16, 2007

17                        Respectfully submitted,

18                        EDMUND G. BROWN JR.
                         Attorney General of the State of California

19                        DANE R. GILLETTE
20                        Chief Assistant Attorney General

21                        JULIE L. GARLAND
                         Senior Assistant Attorney General

22                        ANYA M. BINSACCA
                         Supervising Deputy Attorney General

23

24

25                        SCOTT C. MATHER
26                        Deputy Attorney General
                         Attorneys for Respondent

27

28

Answer to OSC; Mem. of P. & A.                                        *Rush v. Curry*
                                                                     C07-03990 CRB

24

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Rush v. Curry**

No.:    **C07-03990 CRB**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 19, 2007**, I served the attached

### ANSWER TO ORDER TO SHOW CAUSE;
### MEMORANDUM OF POINT AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Steven M. Defilippis, Esq.**
**Picone & Defilippis**
**625 N. First Street**
**San Jose, CA 95112**
attorney for Robert Rush
D-73321

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 19, 2007**, at San Francisco, California.

|                        |                        |
| ---------------------- | ---------------------- |
| J. Palomino            |                        |
| Declarant              | Signature              |

40187471.wpd