**EXHIBIT 3**

## County of San Bernardino
## PROBATION DEPARTMENT

### IDENTIFICATION

Defendant's Full Name: RUSH, ROBERT DALTON  Alias: _____
Birth Place: Denver, Colorado  Birth Date: 05-27-65  Age: 22  Sex: Male
Height: 5'10"  Weight: 140  Eyes: Brown  Hair: Blue  Ethnic Group: Caucasian  Nationality: American
BI No.: A08 274 226  FBI No.: 381 425 FA9  SS No.: 524 230 300  Op. License No.: U1057736
Scars/Marks/Tattoos: _____

---

### COURT INFORMATION

Court No.: SCR 44594  Probation No.: 22941-R  Hearing Date: October 29, 1987
Original Charge: "See Additional Information"
Convicted Charge: "See Additional Information"
Arresting Agency: San Bernardino Sheriff's Office  Arrest Date: 07-31-86
Booking Agency: San Bernardino Sheriff's Office - Central Jail  Booking No.: 8607772508
Release Date: In custody  Total Time in Custody: 456 days
Guilty by: Jury  Bond: _____ OR _____ Date: 09-18-87  In: Superior Court
Court: Superior  Department: 1  Judge: Bob N. Krug
Codefendants and Dispositions: Thomas Hoy - 10/13/87 5 years' Supervised Probation
Defendant's Attorney: Grover L. Porter  Address: 440 W. Court St., Ste. #309, San Bernardino, CA  Phone: 884-0586

---

### DEFENDANT'S ENVIRONMENT AND PERSONAL HISTORY
(Based on defendant's statement. Not independently verified by Probation Department.)

Address at Time of Offense: 1883 Virginia St., San Bdno  Zip: 92411  Phone: Unknown
Living With (Name/Relationship): Mark Hoy, Eric Loveng (roommates)
Present Address: San Bernardino County Jail  Zip: N/A  Phone: N/A
Living With (Name/Relationship): Inmates
Auto Make: None  Year: N/A  Color: N/A  License No.: N/A
Last School Attended: CalState San Bernardino  Highest Grade Completed: 14
Age Left School: 21  Special Training: None
Military Branch: None  From: N/A  To: N/A  Type of Discharge: N/A  Verified: N/A
Employer: Sickles Paint  Address: Diamond Bar, CA
Type of Work: Painter  Date Left: 07-31-86  Reason: Arrest in this matter  Time on Job: 6 weeks
Income-Gross: None  Net: None  Spouse's Income: N/A  Other: None
Assets: None
Debts/Child Support: None
Health: Fair
Narcotics/Alcohol/Medications: No drugs/Alcohol - occasionally/No medications  Hobbies: None
Present Spouse: None  Age: N/A
Address: N/A
Children (No.): None  From Age: N/A  To Age: N/A  Date/Place of Marriage: N/A
Previous Marriage (Name): None  How/Date/Place/Terminated: N/A
Father: Richard Rush  Age: 49  Occupation: Business manager
Address: P.O. Box 1314, Blue Jay, CA  Phone: 337-8957
Mother: Ann Rush  Age: 45  Occupation: Teacher (Elementary)
Address: P.O. Box 1314, Blue Jay, CA  Phone: 337-8957
Siblings (No.): 1  From Age: 16  To Age: _____  Probation/Parole Status: None
Name/Address/Phone No. of Nearest Relative/Friend: Richard and Ann Rush (parents)
P.O. Box 1314, Blue Jay, CA

14-15842-425

SCR 44594   RUSH, ROBERT DALTON          -1-                    October 29, 1987

<u>CIRCUMSTANCES OF THE OFFENSE:</u>   John Heinz was reported missing on July 1, 1986, by his father. This information was reported to the Anaheim Police Department. Mr. Heinz was concerned because his son had not been heard from since June 28, 1986, and it was not like him to just go off somewhere without letting anyone know.

On July 7, 1986, Mr. Heinz filed a missing person's report with the San Bernardino Police Department. On that date, Police Assistant Dana Richter commenced a local investigation as to John Heinz's possible whereabouts. Over a three day period, Ms. Richter spoke with John Heinz's roommates, Thomas Marcus Hoy and Eric Loveng. Both reported no knowledge of John Heinz's whereabouts. Ms. Richter also had contacted with the Orange County Sheriff's Office and Anaheim Police Department. No new information surfaced.

At approximately 1230 hours on July 15, 1986, John Heinz's vehicle was located in a parking lot outside Townsquare Lane in Riverside. The vehicle had been parked at the location for approximately ten days according to the reporting party. Further investigation by San Bernardino Police Department Detective Vincent Kilbride indicated no sign that the vehicle had been tampered with. Follow-up investigations in the area turned up no substantial information to lead to John Heinz's whereabouts.

On July 31, 1986, Mrs. Galloway contacted the San Bernardino Police Department and advised Detective Kutch that her son, Patrick Galloway, had information that could lead officers to the location where John Heinz was buried.

At 1350 hours on July 31, 1986, Patrick Galloway was interviewed by Detective Vince Kilbride at the San Bernardino Police Department and related that he was a roommate of John Heinz and had been in Arizona the weekend of Mr. Heinz's disappearance.

Mr. Galloway reported that upon his return from Arizona he asked another roommate, Marcus Hoy, where Mr. Heinz was. Mr. Hoy told him that Mr. Heinz had gone to a party in Anaheim and had not returned.

Mr. Galloway told Detective Kilbride that during the period from July 7, 1986, to July 10, 1986, he had given Mr. Hoy a ride to CalState San Bernardino. Prior to leaving the

SCR 44594   RUSH, ROBERT DALTON         -2-                    October 29, 1987

university campus, Mr. Hoy said to Mr. Galloway, "I want you to promise me a code of silence." Mr. Hoy then proceeded to tell Mr. Galloway that another roommate, Rob Rush, had shot Mr. Heinz to death. Mr. Hoy then explained to Mr. Galloway that the victim and Mr. Rush had an argument over household responsibilities, which had apparently escalated into a physical altercation. Mr. Hoy told Mr. Galloway that shortly thereafter Mr. Rush sought out Mr. Heinz and shot him numerous times with a .22 caliber rifle.

Mr. Galloway related that a short time after the shooting, Mr. Hoy arrived at the residence in the company of his girlfriend, and Mr. Rush told him privately that he had killed John Heinz. According to Mr. Galloway, Mr. Hoy then asked his girlfriend to leave the house and she did so. Mr. Hoy and Mr. Rush then proceeded to pack Mr. Heinz's body into green plastic trash bags. They then placed the body into a sleeping bag which they put into the back seat of the victim's (Mr. Heinz) truck. According to Mr. Galloway, Mr. Hoy and Mr. Rush then went into the house and cleaned up Mr. Heinz's room. They cleaned up the blood from the carpet, picked up the expended shell casings, and filled holes in the wall with toothpaste. Mr. Hoy and Mr. Rush then drove the victim's body to the Dover Canyon area, north of CalState San Bernardino campus. Upon arrival, they removed the victim's money from his pocket and took his gold initial ring from his finger. They took Mr. Heinz identification from his wallet and buried it in another location in the wash area. They then buried the body after removing it from the sleeping bag.

When leaving the area, Mr. Hoy and Mr. Rush threw Mr. Heinz's wallet into a ravine on the opposite side of the road. Mr. Hoy and Mr. Rush then returned to the residence.

Upon their arrival at the residence, Mr. Hoy and Mr. Rush cleaned up. According to Mr. Galloway, they later took Mr. Heinz truck to the Riverside area, where they left it. Their deeds complete, they then proceeded to a local drinking establishment, where they got drunk on the victim's money.

After receiving the above information from Mr. Galloway, San Bernardino Police Department Detective proceeded to the suspect's residence. Suspects Hoy and Rush were transported to

SCR 44594   RUSH, ROBERT DALTON            -3-                    October 29, 1987

San Bernardino Police Department, where they were interviewed by Detective Kilbride and later arrested.

Other San Bernardino Police Department personnel were assigned to the area where Mr. Heinz's body had allegedly been buried. Later in the day, on July 31, 1986, Mr. Heinz's body, identification, and wallet were located in the area where Mr. Galloway said they would be. Because of impending darkness, the body was not fully exhumed until the next day.

Subsequent to the exhumation, an autopsy was completed. The death certificate listed the cause of death as multiple gunshot wounds.

PLEA BARGAIN:                       Not applicable to this report as the defendant was found guilty by jury.

DEFENDANT'S STATEMENT:              Robert Rush was interviewed at the San Bernardino County Jail on October 16, 1987.

Mr. Rush indicated that this matter was a real tragedy all the way around, for the victim and the victim's family, for him and his family. If there were any way he could undo what occurred, he would. He is very much aware that his behavior was wrong, that something has to happen in the way of punishment. No one regrets what happened anymore than he does. The incident was hard on his parents, but they have no choice but to deal with it. Fortunately for him, they are sticking by him. No matter how long or where he goes, he knows he will always have their support.

Mr. Rush disclosed that he still finds it hard to believe that this kind of thing has happened to him. He keeps expecting to wake up from a bad dream. He has never been in any type of trouble before. He, in fact, has never had a fight before this incident led into this matter. He wished he had never owned a gun. The reason he had a gun was for sport as he enjoyed target practicing.

The defendant indicated that in his mind this offense occurred because he was scared and angry. Everything happened all of a sudden, he did not have time to think just react. He was so frightened afterwards that he did not contact the police. He was full of fear; he was afraid the victim was going to come back and hit him some more. The victim had beaten him up pretty badly and he justed wanted him to stop. When the victim

SCR 44594   RUSH, ROBERT DALTON           -4-                    October 29, 1987

came at him again and lunged at him, he fired the rifle. After the first shot, the victim said, "Ouch, ouch," and just stood there and that is when the defendant indicated he emptied the rifle on him.

The defendant stated that he does not want to be locked up even though he fully recognizes the magnitude of his behavior. He has his whole life ahead of him and now for a while it appears to be thrown away. What should help a little in this matter is that his parents are checking into how he can get a correspondence course. He is certain he will have time to complete the requirements for a degree. He would, however, still like the opportunity to make something out of himself. He would like the chance to show that he can amount to something positive and contribute to society.

VICTIM'S STATEMENT:                      The victim, John Heinz, is deceased.

Mr. Raymond Heinz, father of the victim, was interviewed via telephone on October 19, 1987. Mr. Heinz advised that he was going to attend the Court hearing, but as to whether he wished to make a statement during the hearing he would work out with the District Attorney. Mr. Heinz further indicated that he was not presently prepared to make a statement, but should he decide to make one at a later date, he will contact the Probation Officer. In the event Mr. Heinz contacts the Probation Department prior to the Court hearing, the information obtained from this interview will be forwarded to the Court in the form of a memo.

The following information is respectfully submitted to the Court and was obtained from a probation report prepared for the codefendant in this matter, dated December 15, 1986. The report read, "Mr. Raymond Heinz, the father of the victim, described his son as 'a guy who loved life.' Mr. Heinz saw John as a friendly, 'people person' who enjoyed making new friends. Mr. Heinz described his son as having been shy until high school. A 'quiet guy' who made friends easily."

The report further read "Mr. Heinz stated that the family sensed that something was terribly wrong shortly after John's disappearance. He cited as a key factor the fact that John left his dog at the house. According to Mr. Heinz, John took his dog everywhere."

Also contained in the December 15, 1986, probation report was an interview Probation Officer Stuart Osborne

SCR 44594   RUSH, ROBERT DALTON           -5-                  October 29, 1987

conducted with Mrs. Helen Heinz, the victim's mother. Mr. Osborne wrote, "Mrs. Helen Heinz, John's mother, stated she felt something was wrong from the time her son disappeared. Mrs. Heinz spoke to her son on every-other-day basis and suspected after she had not heard from him in three to four days that something was very wrong.

"Mrs. Heinz described her son as never having caused any problems at home or school. She stated, 'Sometimes I wish he had caused us more problems; then this would be justified.' Mrs. Heinz stated she would think about the incident 'every waking moment.' She feels that no one can truly appreciate that agony she and her family has gone through.

"Mrs. Heinz continues to live with several unanswered questions. She wanted to know why those involved in her son's murder lied for so long about what they did. She also wanted to know why Mr. Hoy chose to protect Mr. Rush at the expense of John Heinz's grieving family.

"Mrs. Heinz also mentioned the fact that after her son had been murdered, Mr. Rush and Mr. Hoy felt they had gotten away with it. She cited the statement by witness Patrick Galloway that he, Mr. Hoy and Mr. Rush had discussed a plan to possibly commit another murder.

"Through the interview with Mrs. Heinz, she seemed to be on the verge of tears. She, like her husband, was particularly upset that the defendant robbed her son prior to burying his body."

COLLATERAL REPORTS:             Detective Kilbride of the San Bernardino Police Department was interviewed via telephone on October 19, 1987. Detective Kilbride's recommendation was that Mr. Rush should receive the maximum sentence allowed by law. He further indicated that there are indications that the defendant apparently reloaded and continued to fire. Detective Kilbride advised that the defendant's statement of his action being self-defense is "crock." This statement would be more plausible if the defendant had shot the victim one or two times. The detective stated that the defendant exhibited a lot of coldness about taking the body. The law reports that when the defendant shot the victim, the fight was over and the defendant sat down and thought about it. He then got the rifle and went and got the victim up. The detective indicated that the defendant's injuries from the earlier fight were very few, a couple of bruises. Detective Kilbride stated

SCR 44594   RUSH, ROBERT DALTON          -6-                    October 29, 1987

that during his interview with the defendant, the defendant denied knowing where the victim was.

Contained in the District Attorney's file are twenty letters of character reference submitted by Mr. Heinz on behalf of his son. Presentation of this material tends to show that the lengthy cover-up of the offense had a devastating effect upon the victim's family as well as his circle of friends.

SENTENCING CONSIDERATIONS:

Criteria Affecting Probation (Rule 414):   Penal Code Section 1203.06(a) and Section 1203.075 prohibits the grant of probation in cases such as this matter.

Circumstances in Aggravation (Rule 421):   The defendant was convicted of Second Degree Murder. The jury in this matter also found true the allegation that Mr. Rush used a firearm, to wit: a rifle. The crime committed by the defendant involved a high degree of cruelty in that he not only callously took the victim's life and then buried him, but then refused to give information that would have possibly mitigated the suffering of the victim's family.

The defendant was armed with a weapon at the time of the crime, chargeable as an enhancement under Section 12022.5 of the Penal Code. The victim was particularly vulnerable in that he was unarmed. By virtue of the defendant's crime and his behavior afterward tends to indicate that he is a serious danger to society.

The crime was carried out in a highly sophisticated manner. Bullet holes in the wall were filled with toothpaste. The defendant removed identification from the deceased's body and buried it sixty feet away. Through his continued effort, the defendant avoided arrest for a number of weeks.

Circumstances in Mitigation (Rule 423):   The defendant has no known prior record of criminal conduct. He is youthful.

ANALYSIS:               Whatever rationalization may be offered by twenty-two year old Robert Rush as an explanation for his behavior, it is now an indisputable fact that the life of a promising young man was irretrievably taken. In his behalf, the defendant offers no rhyme and little reason for joining the brotherhood of Cain. It is very unfortunate that the defendant chose to follow a path that culminated in the death of a friend. It may be argued that murder, in any degree, was probably not in the defendant's

SCR 44594  RUSH, ROBERT DALTON          -7-          October 29, 1987

scheme of things. For whatever ingenious argument may be forwarded in Mr. Rush's benefit, it is now an irretrievable fact that Mr. Heinz died as a result of the defendant's aberrant activity. To the victim and his survivor, the motive for the killing often times becomes grossly inconsequential as the end result, whether it was done with cold-blooded purpose, or an accidental or gruesome act, is the same irreversible, permanent death. Mr. Rush has, indeed, committed a very violent and serious felony and deserving of stern punishment; what is also very disconcerting about this defendant is his behavior subsequent to the murder. This behavior, in itself, tends to indicate that the defendant has transformed himself into a potent danger to society.

CVC RECOMMENDATION: It is respectfully recommended that the Court find that a motor vehicle was involved in or incidental to the commission of this offense. It is further recommended that the Court order the Department of Motor Vehicles to revoke the defendant's privilege to operate a motor vehicle. It is further recommended that the defendant surrender his driver's license to the Court, pursuant to 13550 CVC.

REIMBURSEMENT OF APPOINTED COUNSEL: It is respectfully recommended that the Court find that the defendant does not have the present ability to pay appointed counsel fees.

REIMBURSEMENT OF INVESTIGATION COSTS: It is respectfully recommended that the Court find that the defendant does not have the present ability to pay the cost of conducting the Presentence Investigation and preparing the report pursuant to Section 1203 of the Penal Code.

SCR 44594   RUSH, ROBERT DALTON            -8-                October 29, 1987

RESTITUTION FINE:        It is respectfully recommended that the defendant, Robert Dalton Rush, be ordered to pay a Restitution Fine in the amount of $15,000.00, for the offense of Second Degree Murder, in violation of Section 187 of the Penal Code, a Felony.

PROBATION OFFICER'S RECOMMENDATION:        It is therefore respectfully recommended that probation be denied and the defendant, Robert Dalton Rush, be sentenced to the California State Prison as follows:

INDETERMINATE SENTENCE:

| COUNT I: | Second Degree Murder - in violation of Section 187 PC - for the term prescribed by law | 15 years to LIFE |
|---|---|---|
| | Enhancement of "Use of Deadly Weapon," in violation of Section 12022.5 PC - found true | 2 years |

The commitment to State Prison is for a total of seventeen (17) years to LIFE, with credit for time served, a matter of six hundred eighty-four (684) days (four hundred fifty-six (456) days actual, two hundred twenty-eight (228) days conduct), and may be followed by parole for a period of seven (7) years to LIFE.

Respectfully submitted,

JERRY D. HILL
CHIEF COUNTY PROBATION OFFICER

By: *(signature)*
John E. Robinson
Probation Officer III

JER:lma

APPROVED:

*(signature)*
Zane Hacker
Supervisor