1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT DALTON RUSH,

        Petitioner,

  v.

BEN CURRY,

        Respondent.

_____/

No. C 07-03990 CRB

**MEMORANDUM AND ORDER
DENYING PETITION FOR HABEAS
CORPUS**

      Petitioner Robert Rush was convicted of second-degree murder after a jury trial in the Superior Court of the State of California in September 1987. Petitioner was sentenced to 17 years-to-life and is currently incarcerated at the Correctional Training Facility in Soledad, California. On November 19, 2007, this Court denied Rush's petition for writ of habeas corpus which challenged the March 5, 2003 denial of parole. Rush v. Kane, 2007 WL 4166032 (N.D. Cal. Nov. 19, 2007). The petition currently pending before the Court challenges the denial of parole at his next hearing, held on October 11, 2005--the fifth time the Board has denied petitioner parole. For the reasons set forth below, the petition is DENIED.

//

//

**United States District Court**
For the Northern District of California

# BACKGROUND

### A.    The Commitment Offense

In July 1986, petitioner murdered his roommate John Heinz.  In the days leading up to the murder, petitioner and Heinz had been bickering over household matters.  On the day of the murder, petitioner and Heinz got into a physical altercation that left petitioner with a bloody nose and lip.  During a pause in the fight, petitioner procured a .22 caliber rifle from his bedroom and shot Heinz multiple times at close range.

Shortly thereafter, another one of petitioner's roommates, Mark Hoy, came home.  Hoy helped petitioner dispose of Heinz's body.  After checking Heinz's pulse to make sure that he was dead, petitioner and Hoy wrapped the body in plastic and then in a sleeping bag.  They buried his body in a nearby canyon after removing Heinz's ring and wallet.  Hoy reportedly pawned the ring and, after removing the money inside, tossed Heinz's wallet off a cliff.  Petitioner and Hoy then abandoned Heinz's truck in a parking lot.  On their way home, they stopped at a bar to have a few drinks with Heinz's money.

### B.    The 2005 Parole Hearing

Petitioner appeared before the Board on October 11, 2005 to determine his eligibility for parole.  The Board denied parole after making the requisite finding that petitioner continued to pose "an unreasonable risk of danger to society or threat to public safety if he was released from prison." Cal. Code Regs. tit. 15 § 2402(a).  In doing so, the Board relied on the nature of petitioner's commitment offense, which the Board found to be "particularly callous and cruel" and a "callous disregard for human suffering."  The Board also found the crime to be "dispassionate," because petitioner let the family suffer for over a month before the crime was reported by another party, and because he used the victim's money for drinking.

The Board acknowledged that petitioner did not have a prior juvenile or adult record and has done well while in custody.  In particular, petitioner has no disciplinary record and no 115's.  Petitioner has also engaged in numerous educational programs and training.  He is at the lowest classification level, is a library clerk with "exceptional" reports from the

United States District Court
For the Northern District of California

1   Bridging program, and obtained certification in mechanical drafting and architectural

2   drawing.  While in custody, petitioner even received his AA from Hartnell, his BA from San

3   Jose State, and his masters in humanity from Dominguez Hills.  Petitioner also has been in

4   alcoholic anonymous for 12 years, has been in the family effectiveness program, and has

5   participated in anger management, fatherhood program, health program, HIV or Hep C

6   health programs, and the CTF video program.  The Board commended petitioner for his good

7   behavior and accomplishments.

8        Petitioner's 2005 psychological report indicates that he is no longer a danger to the

9   community.  Petitioner also has acceptable parole plans to live with his father and has

10  secured a post-release job to work in construction, with hopes to eventually have a

11  cartographer job with a civil engineering firm.  The Board noted that petitioner is "even a

12  good role model" while in custody, but denied parole for another two years because of the

13  nature of the crime.

14                          **PROCEDURAL HISTORY**

15       After the denial of parole after the October 11, 2005 hearing, petitioner filed a timely

16  writ of habeas corpus in the San Bernardino County Superior Court.  After the petition was

17  denied, petitioner filed a writ of habeas corpus in the California Court of Appeal which was

18  also summarily denied.  He subsequently filed a timely petition for review in the California

19  Supreme Court, which the court summarily denied.  He then filed this timely petition for

20  habeas corpus.

21                          **STANDARD OF REVIEW**

22       A court may entertain a petition for a writ of habeas corpus under the Antiterrorism

23  and Effective Death Penalty Act of 1996 ("AEDPA") "in behalf of a person in custody

24  pursuant to the judgment of a State court order only on the ground that he is in custody in

25  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

26  A federal writ of habeas corpus may not be granted with respect to any claim that was

27  adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1)

28  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

1  established Federal law, as determined by the Supreme Court of the United States; or (2)

2  resulted in a decision that was based on an unreasonable determination of the facts in light of

3  the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

4          Under the "contrary to" clause, a federal habeas court must only consider as clearly

5  established federal law "the holdings of the Supreme Court as of the time of the state court

6  decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003) (citing Williams v. Taylor,

7  529 U.S. 362, 412 (2000)). "While circuit law may be 'persuasive authority' for purposes of

8  determining whether a state court decision is an unreasonable application of Supreme Court

9  law, only the Supreme Court's holdings are binding on the state courts and only those

10 holdings need be reasonably applied." Id. Under the "unreasonable application" clause, a

11 federal habeas court "may not issue the writ simply because that court concludes in its

12 independent judgment that the relevant state-court decision applied clearly established

13 federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

14 Williams, 529 U.S. at 411.

15         The state court decision to which § 2254(d) applies is the "last reasoned decision" of

16 the state court. See Y1st v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming,

17 423 F.3d 1085, 1091-92 (9th Cir. 2005). When determining whether the last reasoned

18 decision affirming a denial of parole merits habeas relief, the Ninth Circuit focuses on the

19 reasons set forth in the denial. See Rosas v. Nielson, 428 F.3d 1229, 1232 (9th Cir. 2005). If

20 the determination of unsuitability for parole is supported by "some evidence, with some

21 indicia of reliability," the state court decision affirming the denial neither unreasonably

22 applies federal law nor rests on unreasonable application of federal law. Id. at 1232-33.

### DISCUSSION

24         Petitioner claims that the Board's decision to deny parole violated the due process

25 clause because the decision was not supported by "some" evidence and the Board

26 impermissibly relied on the facts of his commitment offense.

27         It is well established that there is "no constitutional or inherent right of a convicted

28 person to be conditionally released before the expiration of a valid sentence." Greenholtz v.

4

1   Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7 (1979).  Nevertheless, a state

2   can "create a liberty interest protected by the due process guarantees" when it's parole

3   scheme employs "statutory language [that] itself creates a protectible expectation of parole."

4   Id. at 11-12.  In California, the Penal Code provides that "prior to [an] inmate's minimum

5   eligible parole release date a panel of two or more commissioners or deputy commissioners

6   shall again meet with the inmate and shall normally set a parole release date."  Cal. Penal

7   Code § 3041(a).  The Ninth Circuit has repeatedly held that this mandatory language vests

8   inmates with a cognizable liberty interest in a parole date.  See, e.g., Sass v. Cal. Bd. Of

9   Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).

10          Because inmates have a liberty interest in a parole date, the deprivation of that interest

11   must comport with due process.  Sass, 461 F.3d at 1128.  A denial of parole violates due

12   process if the decision is not supported by "some" evidence or is otherwise arbitrary.  Irons v.

13   Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass, 461 F.3d at 1128-29.  A federal habeas

14   court's analysis of whether a parole denial was supported by "some evidence" "is framed by

15   the statutes and regulations governing parole suitability determinations in the relevant state."

16   Irons, 505 F.3d at 851.

17          "Under California law, prisoners serving an indeterminate sentence for second degree

18   murder may serve up to life in prison, but [ ] become eligible for parole consideration after

19   serving minimum terms of confinement.  Although the Board must normally set a parole

20   release date before the minimum term has been served, an inmate shall be found unsuitable

21   for parole and denied parole if, in the judgment of the [Board,] the prisoner will pose an

22   unreasonable risk of danger to society if released from prison."  Id. (internal quotation marks

23   and citation omitted).

24          The Board must determine whether a prisoner is presently too dangerous to be
           deemed suitable for parole based on the "circumstances tending to show

25          unsuitability" and the "circumstances tending to show suitability" set forth in
           Cal.Code. Regs., tit. 15 § 2402(c)-(d).  A prisoner's commitment offense may

26          constitute a circumstance tending to show that a prisoner is presently too
           dangerous to be found suitable for parole, but the denial of parole may be

27          predicated on a prisoner's commitment offense only where the Board can point
           to factors beyond the minimum elements of the crime for which the inmate was

28          committed that demonstrate the inmate will, at the time of the suitability
           hearing, present a danger to society if released.  Factors beyond the minimum

5

United States District Court
For the Northern District of California

1
2
3

elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."

4  Id. (quoting Cal. Code Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)).

5  ## A.    The Parole Board and State Court Decisions

6  The Board found petitioner unsuitable for parole based on the characteristics of his

7  commitment offense.  In particular, the Board determined that (1) the crime was carried out

8  in a "cruel and callous" manner; (2) the crime was carried out in a "dispassionate" manner;

9  and, (3) the motive for the crime was trivial in relation to the nature of the crime.  Each of

10 these factors is identified by California law as an indication of an inmate's unsuitability for

11 parole.  Cal. Code. Regs., tit. 15 § 2402(c)(1),(B),(D),(E).  The Board was particularly

12 concerned because petitioner had an opportunity to withdraw from his altercation with Heinz,

13 but instead armed himself with a loaded 22-caliber rifle and shot Heinz multiple times.  The

14 Board noted petitioner's deliberate efforts to dispose of the victim's body and abandon his

15 vehicle and his apparent callousness in using the money taken from Heinz's wallet to go out

16 for a drink.  In addition, the murder was provoked by a trivial issue; a fight regarding

17 common household matters.  The Board also observed the objection of the Heinz family and

18 the District Attorney to the granting of parole.  The Board also congratulated petitioner on his

19 exemplary behavior in prison; it nonetheless denied him parole for at least two years.

20 The San Bernardino Superior Court's decision denying petitioner's state habeas

21 petition is the last reasoned state court decision.  The court concluded that some evidence

22 supports the denial of parole.  In particular, the crime "displays an extreme degree of

23 callousness," and petitioner's depiction of the shooting as a "flinch" belies a lack of remorse

24 given the multiple shots.  Answer, Exh. 7 at 2-3.  Instead of confessing to police, petitioner

25 "devised and carried out a plan to hide the evidence of the murder," and then spent the

26 victim's money.  Id. at 3.  In sum, the state court concluded that the Board's finding that the

27 crime was "callous and cruel" and "dispassionate" is supported by the record.

28 //

**United States District Court**
For the Northern District of California

1    **B.    The Denial Of Parole Is Supported By Some Evidence**

2        The state court's application of the "some" evidence standard was not unreasonable.

3    The circumstances of the crime adequately support the finding that the crime was carried out

4    in a cruel, callous, deliberate and calculated manner.  Of particular force is the fact that

5    petitioner could have walked away from the trivial conflict, but instead retrieved a loaded

6    rifle and shot the victim multiple times.  The presence of suitability factors, while significant,

7    does not tip the scales so far in favor of parole that the Court could conclude that the state

8    court's application of the "some" evidence standard was objectively unreasonable.  See Irons,

9    505 F.3d at 852-53 (callousness of offense and trivial motive show "some" evidence of

10   unsuitability despite a positive showing on virtually all other suitability factors).

11   **C.    The Board's Reliance on the Immutable Circumstances of Petitioner's**

12   **Commitment of the Offense Did Not Violate Due Process.**

13       Petitioner argues that even if there is "some" evidence supporting the Board's

14   unsuitability determination, the Board's exclusive reliance on immutable circumstances of

15   his commitment offense nonetheless violates due process.

16       The Ninth Circuit has stated that a "continued reliance in the future on an unchanging

17   factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to

18   the rehabilitative goals espoused by the prison system and could result in a due process

19   violation."  Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003).  While the court affirmed

20   the denial of the habeas petition in Biggs, it also explained that a

21       parole board's sole supportable reliance on the gravity of the offense and
         conduct prior to imprisonment to justify denial of parole can be initially
22       justified as fulfilling the requirements set forth by state law. Over time,
         however, should [the petitioner] continue to demonstrate exemplary behavior
23       and evidence of rehabilitation, denying him a parole date simply because of the
         nature of [the petitioner's] offense and prior conduct would raise serious
24       questions involving his liberty interest in parole.

25   Id. at 916.  In Sass, the Ninth Circuit affirmed a denial of parole based on the offense of

26   commitment, but also acknowledged that continued reliance solely on the offense of

27   conviction to deny parole could result in a denial of due process.  461 F.3d at 1129.

28

7

1  The Ninth Circuit reiterated this concern in <u>Irons</u>, although it again affirmed the denial of

2  parole.  505 F.3d at 853.  The court reasoned that because the offense in <u>Irons</u> was less

3  callous and cruel than that in <u>Sass</u>, Ninth Circuit precedent precluded the court from granting

4  relief.  <u>Id</u>.

5       The <u>Irons</u> court also noted, however, that in all the cases in which the Ninth Circuit

6  has affirmed the denial of parole solely on the basis of the commitment offense, the denial

7  decision "was made before the inmate had served the minimum number of years required by

8  his sentence," <u>id.</u>, thus suggesting that the result might be different if the petitioner had

9  served the minimum number of years.  At the time of the denial of parole at issue in this case,

10  petitioner had served the minimum number of years to which he was sentenced.  In light of

11  the lack of any controlling Supreme Court or even Ninth Circuit authority, however, the

12  Court cannot conclude that the state court's decision was objectively unreasonable.

13       The Ninth Circuit held that a petitioner's due process rights were violated when the

14  governor of California reversed the Board's decision to grant parole in <u>Hayward v. Marshall</u>,

15  512 F.3d 536 (9th Cir. 2008).  The petitioner had served 12 years more than his minimum

16  sentence and the state court's affirmance of the denial of parole was based on the nature of

17  the commitment offense.  <u>Id.</u> at 547.  The Ninth Circuit recently agreed to hear <u>Hayward</u> en

18  banc and thus it is not binding on and may not be cited as precedent to this Court.  2008 WL

19  2131400 (May 16, 2008).  Nonetheless, as it is the only Ninth Circuit case to have ever found

20  a due process violation in the denial of parole, a review of its facts helps explain why, under

21  the AEDPA, this Court cannot reverse the state court decision.

22       In <u>Hayward</u>, the petitioner was convicted of second degree murder for stabbing the

23  man responsible for battering and attempting to rape the petitioner's future wife, and was

24  sentenced to state prison for a term of fifteen years to life.  512 F.3d at 538.  At the age of 64,

25  and after serving 27 years in prison, retiring from a motorcycle gang, completing substantial

26  vocational training, obtaining a GED, not having any major disciplinary violations while in

27  prison, accepting responsibility for his crime, staying free from drugs, and having a viable

28  parole plan, the parole board granted the petitioner parole after his tenth parole hearing.  <u>Id.</u>

1   at 539.  Nonetheless, then-California Governor Gray Davis reversed the parole grant.  Id.  At

2   Petitioner's 11th parole hearing, the board again granted parole, but the governor again

3   overturned the decision.  Id. at 540.  After the second reversal, Hayward filed a petition for a

4   writ of habeas corpus.  The Ninth Circuit held that there was no evidence in the record to

5   support a determination that Hayward's release would unreasonably danger public safety.  Id.

6   at 544.  The initial crime was committed decades ago with unusual provocation--the victim's

7   threat to and assault of Hayward's girlfriend.  Id.  The court also found that Hayward's

8   acceptance of responsibility, his record of education in prison, his lack of recent or major

9   disciplinary misconduct while in prison, and the parole Board's decision to grant parole at his

10  10th and 11th parole hearings, taken together, demonstrated Hayward's suitability for parole.

11  Id.

12         This case is distinguishable from Hayward.  Unlike Hayward, where the crime was

13  provoked by the battery and the attempted rape of Hayward's girlfriend, petitioner committed

14  the commitment offense over trivial household matters and engaged in extensive efforts to

15  cover up his crime including bagging and disposing of the body and abandoning the victim's

16  car.  In addition, in Hayward, habeas relief was granted only after Hayward had been denied

17  parole 11 times, two in which the petitioner had been granted parole by the Board only to

18  have it reversed by the governor.  Here, in contrast, petitioner has been denied parole five

19  times, and has never been granted parole by the Board.   Hayward was also 64 years old and

20  had had over 20 years of rehabilitation and almost 30 years of incarceration, making it

21  unlikely that he would pose a danger to society if released.  Id. at 547.  Here, petitioner has

22  been incarcerated for 22 years on a 17-year minimum sentence and is currently in his forties.

23         Even if Hayward could be cited as binding precedent, in light of these differences the

24  Court cannot conclude that the state court's decision was contrary to or an unreasonable

25  application of Federal law.  The issue is not whether this Court would have granted parole;

26  the issue is whether the state court's decision to affirm the denial of parole was unreasonable.

27  The Court concludes that it was not.

28  //

9

1

## CONCLUSION

2          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

3          **IT IS SO ORDERED.**

4

5    Dated: June 6, 2008

6                                              _____
                                              CHARLES  R. BREYER
                                              UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

10